UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Via Mizner Owner I, LLC,                          Case No. 25-10369-EPK
                                                  (Joint Administration Pending)

Via Mizner Pledgor I, LLC,                        Case No. 25-10371-EPK

         Debtors.                                 Chapter 11
_____/

## NOTICE OF FILING PROPOSED FINAL ORDER AND AGREEMENT

Via Mizner Owner, I, LLC (the "Debtor"), by and through undersigned counsel, hereby

files the attached proposed Final Order and the attached Agreement in conjunction with the

*Emergency Motion to Authorize Use of Cash Collateral*  [ECF No. 34].

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing to those parties registered to receive CM/ECF electronic notices in

this case on February 24, 2025.

                                   Respectfully submitted,

                                   SHRAIBERG PAGE P.A.
                                   Proposed Attorneys for the Debtor
                                   2385 NW Executive Center Drive, Suite 300
                                   Boca Raton, Florida 33431
                                   Telephone: 561-443-0800
                                   Facsimile: 561-998-0047
                                   Email: bss@slp.law
                                   Email: shess@slp.law

                                   By: */s/ Samuel W. Hess*
                                       Bradley S. Shraiberg
                                       Florida Bar No. 121622
                                       Florida Bar No. 1044184

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

VIA MIZNER OWNER I, LLC,                         Case No.  25-10369-EPK
                                                 (Jointly Administered)

VIA MIZNER PLEDGOR I, LLC                        Case No. 25-10371-EPK

                    Debtors.                     Chapter 11

**FINAL ORDER GRANTING *EMERGENCY* MOTION TO AUTHORIZE**
**UNDERLINE USE OF CASH COLLATERAL**

      **THIS MATTER** came before the Court for hearing on February 24, 2025, upon

the *Emergency Motion to Authorize Use of Cash Collateral* [ECF No. 34] (the "Motion")

filed by Via Mizner Owner I, LLC;

      And the Secured Lenders[1] having liens on substantially all of the assets of Debtor

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Objection [ECF No. 41]

Via Mizner Owner I, LLC ("VMO" or, the "Debtor"), including VMO's cash accounts and rental proceeds from the real property owned by VMO, commonly known as 101 Via Mizner, located at 101 E. Camino Real, Boca Raton, Florida 33432 (the "Property"), as well as the Property itself and liens on all of the assets of debtor Via Mizner Pledgor I, LLC ("VMP" and together with VMO, the "Debtors");

And the Agent having filed the *Preliminary Objection of Agent to Debtors' Emergency Motion to Authorize Use of Cash Collateral* [ECF No. 41] (the "Objection");

And the Debtor and the Agent having agreed to the Debtor's use of cash collateral on an interim basis subject to and in accordance with the terms of the orders entered by the Court on February 4, 2025, February 12, 2025, and February 14, 2025 [ECF Nos. 56, 72, and 74] (the "Interim Orders") after hearings held on January 28, 2025, February 5, 2025, and February 13, 2025 (the "Interim Hearings");

And the Debtor and the Agent having held a mediation on February 12, 2025 and having entered into an agreement (the "Agreement") attached hereto as **Exhibit A,** pursuant to which, among other things, the Agent agreed to consent to the Debtor's use of cash collateral on subject to and in accordance with the terms of the Agreement and this order (the "Final Order");

And the Court having held a final hearing on the Motion (the "Final Hearing") on February 20, 2025;

For the reasons stated on the record, and being otherwise fully advised in the premises, it is **FOUND, ORDERED, AND ADJUDGED** that:

1.      The Motion [ECF No. 34] is **GRANTED** to the extent set forth herein on a final basis.

2.      <u>Petition Date</u>. On January 15, 2025 (the "<u>Petition Date</u>"), the Debtors commenced their chapter 11 cases (these "<u>Chapter 11 Cases</u>") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Court</u>").  The Debtors  are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No statutory committee has been appointed in these cases.

3.      <u>Jurisdiction; Venue</u>.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D).  The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

4.      <u>Notice</u>.  Notice of the Motion, the relief requested therein, and the Final Hearing (the "<u>Notice</u>") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001 and in accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "<u>Local Rules</u>") on (i) the Debtors thirty (30) largest unsecured creditors on a consolidated basis, (ii) the United States Trustee Office for the Southern District of Florida, (iii) [the banks or financial institutions where the Debtors maintain accounts, (vi) counsel to the Secured Lenders, (v) all known holders of liens upon the Debtors' assets, (vi)  the Internal Revenue Service, and (vii) any parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Notice constitutes good and sufficient notice of the relief requested in the Motion (the "<u>Requested Relief</u>"), and no further notice of the Requested Relief and the relief granted by this Final Order is necessary or shall be required.

3

5.    <u>VMO and VMP's Acknowledgements and Stipulations</u>.  VMO and VMP acknowledge, represent, stipulate and agree, for themselves and their estates subject to the challenge rights set forth in Paragraph 21 herein and, for the avoidance of doubt, the provisions of Paragraph 26 relating to the Guarantor, as follows:

A.    VMO as borrower under the Loan Agreement (as defined below) and VMP as guarantor (the "<u>Prepetition Obligors</u>") are parties to Loan Agreement, dated as of September 30, 2021 (the "<u>Original Loan Agreement</u>"), between VMO and Parlex 3 Finance, LLC (the "<u>Original Secured Lender</u>"), the Original Secured Lender made a loan to VMO (as amended, restated, supplemented, or otherwise modified prior to the date hereof, the "<u>Original Loan Agreement</u>") in the aggregate principal amount of $195,000,000 (the "<u>Loan</u>").

