UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

| | |
|---|---|
| Via Mizner Owner I, LLC<br>(Jointly Administered) | Case No. 25-10369-EPK |
| Via Mizner Pledgor I, LLC | Case No. 25-10371-EPK |
| Debtors.<br>_____/ | |

**EMERGENCY MOTION TO APPROVE
STALKING HORSE BIDDER AND BID PROTECTIONS**

**Basis for emergency relief:**

**The Debtor seeks to accept a stalking horse bid of $230 million for substantially all of its assets. The stalking horse bidder requires the Debtor to seek approval at the Court's earliest availability. Additionally, the Debtor requires approval of the stalking horse bid on an emergency basis to allow sufficient time for the Debtor's broker to parlay the stalking horse bid into qualified bids for a competitive auction, all to the benefit of the Debtor's estate and creditors. Accordingly, the Debtor requests a hearing on or before June 4, 2025, or at the Court's earliest availability.**

**Local Rule 6004-1(B) Concise Statement Regarding Sale:**

d.  **Stalking Horse Bid and Stalking Horse Protections:** Subject to higher and better offers, and subject to ultimate Court approval, the Debtor has accepted the offer of **Cardone Real Estate Acquisitions, LLC ("Cardone")**, a non-insider third party, to purchase the Assets of the Debtor for the cash sum of $230,000,000.  Through this motion, the Debtor seeks the approval of bid protections that include, in favor of Cardone, a $2,000,000 Termination Fee and an Expense Reimbursement capped at $100,000.

Via Mizner Owner I, LLC (the "**Debtor**"), pursuant to 11 U.S.C. §§ 363(b), 363(f), and 365, Federal Rules of Bankruptcy Procedure 6004 and 6006, and Local Rule 6004-1, hereby requests that the Court approve (i) the Debtor's entry into the attached Purchase and Sale Agreement (the "**PSA**") with Cardone Real Estate Acquisitions, LLC (the "**Purchaser**") as the

1

stalking horse bidder for the sale of substantially all of the Debtor's assets and (ii) the stalking horse protections granted to Purchaser.  In support, the Debtor state as follows:

## RELEVANT FACTS

1. On January 15, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. The Debtor is a Florida limited liability company whose principal place of business is in Boca Raton.  The Debtor owns and operates the apartments known as 101 Via Mizner located at 101 E. Camino Real, Boca Raton, FL 33432 (the "**Real Property**").

4. Pursuant to the *Final Order Granting Emergency Motion to Authorize Use of Cash Collateral* [ECF No. 86] (the "Final Order") and the Debtor's agreement with the Agent[1] for the conduct of this case, the Debtor sought and received approval of Bid Procedures for an action and sale of the Property.

5. The Bid Procedures provides that the Debtor may enter into an asset purchase agreement with a stalking horse bidder and provide bidding protections to a designated stalking horse bidder including a break-up fee and expense reimbursement by May 16, 2025, or seek Court approval after that date. Pursuant to that provision of the Bid Procedures, the Debtor seeks to enter into the PSA, attached hereto as **Exhibit A**, with Purchaser. The PSA provides for a purchase price of $230,000,000 (the "Purchase Price"). The Purchase Price exceeds the claim of the Debtor's secured lenders and provides sufficient funds to pay most, if not all claims, once any objections to

---

[1] The Agent is Parlex 15 Finco, LLC Series XIII, a series of Parlex 15 Finco, LLC, the administrative agent for the Debtor's secured creditors.

disputed unsecured claims are resolved.[2]

6. As more fully described in the PSA, Purchaser has agreed to purchase substantially all of the Debtor's assets (the "**Property**") including (i) the Real Property; (ii) all furniture, fixtures, equipment, and other tangible personal property owned by the Debtor located in or on the Real Property; (iii) the Debtor's interest in all residential leases; (iv) and the Debtor's interest in all non-residential leases.

7. The Debtor shall retain the following assets, as more fully described in the PSA (the "**Excluded Property**"): (i) all trade names, trademarks and other marks identifying or associated with the Real Property, including the Debtor's interests in the name "Via Mizner"; (ii) any website domain names, URLs, social media accounts such as Facebook, Instagram, and Twitter, and web hosting agreements; (iii) all claims and causes of action (including counterclaims) and defenses, including all avoidance claims or causes of action arising under chapter 5 of the Bankruptcy Code or similar State law; (iv) all insurance policies; (v) all corporate books and records, any books and records to the extent relating to Excluded Property; and (vi) the Debtor's rights under the PSA including the Purchase Price.

8. The foregoing recitation of the assets sold and retained is merely a summary, and interested parties should refer to the relevant sections of the PSA for a complete understanding of all the terms.