B.    In connection with the Loan, the Original Secured Lender was provided with security to ensure VMO's payment and performance of the Obligations (as defined in the Original Loan Agreement), including the repayment of the Loan.  VMO owns and operates the property commonly known as 101 Via Mizner, located at 101 E. Camino Real, Boca Raton, Florida 33432 (the "<u>Property</u>").  VMO granted a security interest in, among other things, the Property to secure its payment and performance of the Obligations.  In addition, VMP (VMO's direct parent) (a) unconditionally guaranteed VMO's payment and performance of the Obligations, pursuant to that certain Pledgor Guaranty, dated as of September 30, 2021 (as amended, restated, supplemented, or otherwise modified prior to the date hereof, the "<u>Pledgor Guaranty</u>"), in favor of the Original Secured Lender, and (b) pledged, among other things, its equity interests in VMO

4

(*i.e.*, the VMO Equity) to secure VMO's payment and performance of the Obligations, pursuant to that certain Pledge and Security Agreement, dated as of September 30, 2021, between VMP and the Original Secured Lender (as amended, restated, supplemented, or otherwise modified prior to the date hereof, the "Pledge and Security Agreement").

C.      The Original Secured Lender assigned the Loan, the Loan Agreement, the Pledgor Guaranty, the Pledge and Security Agreement, and other related loan documents pursuant to that certain Omnibus Assignment from Original Secured Lender to Parlex dated as of October 13, 2021.  In November 2023, Parlex sold a portion of the Loan to another secured lender.  In connection therewith, Parlex entered into (a) that certain Note Splitter Agreement and Amendment to Loan Agreement and Other Loan Documents, dated as November 10, 2023 (the "Note Splitter Agreement and Amendment"), between VMO and Parlex, under Section 17 of which, Parlex was appointed as agent (the "Agent") and (b) that certain Co-Lender Agreement, dated as of November 10, 2023, between Parlex and RICP V Holdings, LLC (the "Co-Lender Agreement").  In January 2025, RICP V Holdings, LLC entered into that certain Assignment and Assumption Agreement, dated as of January 17, 2025, between RICP V Holdings, LLC and RICP V 101 Via Mizner Holdings, LLC, pursuant to which RICP V Holdings, LLC assigned all of its right, title and interest in, to and under the Loan and the other Loan Documents to RICP V 101 Via Mizner Holdings, LLC.  The Loan Agreement means and refers to the Original Loan Agreement, by and between VMO, the Agent and each of the lenders now or hereafter named therein

(the "<u>Secured Lenders</u>"), as modified by the Noted Splitter Agreement and Amendment (as amended, restated, supplemented, or otherwise modified prior to the date hereof, the "<u>Loan Agreement</u>");

D.    to secure the "<u>Obligations</u>" (as defined in the Loan Agreement), the Prepetition Obligors granted to the Agent, for the benefit of the Secured Lenders, first priority liens upon and security interests in (the "<u>Prepetition Liens</u>") substantially all of the Prepetition Obligors' property and assets, pursuant to all security agreements (including all documents and instruments used to perfect the Prepetition Liens), collateral agreements, pledge agreements, control agreements, guaranty, instruments and other documents other than the Guaranty of Recourse Obligations, including the Loan Agreement, and, in all instances, the proceeds and products thereof (as set forth more fully in the Loan Agreement, collectively, the "<u>Prepetition Collateral</u>");

E.    the Secured Lenders have duly perfected the Prepetition Liens securing the Obligations by, among other things, filing financing statements and, where necessary, by possession of relevant instruments, certificates, cash or other property, and all such instruments and actions were validly executed or performed, as the case may be, by, or with the consent of, VMO and VMP, provided, however, that the Secured Lenders do not have liens on any cash constituting tenants' security deposits held in a segregated account pursuant to applicable non-bankruptcy law;

F.    as of the Petition Date:   (A) the current outstanding principal balance of the Obligations (exclusive of interest, fees, reimbursable expenses and

6

other charges) is not less than $195,000,000; (B) the Loan Agreement is valid and enforceable by the Secured Lenders against VMO and VMP; (C) all of the Obligations are absolutely and unconditionally owed by the Prepetition Obligors to the Secured Lenders; (D) the Obligations constitute legal, valid and binding obligations of the Prepetition Obligors, enforceable against Prepetition Obligors with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code to the extent applicable); (E) no recoupments, offsets, challenges, objections, defenses, reductions, impairments, claims, counterclaims, or cross claims of any kind or nature to any of the Secured Lenders, Prepetition Liens, Prepetition Collateral, or Prepetition Secured Obligations by Prepetition Obligors can be raised; and (F) no portion of the Obligations or any payments or other transfers made to the Agent or any other Secured Lenders or applied to the Obligations prior to the Petition Date is subject to avoidance, disallowance, disgorgement, subordination (whether equitable, contractual, or otherwise), recharacterization, recovery, attack, recoupment, offset, counterclaim, defense or Claim (as defined in the Bankruptcy Code), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation;

G.     the Prepetition Liens constitute valid, binding, continuing, enforceable (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and perfected first priority liens with priority over any and all other liens on and security interests in the Prepetition Collateral (except as otherwise provided in the Loan Agreement) and are not subject to any

challenge or defense, including without limitation, respectively, avoidance, disallowance, disgorgement, subordination (whether equitable, contractual, or otherwise), recharacterization, recovery, reduction, set-off, offset, attack, counterclaim, cross-claim, or Claim (as defined in the Bankruptcy Code), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