9. Pursuant to the PSA, the Purchaser will pay an earnest money deposit of $20,000,000, to be credited against the Purchase Price. The deposit will be due 48 hours after entry of the Order granting the relief requested in this Motion, and the Order shall so provide. The PSA also provides for closing within 30 days of approval of the sale. The 30-day deadline to close

---

[2] The Property is phase 1 of a larger development. Lenders on phases 2 and 3 have filed proofs of claim which assert a right to proceeds from any sale of the Property.

is an extension from the 5-day deadline in the Bid Procedures, which the Debtor is negotiating with the Agent to receive its consent to this extension pursuant to Article IX of the Bid Procedures.

10. The PSA is subject to higher and better offers and contemplates the Debtor soliciting such offers and proceeding to a public auction sale. While the auction is currently set for June 16, 2025, with a sale hearing on June 18, 2025, the Debtor will file a motion contemporaneously with this Motion to move the auction and the sale hearing in order to provide sufficient time to find additional qualified bidders.

11. Pursuant to the PSA, if the Debtor terminates the sale to Purchaser as a result of the Debtor entering into and consummating an Alternative Transaction, then the Debtor shall pay to Purchaser a $2,000,000 termination fee (the "**Termination Fee**"), solely payable from the proceeds of an Alternative Transaction, and reimburse Purchaser for up to $100,000 in expenses (the "**Expense Reimbursement**").

## RELIEF REQUESTED AND LEGAL BASIS FOR RELIEF

12. The Debtor requests Court approve the Debtor's entry into the Stalking Horse Agreement and the Stalking Horse Protections contained therein.

A. **The Termination Fee and Expense Reimbursement are Warranted.**

13. To compensate Purchaser for serving as the "stalking horse," thereby subjecting its bid to higher and better offers, the Debtor seeks authority to pay the Termination Fee of $2,000,000.00 and the Expense Reimbursement capped at $100,000, solely to the extent required by the PSA. The ability of the Debtor to offer Purchaser such stalking horse protections benefits the estate because it affords the Debtor the means necessary to induce Purchaser to submit its bid prior to an auction, and thereby establish a floor and appropriate parameters for the submission of qualified bids in connection with the Auction. Thus, even if the Purchaser is paid the Termination Fee and Expense Reimbursement because it is not the successful bidder, the estate

will have benefited from the higher floor established by the PSA and the certainty that such bid brings to the sale process.

14. Bankruptcy courts in numerous districts, including this District, have routinely approved stalking horse protection similar to the requested Termination Fee and Expense Reimbursement under the "business judgment rule," which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See Cottle v. Storer Commc'ns, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't. Stores*, 683 F. Supp. 422 (S.D.N.Y. 1988); *Samjens Partners I v. Burlington Indus., Inc.*, 663 F. Supp. 614 (S.D.N.Y. 1987).

15. The use of a stalking horse in a public auction process for sales pursuant to section 363 of the Bankruptcy Code is an encouraged practice in chapter 11 cases since the use of a stalking horse bid is in many circumstances the best way to maximize value in an auction process by locking in a purchase price "floor" before exposing an asset to auction. Thus, the use of bidding protections, including break-up fees, has become an established practice in chapter 11 cases. *See, e.g., In re Loral Space & Commc'ns, Ltd.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Aug. 19, 2003) (approving termination fee and reimbursement of expenses); *Adelphia Bus. Solutions, Inc.*, Case No. 02- 11389 (REG) (Bankr. S.D.N.Y. Jan. 24, 2003) (approving termination fee and reimbursement of expenses); *In re Bradlees Stores, Inc.*, Case No. 00-16035 (BRL) (Bankr. S.D.N.Y. Jan. 11, 2001) (approving termination fee and reimbursement of expenses); *In re Integrated Res., Inc.*, 147 B.R. at 662 (approving termination fee and reimbursement of expenses); *In re Marrose Corp.*, 1992 WL 33848 at *5 (Bankr. S.D.N.Y. 1992) (bidding incentives are "meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers."); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bid procedures may be "legitimately necessary to convince

a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking.") (citation omitted).

16.     The Debtor believes, in its business judgment, that the Termination Fee and the Expense Reimbursement are both reasonable and appropriate in view of, among other things, the timing of the transaction contemplated by the PSA and the amount of the Purchase Price. Moreover, both stalking horse protections were a material inducement for, and condition of, the Purchaser's entry into the PSA.  Accordingly, the Debtor requests that the terms of the PSA relating to the Termination Fee and the Expense Reimbursement be approved.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order (a) approving the PSA and authorizing the Debtor to enter into the PSA; and (b) approving the Termination Fee and Expense Reimbursement stalking horse protections for the Purchaser.

    Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Counsel for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law
shess@slp.law

By: /s/ Bradley S. Shraiberg
    Bradley S. Shraiberg, Esq.
    Florida Bar No. 121622
    Samuel W. Hess, Esq.
    Florida Bar No. 1044184

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on June 2, 2025.     /s/ Bradley. S. Shraiberg