H.      VMO and VMP and their estates have no valid claims, objections, challenges, causes of actions, including without limitation, claims or causes of action pursuant to sections 501(d), 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code or applicable non-bankruptcy law against the Secured Lenders or against any of their respective affiliates, agents, attorneys, advisors, professionals, officers, managers, members, directors or employees arising out of, based upon or related to the Prepetition Liens, Prepetition Collateral, Prepetition Secured Obligations or Loan Agreement and the Debtor irrevocably waives, discharges and releases all rights to challenge or contest the Prepetition Liens of the Secured Lenders on the Prepetition Collateral or the validity or amount of the Prepetition Liens, Prepetition Collateral, Prepetition Secured Obligations, or the Loan Agreement;

I.      any payments made on account of the Obligations before the Petition Date were (A) made pursuant to the provisions of the Loan Agreement, (B) payments out of the Prepetition Collateral or (C) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors;

J.      all of the Debtor's cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral, provided, however, that cash constituting tenants' security deposits kept in a segregated account pursuant to applicable non-bankruptcy law is not Cash Collateral;

K.      none of the Secured Lenders are a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor; and

L.      the Secured Lenders are entitled to, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "Diminution"), caused by or arising as a result of (A) the use of Prepetition Collateral (including Cash Collateral) and (B) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

6.      Cash Collateral. For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the Secured Lenders have a lien, security interest or any other interest (including, without limitation, any adequate protection liens or security interests), whether existing on the Petition Date, arising pursuant to the Interim Order, this Final Order, or otherwise.

7.      Use of Cash Collateral.  The Debtor shall be authorized to use cash collateral to pay the ordinary and necessary expenses provided for in the final budget attached hereto as **Exhibit B** (as may be amended from time to time with the agreement

9

of the Agent and the Debtors, the "Final Budget"). The Debtor may not exceed the amount authorized per line item in the Final Budget absent prior written consent of the Agent which may be withheld in its sole discretion, subject to the Permitted Variance. As used herein, "Permitted Variance" means a positive variance of up to 10% for cumulative actual cash disbursements on a line by line basis of the Debtor per week.

8.    Adequate Protection.    The Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in the value of the Prepetition Collateral occurring from and after the Petition Date (the "Diminution") resulting from (i) diminution in value of the Prepetition Collateral, including the Cash Collateral and (ii) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

9.    Replacement Liens.    Notwithstanding the provisions of section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by § 552(b) of the Bankruptcy Code, the Debtor grants in favor of Secured Lenders, as security for all indebtedness that is owed by the Debtor to the same post-petition security interests and liens in, to and against any and all property of the Debtor, to the same extent and priority that each such entity held a properly perfected pre-petition security interest in such assets; provided that, however, under no circumstances shall Secured Lenders have a lien on any causes of action arising under 11 U.S.C. § 542 *et seq.*, or the proceeds therefrom.

10.    507(b) Claim. In addition to, and without limiting the Replacement Liens, Agent, for the benefit of Secured Lenders, shall have an allowed priority unsecured claim with respect to any diminution in value with the priority afforded under section 507(b)

which shall have priority in right of payment senior to all other Administrative Priority Claims.

11.    <u>Reporting</u>. The Debtor shall provide weekly reporting to the Secured Lenders, on receipts and disbursements with variances to the budgeted amounts, monthly rent roll, monthly leasing status report, and monthly trailing 12 month profit and loss statement and to the extent that ZRS Management is solely responsible for any such reporting, shall use its commercially reasonable efforts to cause ZRS Management to provide such reports.  The Debtors shall also forward to the Secured Lenders all material ZRS Management communication related to the Prepetition Collateral.  The Debtors shall facilitate and participate in a bi-weekly property update call with ZRS Management and the Agent.  The Debtors shall provide Agent with all diligence materials made available to prospective purchasers in sale process.  Debtors' counsel shall provide updates at least every ten days to counsel for Agent regarding the status of the refinancing efforts and Debtors shall provide copies of all refinancing term sheets that the Debtors are actively pursuing.  Broker (defined below) shall provide updates not less than weekly to the Secured Lenders on the sales process including update calls and prospect reports.  The Debtors shall have 3 business days, upon written notice, to cure any reporting default within Debtors' control.

12.    <u>Use of Funds in DACA Accounts</u>.  ZRS Management is authorized to make all payments on behalf of the Debtor pursuant to the Final Budget.  The Agent is authorized to transfer funds and to instruct any depository institution holding the Debtors funds, including in accounts subject to deposit account control agreements (each a "<u>Depository Institution</u>") on an as needed basis from the reserve accounts to ZRS

Management (or another party properly designated by the Debtors) to enable it to make payments on behalf of the Debtors.  Any Depository Institution shall not be liable to any party on account of: (i) following the Agent's instructions or representations as to any order of this Court; (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures. Notwithstanding anything herein to the contrary, any Depository Institution shall have no duty to make an independent inquiry as to whether any particular payments are authorized by an order of this Court or comply with the Final Budget. The Agent is authorized to directly pay all taxes and insurance costs consistent with their prepetition practices and any Depository Institution holding funds in reserve accounts shall be entitled to rely upon the instruction of the Agent to release such funds to make such payments.  Nothing herein is intended to limit a Depository Institution's existing service or account agreements and such institutions are permitted to charge all fees, charges and other amounts assessed under such agreements in accordance with their terms.  Any Depository Institution is authorized to continue to treat, service, and administer the DACA Accounts without interruption and in the usual and ordinary course, subject to the terms of this Final Order, and to receive, process and honor and pay, to the extent of available funds and consistent with the terms of the Final Order, any and all checks, drafts, wires, or electronic fund or ACH payments, or transfers issued or drawn on the DACA Accounts.  The Debtor shall take reasonable steps to facilitate the payments by ZRS Management and the Agent.

13.    Duration.  The use of cash collateral provisions in this Order shall remain in effect through June 30, 2025 (the "Maturity Date") or earlier termination in accordance

with Paragraph 14.

14.    <u>Termination of Authority to Use Cash Collateral</u>.  The occurrence of any of the following shall be a termination Event (each a "Termination Event"):

i.    the Debtors' actual disbursements under the Revised Budget exceed the amounts set forth in the Revised Budget, subject to the Permitted Variance, without the prior written consent of the Agent;

ii.    the Debtors' payment of any obligations not provided for in the Revised Budget without the prior written consent of the Agent;

iii.    the Debtors failure to comply in any material respect with any of the terms or conditions of the Interim Order or this Final Order, including, without limitation, any uncured default under Paragraph 11;

iv.    Debtors seek any modification or extension of the Interim Order or this Final Order, without consent of the Secured Lenders;

v.    the commencement or support of any action by the Debtors or any party exercising the authority of any Debtor against any of the Secured Lenders, the Agent, or its agents and employees, to subordinate or avoid any liens made in connection with the Loan or to avoid any obligations incurred in connection with the Loan Agreements;

vi.    any Order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any assets of the Debtors with an aggregate value of more than $150,000;

      vii.      (a) Debtors assert in any pleading filed in any court that any material provision of this Final Order is not valid and binding for any reason, or (b) any material provision of the Interim Order and this Final Order shall for any reason, or any other order of this Court approving the Debtor's use of Cash Collateral, without the prior written consent of the Secured Lenders, cease to be valid and binding;

      viii.      Debtors breach a Milestone (as defined below);and

      ix.      the occurrence of the Maturity Date.

    15.    <u>Remedies and Automatic Stay.</u>  Upon the occurrence of a Termination Event, Agent may elect to deliver a written notice to the Debtor (the "<u>Termination Notice</u>") and file such Termination Notice on the docket and, on the third business day after providing such notice the Agent may elect, at its discretion to exercise any or all if the remedies outlined below (the "<u>Remedies Notice Period</u>").  In the event that the Debtors seek to challenge whether the Termination Notice was validly issued during the Remedies Notice Period, Debtors, the Secured Lenders, and the Agent consent to a hearing with the Court on an expedited basis (an "<u>Emergency Hearing</u>"); provided, however, that if the Emergency Hearing is requested to be heard prior to the expiration of the Remedies Notice Period but is scheduled for a later date by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing. If a Termination Event results from the acts or omissions of ZRS Management, the Debtors file an emergency motion to compel ZRS Management's compliance with its obligations and the Debtors' instructions within the Remedies Notice Period, and the Court determines the Termination Event resulted from ZRS Management's acts or omissions, then Agent and the Secured Lenders' remedies shall be limited to remedies obtained in connection with any order granting a motion to compel

to the exclusion of the remedies provided in this Paragraph 15. The provisions of this Paragraph 15 are each subject to the Carve-Out.

      i.      Reschedule the Agent's Motion for Entry of an Order (I) Dismissing These Chapter 11 Cases or (II) in the Alternative, Lifting the Automatic Stay [Dkt. No. 29] (the "Motion to Dismiss") for the next available court date.

      ii.      Refile the personal lawsuit filed in New York state court against Guarantor (the "Guarantor Lawsuit").

      iii.      Terminate use of cash collateral and obtain automatic relief from stay. The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the Secured Lenders, following the Remedies Notice Period and without any interference from the Debtors or any other party in interest, to exercise all rights and remedies provided for in the Loan Agreement, this Final Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) take any actions reasonably calculated to preserve or safeguard the Prepetition Collateral or to prepare the Prepetition Collateral for sale; (B) foreclose or otherwise enforce the Prepetition Liens on any or all of the Prepetition Collateral; (C) set off any amounts held as Cash Collateral; or (D) exercise any other default-related rights and remedies under the Loan Agreement, this Final Order or applicable law.

      iv.      If the Secured Lenders are entitled, and have elected in accordance with the provisions hereof, to enforce their liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice

Period, Debtors shall cooperate with the Secured Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Prepetition Collateral to representatives or agents of the Secured Lenders (including any collateral liquidator or consultant), (B) providing the Secured Lenders and their representatives or agents, at all reasonable times, access to the Debtors' books and records and any information or documents requested by the Secured Lenders or their representatives or agents, (C) performing all other obligations set forth in the Loan Agreement, and (D) taking reasonable steps to safeguard and protect the Prepetition Collateral, and Debtors shall not otherwise interfere with or actively encourage others to interfere with the Secured Lenders' enforcement of rights.

      v.      Following the (i) Remedies Notice Period or (ii) occurrence of the Maturity Date, the Secured Lenders shall have no further obligation to permit the continued use of Cash Collateral and  the Debtor shall be prohibited from using any Cash Collateral under this Final Order (except to the extent provided in this Final Order to fund the Carve-Out), until such time (if any) as the Secured Lenders have consented to further use of Cash Collateral.

      16.      <u>Adequate Protection Superpriority Claim</u>.  As further adequate protection, the Prepetition Agent, for itself and for the benefit of the Secured Lenders, is hereby granted a superpriority claim to the extent of any Diminution, which claim shall, to the extent provided by the Bankruptcy Code, have priority over all other administrative expense claims and unsecured claims against Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation,

administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Superpriority Claim"), provided however, such Adequate Protection Superpriority Claim shall (i) be subordinate and subject only to the Carve-Out, and (ii) shall be entitled to all protections and benefits of Section 507(b) of the Bankruptcy Code.

17.    Secured Lenders' Fees and Expenses.  The Debtor shall pay the reasonable fees, charges, expenses (including attorneys' fees and other professional expenses) of the Agent and the Lenders in connection with the Chapter 11 Cases.  The Debtor's obligations to make such payments shall include, in each instance, any of such fees, charges, expenses and other amounts which were incurred or accrued but unpaid as of the date hereof.  All such fees, costs and expenses shall be paid by the Debtor within ten (10) days after delivery of an invoice (redacted for privilege) to Debtors and without the need for further application to or order of the Court.  None of such fees, costs, and expenses shall be required to be recorded or maintained in any particular format and no recipient of any such payment shall be required to file any interim or final fee application with the Court.  A copy of such invoices shall be provided by the Agent and the Lenders to the U.S. Trustee and counsel to any statutory committee on the same business day as the Debtors' receipt of such invoice. Notwithstanding the foregoing, if (x) the Debtors, U.S. Trustee or any statutory committee object to an invoice submitted by the Secured Lenders and (y) the parties cannot resolve such objection, in each case within the ten (10) day period following receipt of such invoice, the Debtors, the U.S. Trustee or any such statutory committee, as the case may be, shall file with the Court and serve on the Agent and Secured Lenders submitting the fee

request a fee objection (a "Secured Lender Fee Objection").  The Debtors shall promptly pay any submitted invoice after the expiration of the ten (10) day period if no Secured Lender Fee Objection is filed with the Court and served on the and the Secured Lenders in such ten (10) day period.  If a Secured Lender Fee Objection is timely filed and served, the Debtors shall promptly pay the undisputed amount of the invoices, and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the Secured Lender Fee Objection. For the avoidance of doubt, payment of the Secured Lenders and Agent fees may be made directly by Agent withdrawing sums from DACA Accounts.

18.    506(c) and 552(b) Waivers.  The Secured Lenders' consent to use of Cash Collateral and Prepetition Collateral under the Interim Order and this Final Order and the Debtor's right to use Cash Collateral and Prepetition Collateral: (i) is in lieu of any section 506(c) claim, payment or priority for the costs or expenses of the administration of any of these Chapter 11 Cases; and (ii) is granted as consideration for (among other things) the waiver of the exceptions provided in sections 552(b)(1) and (2) of the Bankruptcy Code, which exceptions are hereby waived.

19.    Carve-Out.   The Adequate Protection Liens, the Adequate Protection Superpriority Claim, and the Prepetition Liens shall be subject and subordinate to the following:  (i) all fees required to be paid to (A) the clerk of the Bankruptcy Court and (B) the Office of the United States Trustee under section 1930(a) of Title 28 of the United States Code, plus interest required to be paid on any past due amount at the statutory rate (collectively, the "UST Carve-Out"); (ii) all reasonable fees and expenses, up to $50,000, incurred by a trustee under section 726(b) of the Bankruptcy Code (the "Chapter 7 Trustee

Carve-Out"); (iii) to the extent allowed at any time, all unpaid fees and expenses (the "Allowed Professional Fees") of persons or firms retained by Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals" or the "Professional Persons") that are incurred or earned at any time before or on the first Business Day following delivery by the Agent of a Termination Notice, whether allowed prior to or after delivery of a Termination Notice (the "Professional Fee Carve-Out") or incurred after the first Business Day following delivery by the Agent of the Carve-Out Trigger Notice in an aggregate amount not to exceed $150,000, (the "Post-Trigger Carve-Out" and with the UST Carve-Out, the Chapter 7 Carve-Out and the Professional Fee Carve-Out, the "Carve-Out").

20.    Release.  Upon entry of this Final Order, subject to the rights expressly set forth in paragraph 21 below, the Debtors and their estates forever and irrevocably release, discharge, and acquit each of the Secured Lenders and their respective affiliates and predecessors in interest, and their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, advisors, legal advisors, shareholders, managers, consultants, accountants, and attorneys (in each case, solely in their capacities as such) (the "Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type at any time arising prior to the Petition Date, and all claims and causes of action under chapter 5 of the Bankruptcy Code, provided that nothing in this Final Order shall constitute or permit a release of any claims or causes of action arising from an act or omission that is determined to have constituted willful misconduct, gross negligence, or actual fraud.

19

21.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  The stipulations in respect of the Secured Lenders set forth in Paragraph 5 of this Final Order were binding upon Debtors upon entry of the Final Order and the releases of the Secured Lenders and related parties set forth in Paragraph 20 shall be binding upon Debtors upon entry of this Final Order. In addition, such releases and stipulations shall be binding upon each other party in interest unless a party in interest, having standing, first, commences, within the earlier of (i) March 15, 2025, and (ii) the date of entry of any order confirming the sale of substantially all of Debtors' assets (the "<u>Sale Order</u>") or any order confirming a plan of reorganization (the "<u>Confirmation Order</u>") (such time period shall be referred to as the "<u>Challenge Period</u>," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly and timely file a Challenge and only for the matters specifically set forth in such Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "<u>Challenge Period Termination Date</u>") (A) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) challenging or otherwise objecting to the releases of the Secured Lenders and related parties set forth in Paragraph 20 above and the stipulations in respect of the Secured Lenders set forth in Paragraph 5 of this Final Order or (B) a contested matter, adversary proceeding, or other action or claim (as defined in the Bankruptcy Code) against any Releasee relating to any pre-Petition Date act, omission or aspect of the relationship between such Releasee and Debtors ((A) and (B) being, collectively, the "<u>Challenges</u>" and, each individually, a "<u>Challenge</u>"), and, second, obtains a final, non-appealable order in favor of such party in

interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.  Upon the Challenge Period Termination Date and for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (ii) the releases of the Secured Lenders and related parties set forth in Paragraph 20 above and the stipulations in respect of the Secured Lenders set forth in Paragraph 5 above shall be binding on all parties in interest (other than Debtors, to which they are already binding), (iii) the claims of the Secured Lenders shall constitute allowed claims for all purposes in the Chapter 11 Cases and any Successor Case(s), (iv) the Prepetition Liens shall be deemed legal, valid, binding, perfected and otherwise unavoidable, (v) the Prepetition Liens and Obligations shall not be subject to subordination, counterclaims, set-off, defense, avoidance or any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto, and (vi) as a result of the foregoing, the repayment of any Obligations in accordance with the terms of the Interim Order, this Final Order and the Loan Agreement shall constitute an indefeasible payment and shall be final and binding for all purposes.  If any such Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in Paragraph 5 shall nonetheless remain binding and preclusive on Debtors and their estates and respective creditors and all other parties in interest in these Chapter 11 Cases, except to the extent that such findings or admissions were expressly and successfully disputed in such Challenge. Nothing in the Interim Order or this Final Order confers on any person standing or authority to pursue any cause of action belonging to the Debtors or their estates, including without limitation, claims and defenses

21

with respect to the Obligations. Notwithstanding the foregoing, the timely filing of a motion seeking standing to file a Challenge consistent with applicable law and rules of procedure before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and factual basis of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion, and solely with respect to the Challenge(s) asserted in the draft complaint, until entry of an order granting the motion for standing to prosecute such claim described in the draft complaint and permitted by the Court; provided that, if standing is denied by the Court, the Challenge Period Termination Date shall be deemed to have occurred with respect to such Challenge(s).

22.    <u>Refinancing or Sale Process</u>.  Debtors agree not to file or support any plan of reorganization or liquidation ("<u>Plan</u>") without the written consent of the Secured Lenders and Agent or seek or support entry of any order that provides for (i) the refinancing of the Obligations; (ii) the sale of the stock of VMO and/or VMP; or (iii) the sale of all or substantially all of the assets of VMO and/or VMP under section 363 of the Bankruptcy Code to any party unless either (a) the Obligations of the Secured Lenders are to be paid in full in cash or (b) the Secured Lenders consent and the order approving such refinancing or sale and the proceeds are distributed in accordance with the Loan Agreement and this Final Order at the closing of such sale or refinancing.  Debtors shall adhere to the following process:

i.    Debtors shall immediately begin, and run concurrently: (a) a process to attempt to refinance the Loan that may lead to, following the Refinancing Date (as defined below), (b) a process to sell the Debtors' assets.

A.    During the refinancing process, in addition to any other

refinancing structures Debtors may choose to pursue, Debtors shall use best efforts to obtain a refinancing of the Loan.

      B.    An auction and sale hearing in respect of Debtors' assets will not be set, and the Debtors will not begin to actively market the Property, unless Debtors do not refinance the Loan by the Refinancing Date (defined below).

      C.    Upon the Refinancing Date, if the Loan has not been repaid in full (a "<u>Refinancing</u>"), the Auction Process Timeline (as defined below) shall begin automatically.

      D.    For the avoidance of doubt, a Refinancing must pay off, in cash, all prepetition and postpetition amounts accrued under the Loan (including all reasonable fees; costs; interest; premiums; charges; etc.) that accrued under the Loan documents up until the date of such payoff.

      E.    While the Debtors have the right to repay the Loan in full at any time prior to the auction, including after the Refinancing Date, following the Refinancing Date the Debtors shall dedicate sufficient time and resources on the auction and sale process.

ii.    Debtor must engage a Broker (defined below) on terms acceptable to Agent to facilitate the sale process.

      A.    Broker shall run a sale process in respect of Debtors' assets. Debtors shall respond to all reasonable requests for information from the Broker and use best efforts to provide information in furtherance of the sale process, which sale shall be based on highest and best value of the property.

B.      Upon its engagement by the Debtors, Broker must develop the materials necessary to market the Property, including, but not limited to, creating a teaser and populating a data room so he or she will be ready to immediately market the property following April 15, 2025 (the "Refinancing Date").

23.    Refinancing and Sale Milestones. Debtors shall adhere to the below milestones related to a potential sale (the "Sale Milestones") and the milestones related to a potential auction (the "Auction Milestones", together with the Sale Milestones, the "Milestones"):[2]

| Sale Milestones | |
| --- | --- |
| **Timeline** | **Action/Deadline** |
| On or before March 10, 2025 | Debtors must  engage a capital markets real estate broker from a nationally recognized brokerage firm with local expertise acceptable to Agent on terms (including economic terms) that are acceptable to Agent (the "Broker")  Said acceptance shall not be unreasonably withheld.  This is a Deadline for which failure to comply shall not be Termination Event. |
| On or before March 19, 2025 | Obtain Court approval of the retention of the Broker. |
| On or before April 11, 2025 | Broker must certify that the Debtors have provided all information that the Broker believes is necessary to launch a sales process on the Refinancing Date.  This is a Deadline for which failure to comply shall not be  Termination Event. |
| On or before April 15, 2025. | Debtors must file a motion for approval of bidding procedures that are acceptable to Agent. |
| On or before April 25, 2025 | Obtain Court approval of such bidding procedures. |

---

[2] No Milestone may be extended absent the written agreement of the Debtor and the Secured Lenders.

| Auction Process Milestones | |
| --- | --- |
| **Timeline** | **Action/Deadline** |
| On or before June 16, 2025 | If a Refinancing has not closed by the Refinancing Date (including obtaining court approval of the Refinancing), an auction in respect of all of the Debtors' assets shall be scheduled to take place.<br><br>If there are no third party bids submitted by the bid deadline other than by the Agent, the auction will be cancelled. |
| 3 Business Days after conclusion of auction (or cancellation of auction) or as soon thereafter as the Court can accommodate | Hearing to approve the sale of Debtors' assets to winning bidder (or Agent, if no other third party bidders). |
| No later than 5 Business Days after entry of a court order approving such sale | Sale of assets to winning bidder or Agent, as applicable, shall close. |

For the avoidance of doubt, failure to comply with the Milestones or the other provisions of this Paragraph 24 shall be a Termination Event for purposes of this Final Order.

24.     <u>Approval of the Agreement</u>.  The Agreement is approved in its entirety and the Debtors, the Agent and the Secured Lenders are to be bound by its terms. The Debtors, are authorized and directed to take all steps necessary to implement the Agreement.

25.     <u>Dismissal and Conversion</u>.  If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, (a) the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted hereunder shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in the Interim Order and this Final Order and (b) to the fullest extent permitted by law, this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the Adequate

Protection Liens and the Adequate Protection Superpriority Claim.

26.    <u>No Prejudice to Guarantor</u>.    Nothing in this Order, including any stipulations made by the Debtors, shall have any effect or prejudice on the Guarantor's rights or defenses in any subsequent lawsuit to enforce the Guaranty and as used herein, the definition of Loan Agreement specifically excludes the Guaranty of Recourse Obigations.  Additionally, Secured Lenders forever and irrevocably release, discharge, and acquit any claim for consequential damages against Guarantor, provided there is no intentional breach by the Debtors of the Milestones.

27.    <u>Retention of Jurisdiction</u>.    This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Final Order.

###

Submitted by:

Bradley S. Shraiberg, Esq.
Counsel for the Debtor
2385 N.W. Executive Center Drive,
Suite 300 Boca Raton, Florida 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047

*Bradley S. Shraiberg, Esq. is directed to serve a copy of this Order upon all interested parties and to file a certificate of service with the Court.*

# EXHIBIT A

**Execution Copy**

<u>Agreement</u>

<u>General</u>

In exchange for (i) Agent's consent to use of cash collateral pursuant to an agreed upon budget, (ii) Agent's adjournment of its motion to dismiss Debtors' chapter 11 cases (subject to it being rescheduled on terms as set forth below), (iii) voluntary dismissal without prejudice of the personal lawsuit filed in New York against Guarantor (the "Guarantor Lawsuit") and (iv) Agent and Lenders' release of any claims for consequential damages against Guarantor:

1. Debtors shall immediately begin, and run concurrently: (a) a process to attempt to refinance the Loan that may lead to, following the Refinancing Date (as defined below), (b) a process to sell the Debtors' assets
   a. During the refinancing process, in addition to any other refinancing structures Debtors may choose to pursue, Debtors shall use best efforts to obtain a refinancing of the Loan
   b. Auction / sale hearing in respect of Debtors' assets will not be set, and the Debtors will not begin to actively market the Property (as defined in the loan agreement between the parties), unless Debtors do not refinance the Loan by the Refinancing Date
   c. Upon the Refinancing Date, if the Loan has not been repaid in full (a "Refinancing"), the Auction Process Timeline shall begin automatically.
   d. For the avoidance of doubt, a Refinancing must pay off, in cash, all prepetition and postpetition amounts accrued under the Loan (including all reasonable fees; costs; interest; premiums; charges; etc.) that accrued under the Loan documents up until the date of such payoff.

2. Debtors must promptly (and no later than March 10, 2025) engage a capital markets real estate broker from a nationally recognized brokerage firm with local expertise acceptable to Agent on terms (including economic terms) that are acceptable to Agent (the "Broker") Said acceptance shall not be unreasonably withheld.
   a. Broker shall run a sale process in respect of Debtors' assets. Debtors shall respond to all reasonable requests for information from the Broker and use best efforts to provide information in furtherance of the sale process, which sale shall be based on highest and best value of the property.

   b. Upon its engagement by the Debtors, Broker must develop the materials necessary to market the Property, including, but not limited to, creating a teaser and populating a data room so he or she will be ready to immediately market the property following the Refinancing Date.

   c. On or before April 11, 2025, Broker must certify that the Debtors have provided all information that the Broker believes is necessary to launch a sales process on the Refinancing End Date.

<u>Milestones / Reporting</u>

1. Debtors must comply with the following Milestones:
    a. Sale Process Milestones
        i.   Obtain court approval of the retention of the Broker on or before March 19, 2025.
        ii.  File a motion for approval of bidding procedures that are acceptable to Agent on or before April 15, 2025.
        iii. Obtain court approval of such bidding procedures on or before April 25, 2025
    b. Refinancing Milestones
        i.   The "Refinancing Date" shall mean April 15, 2025.;
    c. Auction Process Timeline / Milestones
        i.   If a Refinancing has not closed by the Refinancing Date ( including obtaining court approval of the Refinancing), an auction in respect of all of the Debtors' assets shall be scheduled to take place on or before June 16, 2025.
        ii.  If there are no third party bids submitted by the bid deadline other than by the Agent, the auction will be cancelled.
        iii. A hearing to approve the sale of Debtors' assets to winning bidder (or Agent, if no other third party bidders), will be scheduled for 3 Business Days after conclusion of auction (or cancellation of auction) or as soon thereafter as the Court can accommodate.
        iv.  Sale of assets to winning bidder or Agent, as applicable, shall close no later than 5 Business  Days after entry of a court order approving such sale
2. Reporting
    a. Debtors to provide weekly reporting on receipts and disbursements with variances to the budgeted amounts, monthly rent roll, monthly leasing status report, and monthly trailing 12 month profit and loss statement and to the extent that ZRS is solely responsible for any such reporting, shall use its commercially reasonable efforts to cause ZRS to provide such reports
    b. Debtors to forward to Lenders all material ZRS communication related to the Property in addition to a bi-weekly property update call with ZRS
    c. Debtors' counsel shall provide updates at least every ten days to counsel for Agent regarding the status of the Refinancing efforts and Debtors shall provide copies of all Refinancing term sheets that the Debtors are actively pursuing.
    d. Debtors to provide Agent with all diligence materials made available to prospective purchasers in sale process
    e. Broker to hold weekly update call to provide updates to Lenders on the sales process and provide regular  prospect reports
    f. Debtors shall use reasonable efforts to have ZRS provide Agent  bi-weekly accounts payable reporting
    g. Debtors shall have 3 business days, upon written notice, to cure any reporting default within Debtors' control.
    h. Agent will sign a customary confidentiality agreement that will include, among other things, a clause restricting Agent from communicating with parties regarding the Property

**Execution Copy**

that have been identified by the Debtors as pursuing a Refinancing or purchase of the Debtors' assets.

3. Remedies
   a. If Debtors breach any Sales Process Milestones or Auction Process Timeline/Milestones provided for herein, any uncured Reporting Obligation or any of the terms of the final order approving the use of cash collateral, Agent may elect to issue a notice of breach and, on the third business day after providing such notice, entitling it to (x) (a) terminate use of cash collateral and obtain automatic relief from stay; or (b) reschedule its motion to dismiss for the next available court date; and (y), refile the Guarantor Lawsuit. The Lenders will consent to an expedited hearing to the extent the Debtors seek such a hearing to challenge the notice of breach.

4. Adequate protection
   a. Debtors shall pay all reasonable fees and expenses of Agent and Lenders

5. Other
   a. Debtors shall seek authority to continue the existing cash management system. All payments pursuant to the approved budget shall be made by ZRS. The Agent will transfer funds on an as needed basis from the reserve account to ZRS to enable payments to be made pursuant to the then approved budget.
   b. All deadlines set forth in this Agreement may not be extended absent written agreement of the parties.
   c. While the parties acknowledge that the Debtors have the right to repay the Loan in full at any time prior to the auction, including after the Refinancing Date, following the Refinancing Date the Debtors shall dedicate sufficient time and resources on the auction and sale process.

Debtors:

_____

By attorney


Parlex 15 Finco, LLC -- Seriex XIII

_____

By attorney


Mediator:

_____

that have been identified by the Debtors as pursuing a Refinancing or purchase of the Debtors' assets.

3. Remedies
   a. If Debtors breach any Sales Process Milestones or Auction Process Timeline/Milestones provided for herein, any uncured Reporting Obligation or any of the terms of the final order approving the use of cash collateral, Agent may elect to issue a notice of breach and, on the third business day after providing such notice, entitling it to (x) (a) terminate use of cash collateral and obtain automatic relief from stay; or (b) reschedule its motion to dismiss for the next available court date; and (y), refile the Guarantor Lawsuit. The Lenders will consent to an expedited hearing to the extent the Debtors seek such a hearing to challenge the notice of breach.

4. Adequate protection
   a. Debtors shall pay all reasonable fees and expenses of Agent and Lenders

5. Other
   a. Debtors shall seek authority to continue the existing cash management system. All payments pursuant to the approved budget shall be made by ZRS. The Agent will transfer funds on an as needed basis from the reserve account to ZRS to enable payments to be made pursuant to the then approved budget.
   b. All deadlines set forth in this Agreement may not be extended absent written agreement of the parties.
   c. While the parties acknowledge that the Debtors have the right to repay the Loan in full at any time prior to the auction, including after the Refinancing Date, following the Refinancing Date the Debtors shall dedicate sufficient time and resources on the auction and sale process.

Debtors:

_____
By attorney


Parlex 15 Finco, LLC -- Seriex XIII


_____
By attorney


Mediator:


_____

that have been identified by the Debtors as pursuing a Refinancing or purchase of the Debtors' assets.

3. Remedies
   a. If Debtors breach any Sales Process Milestones or Auction Process Timeline/Milestones provided for herein, any uncured Reporting Obligation or any of the terms of the final order approving the use of cash collateral, Agent may elect to issue a notice of breach and, on the third business day after providing such notice, entitling it to (x) (a) terminate use of cash collateral and obtain automatic relief from stay; or (b) reschedule its motion to dismiss for the next available court date; and (y), refile the Guarantor Lawsuit. The Lenders will consent to an expedited hearing to the extent the Debtors seek such a hearing to challenge the notice of breach.

4. Adequate protection
   a. Debtors shall pay all reasonable fees and expenses of Agent and Lenders

5. Other
   a. Debtors shall seek authority to continue the existing cash management system. All payments pursuant to the approved budget shall be made by ZRS. The Agent will transfer funds on an as needed basis from the reserve account to ZRS to enable payments to be made pursuant to the then approved budget.
   b. All deadlines set forth in this Agreement may not be extended absent written agreement of the parties.
   c. While the parties acknowledge that the Debtors have the right to repay the Loan in full at any time prior to the auction, including after the Refinancing Date, following the Refinancing Date the Debtors shall dedicate sufficient time and resources on the auction and sale process.

Debtors:

_____

By attorney


Parlex 15 Finco, LLC  -- Seriex XIII


_____

By attorney


Mediator: