# EXHIBIT A

# PURCHASE AND SALE AGREEMENT
**(101 VIA MIZNER APARTMENTS)**

THIS PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made and entered into as of _____, 2025 (the "**Effective Date**") between **VIA MIZNER OWNER I, LLC**, a Florida limited liability company ("**Seller**"), and **CARDONE REAL ESTATE ACQUISITIONS, LLC**, a Delaware limited liability company, its successors and assigns ("**Purchaser**"), with reference to the following:

A.      Seller is the owner of the improved real property (the "**Real Property**") described on **Exhibit A** attached hereto together with certain personal property located upon or used in connection with such Real Property and certain other assets relating thereto, all as more particularly described in Section 2 hereof.

B.      The Seller is presently a debtor-in-possession under Chapter 11 of the United States Bankruptcy Code in a case filed on January 15, 2025, and styled *In re Via Mizner Owner I, LLC*, Case No. 25-10369-EPK (the "**Chapter 11 Case**") pending in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), and therefore, pursuant to Sections 363 and 365 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), the sale contemplated by this Agreement is subject under all circumstances to the approval of the Bankruptcy Court;

C.      Seller desires to sell to Purchaser, and Purchaser desires to purchase from Seller, the Real Property, together with certain personal property and related assets on the terms and subject to the conditions contained in this Agreement and the requirements of the Chapter 11 Case.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **BASIC TERMS AND DEFINITIONS; REFERENCES**

1.1.      **Basic Terms and Definitions**.

1.1.1      **Closing Date**.  Subject to the entry of the Sale Order (as defined below), the Closing shall occur on that date which is no later than thirty (30) days after the Sale Order is entered by the Bankruptcy Court (the "**Closing Date**"). If the Sale Order has not been entered by the Bankruptcy Court on or before the date of July 18, 2025, Purchaser may terminate this Agreement upon written notice to Seller, whereupon this Agreement shall automatically terminate, the parties shall be released from all further obligations under this Agreement (except pursuant to any provisions which by their terms survive a termination of this Agreement), the Earnest Money shall be returned to Purchaser within three (3) business days of such termination without additional consent or instruction from Seller, and Purchaser shall immediately return (or destroy) all original Property Information in its possession or control.

1.1.2      **Escrow Agent**.  The escrow agent shall mean Old Republic Title Insurance Company ("**Escrow Agent**"): whose address is 595 S Federal Hwy, Suite 200, Boca Raton, FL 33432.

1.2.   **References**.  All references to Exhibits refer to Exhibits attached to this Agreement and all such Exhibits are incorporated herein by reference.  The words "herein," "hereof," "hereinafter" and words of similar import refer to this Agreement as a whole and not to any particular Section hereof.

2.   **PURCHASE AND SALE**.

(a)   **Property being sold and transferred**.  Subject to the terms and conditions of this Agreement, Seller agrees to sell, assign and transfer to Purchaser and Purchaser agrees to purchase from Seller, for the Purchase Price set forth in Section 4 hereof, all of Seller's right, title and interest in and to the following (collectively, the "**Property**"):

2.1.   The Real Property, together with all of Seller's right title and interest in and to the buildings and all other improvements located thereon (the buildings and such other improvements are referred to herein collectively as the ("**Improvements**"); all references hereinafter made to the Real Property shall be deemed to include all right, title and interest of Seller in and to the rights, privileges, easements and appurtenances benefitting the Real Property and/or the Improvements situated thereon and all right, title and interest of Seller, if any, in and to all strips and gores and any land lying in the bed of any street, road or alley, open or proposed, adjoining such Real Property;

2.2.   All furniture, fixtures, equipment, and other tangible personal property owned by Seller and located in or on the Real Property including, if any and without limitation, furniture, furnishings, office supplies, housekeeping supplies, laundry supplies, recreational equipment, carpeting, window treatments, appliances and other tangible personal property ("**Tangible Personal Property**") owned by the Seller and the Seller's interest, if any and to the extent assignable, in any such property leased by the Seller, now or hereafter located upon and used in connection with the operation, ownership or management of the Real Property, including items set forth on the list attached to this Agreement as **Exhibit B**, except any such personal property belonging to tenants under the Residential Leases or any Retail Leases (each as defined below), or the management agent, ZRS PROPERTY MANAGEMENT (the "**Property Manager**") (collectively, the "**Personal Property**");

2.3.   All of Seller's right, title and interest in and to all intangible personal property related to the Real Property, the Improvements and the operation thereof, including the following, if any and to the extent assignable at no cost to Seller: (i) all warranties and guaranties (whether express or implied) from contractors, subcontractors, architects, engineers, design professionals, manufacturers, material and labor suppliers and any other parties involved in the design, development, construction or repair of the Property which are now in effect and are assignable; (ii) all entitlements, site plan approvals, building permits, certificates of use and occupancy, business licenses and other governmental permits, licenses, approvals, certificates and authorizations pertaining to the Property or the development, use or occupancy thereof which are assignable (collectively, the "**Permits**"); (iv) all resident lists, data and correspondence and current resident and lease files, and telephone numbers (to the extent assignable); (v) all surveys, studies, reports, blueprints, drawings, plans and specifications (including structural, HVAC, mechanical and plumbing plans and specifications) and other documentation for or with respect to the condition, development, construction, maintenance, repair or operation of the Property or any part

thereof, and all soil tests, physical conditions reports, environmental reports, to the extent any of the foregoing are included in the Property Information (hereafter defined) (collectively, the "**Intangible Property**");

2.4.    The Seller's interest in all residential residency agreements, leases, licenses, concessions, and other use or occupancy agreements of space in the Improvements (including all leases and reservations for leases that have not commenced), and all guaranties related thereto and all security deposits outstanding thereunder (together with any interest thereon pursuant to applicable law or the applicable lease or other document) in effect as of the Closing Date (collectively, the "**Residential Leases**"); provided that, for the avoidance of doubt, the definition Residential Leases expressly excludes any Retail Leases (defined below);

2.5.    The Seller's interest in all non-residential leases, licenses, concessions, and other use or occupancy agreements of space in the Improvements (including all leases and reservations for leases that have not commenced), and all guaranties related thereto and all security deposits outstanding thereunder (together with any interest thereon pursuant to applicable law or the applicable lease or other document) in effect as of the Closing Date, if any (collectively, the "**Retail Leases**"); provided that, for the avoidance of doubt, the definition of Retail Leases expressly excludes any Residential Leases;

2.6.    To the extent assignable at no cost to Seller, all of Seller's interests in all management, leasing, service, supply, utility, equipment rental, webhosting, maintenance, repair and other contracts and agreements related to the operation, management, leasing, repair or maintenance of the Real Property (collectively, the "**Contracts**"), other than the Rejected Contracts (as defined in Section 5.4).

(b)    **Excluded Property**.    Notwithstanding anything to the contrary herein, the following assets and properties of or in the possession of Seller (the "**Excluded Property**") shall be retained by Seller:

(i)    The Purchase Price hereunder;

(ii)    any Uncollected Rents (as such term is defined in Section 8.5.1 hereof) attributable to periods prior to the Closing, any Rents or other amounts payable by any former tenants of the Property, any judgments, stipulations, orders, or settlements with any tenants under the Residential Leases and Retail Leases for periods prior to the Closing, and any judgments, stipulations, orders, or settlements with any former tenants of the Property;

(iii)    any proprietary property (excluding customary books and records and financial statements of such parties) of Seller or Property Manager that a seller of similar real estate would not customarily share with a purchaser of such real estate;

(iv)    all Contracts to which Seller is a party, other than Transferred Contracts, ("**Excluded Contracts**");

(v)    all trade names, trademarks and other marks identifying or associated with the Real Property and the Improvements, including the Seller's rights and interests in the name "**Via Mizner**" and all derivatives and formulations thereof and all other

names of the Property, any related trademarks and service marks, and all marketing artwork, stationery, brochures, booklets, manuals and promotional and advertising materials concerning the Property or any part thereof; in this regard, promptly after Closing but in any event within 30 days after Closing Purchaser shall remove and replace all signage to eliminate the phrase or term "**Via Mizner**"; this obligation shall survive Closing and Purchaser shall indemnify and hold Seller harmless from any loss cost, claim or expense which may arise as a result of its use of the trade name or trademark for Via Mizner;

(vi)    any   website   domain   names   (including,   but   not   limited   to 101viamiznerbocaraton.com (the "**Domain Name**"), which is registered with GoDaddy.com, URLs, social media accounts such as Facebook, Instagram and Twitter and web hosting agreements used in connection with the operation or leasing of the Property, including all linked web pages; promptly after Closing but in any event within 30 days after Closing Purchaser shall remove and replace references to the phrase or term "**Via Mizner**"; this obligation shall survive Closing and Purchaser shall indemnify and hold Seller harmless from any loss cost, claim or expense which may arise as a result of the use of the trade name or trademark for Via Mizner;

(vii)   all claims and causes of action (including counterclaims) and defenses, including all avoidance claims or causes of action arising under sections 544, 547, 548, 549 and 550 of the Bankruptcy Code or any similar state Law (the "**Avoidance Actions**");

(viii)  all insurance policies in the name of Seller and all rights and claims of any nature with respect to or under any such insurance policy, including any recoveries thereunder and any rights to assert claims seeking any such recoveries;

(ix)    all rights and interests of Seller under this Agreement and any related agreements contemplated hereunder; and

(x)     (A) all corporate books and records, (B) any books and records to the extent relating to the Excluded Property, (C) any books and records or other materials of or in the possession of Seller that (x) Seller is required by applicable law or by order of the Bankruptcy Court to retain, (y) Seller reasonably believes is necessary to enable Seller to prepare and/or file tax returns;

3.    **BANKRUPTCY COURT APPROVAL**

3.1    The purchase and sale of the Property is subject to and conditioned on the approval of the Bankruptcy Court in the Chapter 11 Case, pursuant to the terms of the Bid Procedures approved by the Bankruptcy Court on April 28, 2025 (Doc. No. 108) (the "**Bid Procedures**"). Purchaser acknowledges that Seller also intends to seek approval of the sale of the Property contemplated herein pursuant to a plan of reorganization in the Chapter 11 Case, which will provide for the exemption from documentary stamps, recording taxes and transfer taxes in accordance with Section 1146 of the Bankruptcy Code.

3.2    Purchaser agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of an order of the Bankruptcy Court approving the sale of the

Property contemplated herein pursuant to sections 363 and 365 of the Bankruptcy Code (the "**Sale Order**"), including furnishing testimony, proffers of testimony, affidavits or other documents or information for filing with and presentation to the Bankruptcy Court for the purposes, among others, of providing necessary assurances of future performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under § 363(m) of the Bankruptcy Code.  Counsel to Purchaser shall consult in good faith with counsel to Seller prior to filing, joining in, or otherwise supporting in any manner whatsoever any motion or other pleading relating to the sale of the Property hereunder, and Purchaser shall not, without the prior written consent of Seller, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to the sale of the Property hereunder to the extent inconsistent with this Agreement.

3.3    The Sale Order shall be in a form and content reasonably satisfactory to Seller and Purchaser and shall contain, among other things, the following:

(i)    Provide that the Seller has the full power and authority to sell the Property to Purchaser pursuant to the terms hereof and that the sale of the Property to Purchaser pursuant to the Agreement is authorized and approved in all respects;

(ii)    Provide that the transactions proposed herein are fair and equitable, are in the best interests of its creditors and the bankruptcy estate, and that the sale is a valid and proper exercise of the Seller's business judgment;

(iii)    Provide that, at Closing hereunder, title to the Property shall be conveyed to Purchaser free and clear of any and all liens encumbrances, claims, liabilities and interests pursuant to Section 363(f) of the Bankruptcy Code, except as provided herein, with any such liens, encumbrances, claims, liabilities and interests to attach to the proceeds of the sale of the Property to the same extent, validity and priority that they attached to the Property prior to the sale, together with provisions to enjoin and estop actions in violation of this subparagraph;

(iv)    Provide that, at Closing hereunder, the Contracts, Residential Leases and applicable Retail Leases shall be assumed and assigned by Seller to Purchaser pursuant to Section 365 of the Bankruptcy Code;

(v)    Find that the notice of the sale to creditors and parties in interest is adequate and sufficient under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and applicable law, and that no other or further notice is necessary;

(vi)    Find that the sale of the Property to Purchaser pursuant to the Agreement has been undertaken at arm's length, without collusion and that Purchaser and its permitted assignee are "good faith purchasers" as defined in Section 363(m) of the Code, and provide that that Purchaser, and its permitted assignee, are entitled to the protections afforded to a purchaser pursuant to Section 363(m) of the Code, and that the sale contemplated hereunder is not subject to avoidance under Section 363(n) of the Code;

(vii)    Find that Purchaser does not constitute a successor of the Seller;

(viii)    Find that the terms and conditions of the Agreement are fair and reasonable; and

(ix)    Determine that the transfer of the Property pursuant to this Agreement constitutes a transfer for reasonably equivalent value under the Bankruptcy Code, the Uniform Conveyance Act and the Uniform Fraudulent Transfers Act.

4.    **PURCHASE PRICE AND EARNEST MONEY.**

4.1.    **Purchase Price**.  The purchase price for the Property shall be **Two Hundred Thirty Million and No/100 Dollars ($230,000,000.00)** (the "**Purchase Price**"). The Seller agrees to consider in good faith the acceptability of Purchaser's requested allocation of the Purchase Price amongst the Real Property, Personal Property, and the Intangible Property which is reasonably acceptable to the parties. Any such itemization shall be shown on the Closing Statement (as hereinafter defined).

4.2.    **Payment of Purchase Price**.  The Purchase Price shall be payable as follows:

4.2.1    Pursuant to the Bid Procedures, as part of a Qualified Bid, Purchaser shall deposit in escrow with Escrow Agent, in cash or current funds, the sum of **Twenty Million and No/100 Dollars ($20,000,000.00)** (the "**Earnest Money**"). If requested by Purchaser, in its sole and absolute discretion, the Earnest Money shall be invested through Closing in United States treasury obligations or such other interest bearing accounts or securities reasonably acceptable to Seller but only as are directed and approved by Purchaser in writing. For purposes of this Agreement, any interest accruing on the Earnest Money from time to time shall be deemed part of the Earnest Money and shall be administered, paid or credited (as the case may be) in the same manner as the Earnest Money.  The Bid Procedures shall govern the treatment of the Earnest Money. Except as otherwise set forth in the Bid Procedures, the Earnest Money shall be nonrefundable, subject to the terms of this Agreement. In all events the Earnest Money shall be applicable towards the Purchase Price.

4.2.2    Subject to the terms and provisions hereof, at or prior to Closing, the Purchase Price, less the Earnest Money, plus or minus applicable prorations and credits pursuant to Section 8.5 hereof, shall be placed by Purchaser into a closing escrow with Escrow Agent by wire transfer for immediate disbursement to Seller at Closing.

4.3.    **Disposition of Earnest Money Upon Failure to Close**.  If the Closing fails to occur due to Purchaser's default under this Agreement (all of the conditions to Purchaser's obligation to close having been satisfied or waived), then the disposition of the Earnest Money and all interest accrued thereon shall be governed by Section 11.1 hereof; if the Closing fails to occur due to Seller's default under this Agreement (all of the conditions to Seller's obligation to close having been satisfied or waived), then the disposition of the Earnest Money and all interest accrued thereon shall be refunded to Purchaser pursuant to Section 11.2 hereof; and if the Closing fails to occur due to the failure of any of the conditions set forth in Sections 7.1 or 7.2 hereof other than as a result of Purchaser's or Seller's default under this Agreement, then the disposition of the Earnest Money and all interest accrued thereon shall be governed by Section 8.4 hereof.

Notwithstanding anything set forth above, in the event of any conflict between the foregoing terms in this <u>Section 4.3</u> and the Bid Procedures, the Bid Procedures shall control.

5.      **PROPERTY INFORMATION; TITLE REVIEW; INSPECTIONS AND DUE DILIGENCE; CONFIDENTIALITY.**

     5.1.    **Property Information**.  As soon as reasonably practicable after the Effective Date, Seller shall make available certain documents relating to the Property set forth on **Exhibit I** through a drop box or other electronic medium (collectively, the "**Property Information**"). The Property Information will be provided without any representations or warranties as to the accuracy, sufficiency or completeness thereof. In the event the contents of the Property Information are, in Purchaser's sole opinion, unacceptable to Purchaser for any reason whatsoever, or for no reason, Purchaser may terminate this Agreement by written notice to Seller not later than 5:00 P.M. EST within three (3) business days after Purchaser's receipt of the last of the Property Information ("**Termination Notice**"), where upon the Earnest Money shall be returned to Purchaser and the parties shall be released from all further obligations under this Agreement (except pursuant to any provisions which by their terms survive a termination of this Agreement).

     5.2.    **Title and Survey Review; Title Policy**.

          5.2.1    **Delivery of Title Commitment**.  The Property Information shall include a commitment for the Title Policy (as defined below) issued by Greenberg Traurig, PA as agent for Old Republic Title Insurance Company ("**Title Company**") to deliver to Purchaser a commitment for the Title Policy (as defined in Section 5.2.2 below) (the "**Title Commitment**"), together with legible copies of all underlying documentation described in such Title Commitment (the "**Title Documents**"). The Property Information shall also include an updated survey of the Property (the "**Survey**").

          5.2.1.1 **Title Review and Cure**. Within three (3) business days after Purchaser's receipt of the last of the Title Commitment, the Title Documents and the Survey (the "**Title Review Period**"), Purchaser shall have the right to disapprove the condition of title and survey matters related to the Real Property.  On or before the expiration of the Title Review Period, Purchaser may deliver to Seller and Title Company written notice ("**Purchaser's Title Notice**") of Purchaser's disapproval of any matters reflected in the Title Commitment and the Survey. The failure of Purchaser to deliver to Seller Purchaser's Title Notice on or before the expiration of the Title Review Period shall be deemed to constitute Purchaser's approval of the condition of title to the Real Property shown in the Title Commitment, the Survey. If Purchaser timely delivers a Purchaser's Title Notice or a Purchaser's Updated Title Notice (as hereinafter defined) whereby Purchaser disapproves any matter of title or survey shown in the Title Commitment, or the Survey, then Seller may, but shall have no obligation to (except as provided below), within five (5) business days after its receipt of the Purchaser's Title Notice or, if applicable, the Purchaser's Updated Title Notice ("**Seller's Election Period**"), elect to eliminate or cure, or elect not to eliminate nor cure, the disapproved title and survey matters by giving Purchaser written notice ("**Seller's Title Notice**") of those disapproved title and survey matters, if any, which Seller agrees to so eliminate or cure by the Closing Date.   Seller's failure to deliver Seller's Title Notice within such five (5) day period shall be deemed to constitute Seller's refusal to eliminate or cure any such disapproved title or survey matters.  Purchaser acknowledges and agrees that any title exception disapproved

by Purchaser shall be deemed eliminated or cured to the extent that the Sale Order eliminates or cures such exception, or Seller either causes such exception to be removed from the Title Policy (as such term is defined in Section 5.2.2 hereof) or to be affirmatively insured over (at Seller's sole election and in a manner reasonably acceptable to Purchaser).  If the Sale Order does not eliminate or cure such disapproved title matters, or Seller does not elect to eliminate or cure any disapproved title matters, or Seller fails to timely deliver Seller's Title Notice, then Purchaser shall have the right, upon delivery to Seller and Title Company (on or before five (5) business days following the expiration of Seller's Election Period) of a written notice, to either: (a) waive its prior disapproval, in which event said disapproved matters shall be deemed approved; or (b) terminate this Agreement.  Failure to take either one of the actions described in (a) and (b) above shall be deemed to be Purchaser's election to take the action described in clause (a) above. If Seller commits to cure any disapproved title matter(s) in Seller's Title Notice and Seller fails to do so on or prior to the Closing Date, then Purchaser shall have the right, upon delivery to Seller and Title Company (on or before the Closing Date) of a written notice, to either: (a) waive its prior disapproval, in which event said disapproved matters shall be deemed approved; or (b) terminate this Agreement. If Purchaser elects to terminate this Agreement as provided herein, this Agreement shall automatically terminate, the parties shall be released from all further obligations under this Agreement (except pursuant to any provisions which by their terms survive a termination of this Agreement), the Earnest Money shall be returned to Purchaser within three (3) business days of such termination without additional consent or instruction from Seller, and Purchaser shall immediately return (or destroy) all original Property Information in its possession or control. Purchaser shall have been deemed to have approved any title exception that Seller is not obligated to remove (it being acknowledged that Seller shall be obligated to remove any Required Removals (defined below)) and to which either Purchaser did not object as provided above, or to which Purchaser did object, but with respect to which Purchaser did not terminate this Agreement.  In no event shall Seller be obligated to eliminate or cure any title exceptions except for the Required Removals. Notwithstanding anything contained herein to the contrary, Seller shall be required to satisfy, cure, or obtain the release of: (a) any and all liens of an ascertainable amount arising by, through or under Seller, including by and through the Sale Order (including, without limitation, mechanics' liens or potential mechanics' liens resulting from disclosures in any of Seller's Closing Documents (as hereinafter defined), it being acknowledged and agreed that Purchaser shall receive a Title Policy at Closing without any mechanic lien exceptions arising by, through or under Seller and Seller shall be obligated to provide any affidavits, indemnities or other assurances reasonably required by the Title Company in order to provide such insurance coverage), (b) any exceptions or encumbrances to title which are created by Seller after the Effective Date without Purchaser's consent that are not either Residential Leases or Retail Leases entered into in accordance with the terms and conditions of this Agreement; and (c) those exceptions or encumbrances to title that Seller agreed to remove in Seller's Title Notice (collectively, the "**Required Removals**"). Purchaser shall have no obligation to object to the Required Removals in (a) and (b) above and such items shall not be Permitted Exceptions.  If, on the Closing Date, there are any liens or encumbrances that Seller is obligated to discharge under this Agreement, Seller shall have the right to either: (i) arrange, at Seller's cost and expense, to have the Title Company endorse over such lien or encumbrance in a manner reasonably acceptable to Purchaser insuring against enforcement of such liens or encumbrances against, or collection of the same out of, the Property and such lien or encumbrance shall not appear as an exception to title on Purchaser's title insurance policy, (ii) use any portion of the Purchase Price to pay and discharge the same, either by way of payment or

via bond reasonably satisfactory to the Title Company and to Purchaser, or (iii) rely on the Sale Order to sell the Property free and clear of any and all such liens or encumbrances, with such liens or encumbrances to attach to the Purchase Price in the same priority that existed with respect to the Property; provided, in any event, that the Required Removals are removed from the Title Policy.

5.2.2    **Delivery of Title Policy at Closing**.  At Closing, Title Company shall issue and deliver to Purchaser, or shall irrevocably commit to issue and deliver to Purchaser, with respect to the Real Property an policy of title insurance consistent with the Title Commitment, along with any requested title endorsements that are available where the Property is located (the "**Title Policy**") issued by Title Company as of the date and time of the recording of the Deed (hereinafter defined) for the Real Property, in the amount of the Purchase Price, insuring Purchaser as the owner of good and marketable title to the Real Property subject only to the Permitted Exceptions (as hereinafter defined).  For purposes of this Agreement, "**Permitted Exceptions**" shall mean and include: (a) real estate taxes, including, without limitation, special assessments, not yet due and payable, (b) standby fees, taxes and assessments by any taxing authority for the year (or applicable tax period) in which Closing occurs, and subsequent years, not yet due and payable, (c) matters affecting the Real Property which are created by or with the prior written consent of Purchaser, (d) the rights of the tenants, as tenants only, under the Residential Leases or Retail Leases affecting the Real Property without any option to purchase or acquire an interest in the Property as disclosed in the most recent rent roll, a true and correct copy of which is attached here as Exhibit D (the "**Rent Roll**"), (e) other than the Required Removals (which Seller must cure at Closing), all exceptions disclosed by the Title Commitment relating to the Real Property and which are approved or deemed approved by Purchaser in accordance with Section 5.2.1.1 hereof, and (f) all applicable laws, ordinances, rules and governmental regulations (including, without limitation, those relating to building, zoning and land use) affecting the development, use, occupancy or enjoyment of the Real Property.

5.2.3    **Changes to the Title Commitment**.  If Purchaser receives an update to the Title Commitment or the Survey following the expiration of the Title Review Period that discloses an additional exception affecting title that Purchaser disapproves that was not caused by Purchaser, its agents (solely to the extent acting with the direction or permission of Purchaser), contractors or employees, Purchaser shall have five (5) business days after the date on which Purchaser has received such update within which to notify Seller in writing of any defects to which Purchaser objects ("**Purchaser's Updated Title Notice**"); provided that, Purchaser may only object to defects which first appear on such updates.  If Purchaser timely delivers a Purchaser's Updated Title Notice, then Seller may, but shall have no obligation to (except as provided below) respond as contemplated in Section 5.2.1.1 above, and Purchaser shall have the corresponding rights afforded to it in said Section 5.2.1.1.

5.3.    **Inspections**

5.3.1    **Inspections in General**.  Subject to the rights of tenants on the Property, commencing from the Effective Date and continuing through and including the term of this Agreement, Purchaser, its agents, contractors, and employees and agents, shall have a limited license (the "**License**") to enter upon the Real Property (accompanied by

representatives of Seller) for the purpose of making non-invasive inspections, at Purchaser's sole risk, cost and expense. Before any such entry, Purchaser shall provide Seller with a certificate of insurance naming Seller as an additional insured and with an insurer reasonably satisfactory to Seller for policies of general liability insurance which insure Purchaser and its agents with insurance limits of not less than Two Million Dollars ($2,000,000) combined single limit for personal and property damage. All of such entries upon the Real Property (including, without limitation, Purchaser's inspections of any tenant occupied space on the Real Property) shall be at reasonable times during normal business hours and after at least twenty-four (24) hours prior notice to Seller (which notice may be given solely via email to: Evan Davis at edavis@pennflorida.com, and Seller or Seller's agent shall have the right to accompany Purchaser during any activities performed by Purchaser on the Real Property. Notwithstanding anything stated to the contrary herein, (i) Purchaser shall not intentionally contact or speak to any of the tenants under the Residential Leases and Retail Leases, and (ii) all inspections of the Real Property shall not unreasonably and materially interfere with the rights of tenants. If any inspection or test by Purchaser, its agents, contractors, employees, partners, or prospective lenders damages the Real Property, Purchaser shall immediately restore the Real Property to substantially the same or better condition as existed before the inspection or test. **Purchaser shall defend, indemnify and hold harmless Seller and Seller's members and property managers and their respective officers, agents, contractors and employees harmless from and against any and all losses, costs, damages, claims, or liabilities, including but not limited to, mechanic's and materialmen's liens and Seller's reasonable out-of-pocket attorneys' fees, arising out of or in connection with Purchaser's, its agents, or contractors entry upon or inspection of the Real Property; <u>provided that</u>, Purchaser shall not be liable for: (i) any pre-existing conditions that are discovered, but not created or caused by Purchaser, unless exacerbated by Purchaser's inspections; or (ii) damages resulting from the negligent or willful acts of Seller, Property Manager, any tenants, or all of the preceding.** The License may be revoked by Seller upon a breach of this Section, which is not cured within five (5) business days after written notice to Purchaser of such breach with reasonable specificity, and shall in any event be deemed revoked upon Seller's or Purchaser's termination of this Agreement. The indemnity provisions of this <u>Section 5.3.1</u> shall survive termination of this Agreement for a period of one (1) year.

    5.4.   <u>**Contracts**</u>.

        5.4.1   <u>**Service Contracts**</u>. Pursuant to the Bid Procedures, Purchaser designates on Schedule 5.4.1 the Contracts, if any, that Purchaser desires the Seller to assume and assign to Purchaser at Closing (the "**Assumed Contracts**") and the Contracts Purchaser would like Seller to terminate or reject at Closing (the "**Rejected Contracts**"); provided, however, that pursuant to the Bid Procedures, Purchaser may modify Schedule 5.4.1 by no later than 7 days prior to the Closing Date and provided further Purchaser may not reject the Fire Alarm/Safety contract designated on Schedule 5.4.1 which has a one (1) year term. Purchaser shall identify to Seller in writing (the "**Contract Notice**") which of the Contracts Purchaser desires to assume. The Seller, at its option, shall either terminate the Rejected Contracts pursuant to their respective terms, or file a motion seeking to reject the Rejected Contracts pursuant to section 365 of the Bankruptcy Court, in either case at or prior to Closing, at Seller's sole cost and expense, with Seller providing reasonable written evidence of such

rejection or termination.  If Purchaser fails to timely designate a Contract as an Assumed Contract, then Purchaser shall be deemed to have elected to have Seller reject or terminate any such Contracts.  Pursuant to the Bid Procedures, Seller agrees to seek approval from the Bankruptcy Court to assume and assign the Assumed Contracts to Purchaser pursuant to section 365 of the Bankruptcy Code.  The cure costs associated with any such assumption and assignment shall be borne by Seller.

              5.4.2      **Management Agreement**. Whether or not specified by notice from Purchaser to Seller, the Contract between Seller and Property Management (the "**Existing Property Management Agreement**") shall be a Rejected Contract and shall be terminated by Seller as of Closing.

     5.5.      **Confidentiality**.  Prior to Closing or in the event the Closing never occurs, the Property Information and all other information (other than matters of public record or matters generally known to the public) furnished to, or obtained through inspection of the Property by, Purchaser, its affiliates, lenders, employees, attorneys, accountants and other professionals or agents relating to the Property, will be treated by Purchaser, its affiliates, lenders, employees and agents as strictly confidential, and will not be disclosed to anyone (except as reasonably required in connection with Purchaser's evaluation of the Real Property) except to Purchaser's affiliates and its and their employees, partners, directors, officers, agents, advisors, and consultants (including without limitation, advisors, actual and prospective lenders and investors, mortgage brokers, property managers, contractors and attorneys) who agree to maintain the confidentiality of such information, and will be returned to Seller (or destroyed) by Purchaser if the Closing does not occur upon Seller's written request.  The terms of this Agreement including the Purchase Price and other material economic terms of the transaction will not be disclosed by Purchaser or Seller to anyone prior to or after the Closing, excluding any information that can be gleaned from public records or as otherwise expressly permitted herein.  Notwithstanding anything herein to the contrary, Purchaser acknowledges and agrees that Seller shall be required to file a copy of this Agreement with the Bankruptcy Court in connection with the Bid Procedures and Sale Hearing or otherwise required by the Bankruptcy Code. Other than any filings in the Chapter 11 Case, prior to Closing, Purchaser and Seller agree not to make any public announcements or public disclosures or communicate with any media with respect to the subject matter hereof without the prior written consent of the other party hereto (in its sole and absolute discretion).  Following the Closing: (i) Purchaser may announce or disclose, without the consent of Seller, that it has acquired the Property, and (ii) Seller may announce or disclose, without the consent of Purchaser, that it has sold the Property, provided in each case Purchaser and Seller shall not be permitted to disclose, without the prior written consent of the other unless otherwise permitted herein, any specific information relating to the terms of this Agreement, including, without limitation, the Purchase Price to the extent that such information is not publicly available, *provided however* that Purchaser acknowledges that this Agreement will be filed in the Chapter 11 Case. The confidentiality provisions of this Section 5.5 shall not apply to any disclosures made by Purchaser as and to the extent required by the Bankruptcy Code, by law, by court order, or in connection with any subpoena served upon Purchaser; provided Purchaser shall provide Seller with written notice, to the extent legally permissible, before making any such disclosure.  The terms and provisions of this Section 5.5 shall survive the Closing or the earlier the termination of this Agreement.

6.        **OPERATIONS AND RISK OF LOSS**

6.1.    **Ongoing Operations**.  During the pendency of this Agreement, but subject to the limitations set forth below, as may be required by the Bankruptcy Court or as may be required to comply with the Bankruptcy Code, Seller shall: (i) carry on its businesses and activities relating to the Real Property and the operations thereon in all material respects in the same manner (which manner must be at least commercially reasonable) as it did prior to the Effective Date of this Agreement, including making any necessary repairs and replacements to deliver the Property on the Closing Date in the condition required by this Agreement, and otherwise operating and maintaining the Property in compliance with all applicable legal requirements, (ii) maintain in full force and effect property, casualty, liability, builder's risk insurance and other reasonable insurance coverages that provide coverage not less than the insurance maintained by Seller (its contractors, subcontractors or material suppliers, or any other parties acting as a service provider, agent or representative of Seller) as of the Effective Date, (iii) cause the Property Manager and leasing agent for the Property to continue to manage and lease the property in the same manner (which manner must be at least commercially reasonable) as it did prior to the Effective Date of this Agreement (subject to the express terms and conditions hereof), and (iv) perform its material obligations under the Residential Leases, Contracts and other agreements that may affect the Property.

6.2.    **New Contracts**.  Following the Effective Date, Seller will not enter into any contract that will be an obligation affecting the Real Property  subsequent to the Closing (except for contracts entered into in the ordinary course of business that are terminable without cause on not more than 30-days' notice without penalty or premium, and those entered into pursuant to Section 6.3 below), without the prior written consent of the Purchaser, which shall not be unreasonably withheld, conditioned or delayed by Purchaser; provided that, notwithstanding anything stated to the contrary herein, Seller may, at any time without Purchaser's reasonable consent, enter into: (i) any contract reasonably required for Seller to comply with certain terms and provisions contained in the Residential Leases or Retail Leases, or (ii) any contract reasonably necessary for health and/or safety reasons relating to the Real Property (the "**Required New Contracts**"). If Seller enters into any Required New Contracts, Seller shall provide Purchaser with written notice thereof and Purchaser will have the option, within five (5) business days following receipt of Seller's notice, to either: (a) accept such Required New Contract, in which event such Required New Contract shall be deemed an Assumed Contract; or (b) in Purchaser's sole and absolute discretion, reject such Required New Contract, in which event the Seller shall be required to terminate such Required New Contract on or prior to Closing, providing reasonable evidence of such termination.

6.3.    **Residential Leasing Arrangements**.  Seller shall be entitled to enter into new leases, amend, or terminate any Residential Lease or Retail Lease in the ordinary course of Seller's business.   Pursuant to the Bid Procedures, Purchaser designates the Residential Leases set forth in Exhibit D, if any, to be assumed and assigned to Purchaser; provided, however, that pursuant to the Bid Procedures, Purchaser may modify the list of designated Residential Leases by no later than 7 days prior to the Closing Date.  As part of the Bid Procedures, Seller agrees to seek approval from the Bankruptcy Court to assume and assign such Residential Leases to Purchaser pursuant to section 365 of the Bankruptcy Code.   In the event Seller enters into any Residential Leases after the entry of the Sale Order pursuant hereto, then Seller shall seek to assign such Residential Lease(s) to Purchaser in connection with the sale hereunder.  In connection **with Seller's leasing activities:**

(a) Seller shall cause the Property Manager to provide Purchaser with a monthly written status report of all activity of Seller under this <u>Section 6.3</u>, which report will include copies of such Residential Leases, amendments or modifications thereto, together with an updated Rent Roll and a description of Seller's leasing costs (commissions, incentives, etc.) in a separate concession schedule if Seller so desires (each a, "**Leasing Status Update**"), and (b) any and all new Residential Leases, and amendments and renewals entered into shall in each case be executed in the ordinary course of business based on Seller's past leasing practices.

        6.3.1     **Retail Leasing Arrangements**.  During the term of this Agreement, Purchaser shall have the right, in Purchaser's sole and absolute discretion, to approve all new Retail Leases, Retail Lease amendments and Retail Lease terminations.  Purchaser shall advise Seller of its approval or rejection of any new Retail Lease, Retail Lease amendment, or Retail Lease termination requiring Purchaser's consent pursuant to this <u>Section 6.5</u> within five (5) business days after Seller has submitted the same to both Purchaser and its counsel. Purchaser's failure to approve or reject the same in writing within such five (5) business day period shall be deemed an acceptance of the submission. Notwithstanding any provision of this <u>Section 6.5</u> to the contrary, Purchaser shall not be obligated to assume any Retail Lease entered into by Seller in violation of this <u>Section 6.3.1</u>.  Pursuant to the Bid Procedures, Purchaser designates the Retail Leases set forth on <u>Schedule 6.3</u>, if any, to be assumed and assigned to Purchaser; provided, however, that pursuant to the Bid Procedures, Purchaser may modify <u>Schedule 6.3</u> by no later than 7 days prior to the Closing Date.  As set forth in the Bid Procedures, Seller agrees to seek approval from the Bankruptcy Court to assume and assign such Retail Leases to Purchaser pursuant to section 365 of the Bankruptcy Code.  In the event Seller enters into any Retail Leases after the entry of the Sale Order pursuant hereto, then Seller shall seek to assign such Retail Lease(s) to Purchaser in connection with the sale hereunder.

        6.4.    **Tenant Estoppels**.  In the event that, at Closing, any Retail Lease exists for any portion of the Real Property and/or the Improvements exists as of Closing, Seller shall use commercially reasonable efforts to deliver an estoppel certificate executed by the tenant(s) under the Retail Leases thereunder at least three (3) business days prior to the Closing, in the form required under such Retail Lease or, if acceptable to the applicable tenant, in a form reasonably acceptable to Purchaser and the applicable tenant ("**Tenant Estoppel**"), each such Tenant Estoppel being dated within sixty (60) days of the Closing Date and not disclosing any landlord obligations, defaults, or claims against the landlord thereunder (unless Seller provides Purchaser with one or more of a credit, adequate written assurances and security/guaranties that are reasonably acceptable to Purchaser that all such outstanding obligations will be satisfied, at Seller's sole cost). Notwithstanding anything herein to the contrary, in the event that Seller is unable to obtain any such Tenant Estoppels, then such failure shall not constitute a default hereunder and Purchaser agrees to rely upon an order of the Bankruptcy Court in respect of and approving the assumption and/or assignment of such Retail Leases in lieu of the Tenant Estoppel.

        6.5.    **Damage or Condemnation**.  Risk of loss resulting from any condemnation or eminent domain proceeding which is commenced or has been threatened against the Real Property and/or Improvements before the Closing, and risk of loss to the Real Property and/or the Improvements due to fire, flood or any other cause before the Closing, shall remain with Seller.  If before the Closing the Real Property, the Improvements, or any portion thereof shall be damaged

or destroyed such that the cost of restoring same to their original condition exceeds an amount equal to two percent (2%) of the Purchase Price ("**Material Damage**"), or if the Real Property, the Improvements or any material portion thereof shall be subjected to a bona fide threat of condemnation or shall become the subject of any proceedings, judicial, administrative or otherwise, with respect to the taking by eminent domain or condemnation ("**Material Taking**"), then Purchaser may elect not to acquire the Property by delivering written notice of such election to Seller within ten (10) business days after Purchaser's receipt of written notice from Seller of such damage or taking (or bona fide threat thereof) ("**Purchaser's Election Period**"), in which event Purchaser shall no longer be obligated to purchase, and Seller shall no longer be obligated to sell, the Property and this Agreement shall automatically terminate, whereupon the Earnest Money shall be refunded to Purchaser within one (1) business day following such termination.  For purposes of this Section, a Material Taking will be deemed to occur if a condemnation or eminent domain event, without limitation, would be reasonably likely to cause one or more of the following to occur: (1) adversely affect existing access to or from the Property, (2) materially and adversely affect the current or intended operations of the Property, and (3) reduce available parking levels at the Property (with the assumption that all leasable areas are fully leased and occupied) below that required by, or in general cause a violation of, any applicable laws or any Residential Lease or Retail Lease, rental agreement, easement, covenant or restriction affecting all or any portion of the Property. In the event of such automatic termination, Purchaser shall immediately return all original Property Information to Seller (or destroy the same), and except for those provisions of this Agreement which expressly survive the termination of this Agreement, the parties hereto shall have no further obligations hereunder.  If the Closing Date is within Purchaser's Election Period, then, in the event Purchaser does not terminate this Agreement as aforesaid, Closing shall be extended to the date which is ten (10) business days following expiration of Purchaser's Election Period. If Purchaser fails to make an election during Purchaser's Election Period, and in any event if there has not been Material Damage or a Material Taking, this Agreement shall remain in full force and effect, the purchase contemplated herein, less any interest taken by eminent domain or condemnation, shall be effected with no further adjustment, and at the Closing, Seller shall assign, transfer and set over to Purchaser (or provide a credit to Purchaser for such payment(s) (including insurance proceeds and condemnation awards) that have been received by Seller) all of the right, title and interest of Seller in and to any awards that have been or that may thereafter be made for such taking, and Seller shall assign, transfer and set over to Purchaser any insurance proceeds that may thereafter be made for such damage or destruction, including any rent loss insurance applicable to any period on or after the Closing.  For purposes of this <u>Section 6.09</u>, the determination as to whether Material Damage or a Material Taking has occurred shall be made by a contractor mutually and reasonably agreed upon by the Purchaser and Seller.

6.6.    **Personal Property**.  Seller shall not remove any Tangible Personal Property except as may be required for necessary repair or replacement in the ordinary course of business, which replacement shall be of equal (or greater) utility, value, and quality as the removed Tangible Personal Property as existed prior to requiring repair or removal.

7.    **CONDITIONS TO PURCHASER'S AND SELLER'S OBLIGATIONS.**

7.1.    **Conditions to Purchaser's Obligations**.  The Closing and Purchaser's obligation to consummate the transaction contemplated by this Agreement are subject to the satisfaction of the following conditions for Purchaser's benefit (or Purchaser's waiver thereof, it being agreed

that Purchaser may waive any or all of such conditions) on or prior to the Closing Date or on the dates designated below for the satisfaction of such conditions:

7.1.1    All of Seller's representations and warranties contained herein shall be true and correct in all material respects as of the Effective Date and as of the Closing Date, subject to any qualifications hereafter made to any of Seller's representations;

7.1.2    As of the Closing Date, Seller shall have performed its obligations hereunder, in all material respects, and all deliveries to be made at Closing by Seller shall have been properly tendered;

7.1.3    The Bankruptcy Court shall have entered the Sale Order approving the sale of the Property to Purchaser, or its permitted assignee, and the Sale Order shall not be subject to a stay by a court of competent jurisdiction;

7.1.4    Other than the Chapter 11 Case, there shall exist no actions, suits, arbitrations, claims, attachments, proceedings, general assignments for the benefit of creditors, insolvency, bankruptcy, reorganization or other proceedings, pending or threatened against Seller that would materially and adversely affect Seller's ability to perform its respective obligations under this Agreement;

7.1.5    Except for the Chapter 11 Case, matters pending in the Chapter 11 Case or stayed by the pendency of the Chapter 11 Case (the "**Seller Ongoing Litigation**"), there shall exit no pending action, suit or proceeding with respect to Seller before or by any court or administrative agency that would materially and adversely affect Seller's ability to perform its respective obligations under this Agreement;

7.2.    **Conditions to Seller's Obligations**.  The Closing and Seller's obligations to consummate the transaction contemplated by this Agreement are subject to the satisfaction of the following conditions for Seller's benefit (or Seller's waiver thereof, it being agreed that Seller may waive any or all of such conditions) on or prior to the Closing Date or the dates designated below for the satisfaction of such conditions:

7.2.1    All of Purchaser's representations and warranties contained herein shall be true and correct in all material respects as of the Effective Date and as of the Closing Date;

7.2.2    As of the Closing Date, Purchaser has performed its obligations hereunder, in all material respects, and all deliveries to be made at Closing by Purchaser shall have been tendered;

7.2.3    The Bankruptcy Court shall have entered the Sale Order approving the sale of the Property to Purchaser, or its permitted assignee, and the Sale Order shall not be subject to a stay by a court of competent jurisdiction;

7.2.4    Excluding the Seller Ongoing Litigation and also the Chapter 11 case against Seller or claims or proceedings arising therefrom, there shall exist no actions, suits, arbitrations, claims, attachments, proceedings, assignments for the benefit of creditors,

insolvency, bankruptcy, reorganization or other proceedings, pending or threatened against Purchaser that would materially and adversely affect Purchaser's ability to perform its obligations under this Agreement.

7.3 **Failure or Waiver of Conditions Precedent.** In the event any of the conditions set forth in Sections 7.1 or 7.2 are not fulfilled or waived, the party benefitted by such conditions may, by written notice to the other party, terminate this Agreement, whereupon all rights and obligations hereunder of each party shall be at an end except those that expressly survive any termination. Either party may, at its election, at any time or times on or before the date specified for the satisfaction of the condition, waive in writing the benefit of any of the conditions set forth in Sections 7.1 and 7.2 above. In the event this Agreement is terminated as a result of the failure of any condition set forth in Section 7, unless such failure is due to a Purchaser Default, Purchaser shall be entitled to a refund of the Earnest Money. In any event, Purchaser's and Seller's consent to the close of Escrow pursuant to this Agreement shall waive any remaining unfulfilled conditions contemplated in this Section 7. Further, if, notwithstanding the non-satisfaction of any conditions set forth in Section 7.1, the Closing occurs except as hereinafter provided, there shall be no liability on the part of Seller or Purchaser, as applicable, for breaches of representations and warranties of which the other party had actual knowledge as of the Closing, and any such breaches shall be deemed waived by Purchaser and Seller, respectively.

8. **CLOSING**. The closing and consummation of the transaction contemplated by this Agreement (the "**Closing**") shall occur through escrow with Escrow Agent on the Closing Date. The Closing shall occur in accordance with the following provisions.

8.1. **Seller's and Purchaser's Deliveries**. The documents to be delivered by the parties pursuant to this Section 8.1 are hereinafter referred to as the "**Closing Documents**."

8.1.1 **Seller's Deliveries**. On or before the Closing Date, Seller shall deliver in escrow to Escrow Agent the following:

8.1.1.1 **Deed**. A special warranty deed ("**Deed**") in the form attached hereto as Exhibit E, which shall be executed and acknowledged by Seller.

8.1.1.2 **Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale**. Two (2) original counterparts of an Assignment of Residential Leases and Contracts and Bill of Sale (the "**Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale**") in the form attached hereto as Exhibit F executed by Seller.

8.1.1.3 **State Law Disclosures**. Such disclosures and reports as are required by applicable state and local law in connection with the conveyance of the Real Property, including but not limited to, copies of any required real estate transfer tax, excise or documentary stamp declarations executed by Seller or any other similar documentation required to evidence the payment of any tax imposed by the state, county, or city on the transaction contemplated hereby, provided that no such evidence shall be required in the event that the Seller obtains an order of the Bankruptcy Court under section 1146 of the Bankruptcy exempting the Seller from the payment of such tax(es);

          8.1.1.4 **FIRPTA**.  A Foreign Investment in Real Property Tax Act affidavit executed by Seller and in a customary form reasonably acceptable to Seller and Purchaser and which satisfied the requirements of Section 1445 of the Internal Revenue Code of 1986, as amended (the "**Code**").

          8.1.1.5 **Additional Documents**.  Any additional documents that Escrow Agent or Title Company may reasonably require for the proper consummation of the transaction contemplated by this Agreement, including such statements or affidavits concerning the Residential Leases, any Retail Leases, mechanic's liens, gap coverage and other title matters as may be reasonably required by Title Company in order to issue the Title Policy.

          8.1.1.6 **Certificate of Representations and Warranties**. A certificate, dated as of Closing and executed by Seller, reaffirming (or disclosing modifications, as applicable) the representations and warranties in all material respects given by Seller in this Agreement, which certificate will include an updated Rent Roll dated within ten (10) days of the Closing Date.

          8.1.1.7 **Termination of Agreements**. Terminations of the Existing Management Agreement (unless previously terminated pursuant to Section 5.4.2 above), and all other contracts to be terminated pursuant to Section 5.4;

          8.1.1.8 **Authority.** Evidence of the existence, organization and authority of Seller and of the authority of persons executing documents on behalf of Seller reasonably satisfactory to the Escrow Agent and the Title Company, which shall be included in the Sale Order.

          8.1.2      **Purchaser's Deliveries**.  On or before the Closing Date, Purchaser shall deliver in escrow to Escrow Agent the following:

          8.1.2.1 **Purchase Price**.  The Purchase Price due pursuant to Section 4.2.2 hereof, less the Earnest Money, plus or minus applicable prorations, deposited by Purchaser with Escrow Agent in immediate, same day federal funds wired for credit into Escrow Agent's escrow account in time to permit Escrow Holder to close Escrow on the Closing Date.

          8.1.2.2 **Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale**.  Two (2) original counterparts to the Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale executed by Purchaser.

          8.1.2.3 **State Law Disclosures**.  Any transfer documents or certificates required by any applicable governing body or law to complete this transaction, including, without limitation, any forms relating to the transfer tax, the recordation tax or other similar tax.

          8.1.2.4 **Additional Documents**.  Any additional documents that Escrow Agent or Title Company may reasonably require for the proper consummation of the transaction contemplated by this Agreement.

          8.1.3      **Closing Statements/Escrow Fees; Tenant Notices**.  Concurrently with the Closing, Seller and Purchaser shall deposit with Escrow Agent an executed closing statement prepared by Escrow Agent in the form required by Escrow Agent and consistent with this Agreement (the "**Closing Statement**") and Seller and Purchaser shall execute at the

Closing, and deliver to each tenant under Retail Leases immediately after the Closing, tenant notices regarding the sale of the Real Property in the form attached hereto as <u>Exhibit G</u>.

        8.1.4    **Post-Closing Deliveries**.  Immediately after the Closing, to the extent in Seller's possession, Seller shall deliver to the Purchaser's property manager at the Real Property: any original Residential Leases and Retail Leases in Seller's possession; copies or originals of all Contracts, receipts for deposits (including, but not limited to, receipts for all tenant security deposits); and all keys, if any, used in the operation of the Property.

   8.2.    **Escrow Agent's Closing Obligations**.  On the Closing Date, provided that the conditions set forth in <u>Sections 7.1</u> and <u>7.2</u> hereof have been satisfied or waived, Escrow Agent shall take the following actions in the order indicated below:

        8.2.1    With respect to all closing documents delivered to Escrow Agent hereunder, and to the extent necessary, Escrow Agent is authorized to insert into all blanks requiring the insertion of dates the Closing Date or such other date as Escrow Agent may be instructed in writing by Seller and Purchaser;

        8.2.2    Deliver to Seller: (i) by wire transfer of federal funds, the cash portion of the Purchase Price due pursuant to <u>Section 4.2.2</u> hereof, plus or minus, as the case may be, the amounts determined in accordance with the provisions of <u>Section 8.5</u> hereof, (ii) one (1) fully executed original of the Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale, (iii) conformed copies of the recorded Deed, and (iv) counterparts of the documents referred to in <u>Section 8.1</u> hereof;

        8.2.3    Record the Deed in the appropriate records of the County in which the Real Property is located;

        8.2.4    Deliver to Purchaser: (i) one (1) original of the Assignment of Residential Leases, Retail Leases, and Contracts and Bill of Sale; (ii) a conformed copy of the Deed; and (iii) counterparts of the documents referred to in <u>Section 8.1</u> hereof.

        8.2.5    Cause Title Company to issue the Title Policy for Purchaser's interest in the Real Property in accordance with the provisions of <u>Section 5.2.2</u> hereof; and

        8.2.6    Deliver to Seller and Purchaser an executed closing statement, countersigned by Escrow Agent.

   8.3.    **Escrow, Closing and Title Charges**.

        8.3.1    At the Closing, escrow, title charges and other closing costs shall be allocated between Seller and Purchaser as follows:

         8.3.1.1 Seller shall pay: (a) all transfer taxes or stamps assessed based on the portion of the Purchase Price allocated to the Real Property unless such taxes or stamps are exempted by order of the Bankruptcy Court, (c) the premium for the standard owner's Title Policy and for the cost of endorsements used to cure any defects raised in Purchaser's Title Notice which Seller elects to cure pursuant to Section <u>5.2.1.1</u> above, (d) all outstanding mortgages or deeds of

trust on the Property or Seller's interest therein, together with any fees and costs assessed by holders of such instruments with respect to the pay-off or defeasance of all mortgage liens, and (e) one-half (1/2) of any escrow fees or similar charges of Escrow Agent.

8.3.1.2 Purchaser shall pay: (a) any additional premium for endorsements relative to the Title Policy required by Purchaser or Purchaser's lender; (b) recording costs for the Deed and for all documents other than those paid by Seller pursuant to <u>Section 8.3.1.1</u> above; (c) any documentary stamps or similar taxes associated with any mortgage Purchaser places on the Property or its interest therein; (d) all costs of Purchaser's investigation of the Property, including the cost of any environmental reports or investigations ordered by Purchaser; (e) the cost of any intangible taxes; (f) the costs for any update or recertification to the Survey obtained by Purchaser, and (g) one-half (1/2) of any escrow fees or similar charges of Escrow Agent.

8.3.1.3 Except to the extent otherwise specifically provided herein, all other expenses incurred by Seller and Purchaser with respect to the negotiation, documentation and closing of this transaction, including, without limitation, Purchaser's and Seller's attorneys' fees, shall be borne and paid by the party incurring same.

8.3.1.4 Other costs will be paid by Seller or Purchaser, as applicable, as specified by other provisions of this Agreement or, if no provision is made in this Agreement, in accordance with local custom in the county in which the Property is located, as determined, in good faith, by Escrow Agent.

8.4.    **Procedures Upon Failure of Condition**.  Except as otherwise expressly provided herein, if any condition set forth in <u>Sections 7.1</u> or <u>7.2</u> hereof is not timely satisfied or waived for a reason other than the default or breach of Purchaser or Seller under this Agreement:

8.4.1.1 This Agreement and the respective rights and obligations of Seller and Purchaser hereunder shall terminate (other than the provisions hereof which shall survive expressly survive termination) at the written election of the party for whose benefit such condition was imposed, which written election must be made on or before the Closing Date;

8.4.1.2 Escrow Agent shall promptly return to Purchaser the Earnest Money and all interest accrued thereon, and to Seller and Purchaser all documents deposited by them respectively, which are then held by Escrow Agent;

8.4.1.3 Purchaser shall return to Seller the Property Information (or destroy the same); and

8.5.    **Prorations**.  The day of Closing shall belong to Purchaser and all prorations hereinafter provided to be made as of the Closing shall each be made as of the end of the day before the Closing Date.  In each such proration set forth below, the portion thereof applicable to periods beginning as of Closing (i.e., the Closing Date) shall be credited to Purchaser or charged to Purchaser as applicable and the portion thereof applicable to periods through the day prior to the Closing Date shall be credited to Seller or charged to Seller as applicable.

8.5.1    **Collected Rents**.  All rents and all other income (including any nonrefundable fees and nonrefundable deposits of any nature received by Seller prior to

Closing, all of which shall be deemed the sole property of Seller) (hereinafter collectively referred to as "**Rents**") collected under Residential Leases or Retail Leases in effect on the Closing Date shall be prorated as of the Closing.  Rents due from tenants at Closing, which are attributable to the period prior to Closing, and which remain uncollected as of Closing (the "**Uncollected Rents**") shall not be prorated and, to the extent attributable to the period prior to the Closing, shall remain the property of Seller, and Purchaser agrees as provided below to accept such Uncollected Rents as trustee for Seller and to forward the portion of such Uncollected Rents attributable to Seller's period of ownership to Seller within fifteen (15) business days after Purchaser's receipt thereof. Purchaser shall apply Rents collected after the Closing first to Rents which are due to Purchaser as of Closing, second to Rents which were due to Purchaser after the Closing, and third to Rents which were due to Seller before the Closing.  Any prepaid Rents for the period following the Closing Date shall be paid over by Seller to Purchaser at the Closing.  Purchaser will have no obligation to pursue collection of any Uncollected Rents.  Seller may not pursue legal actions or other collection efforts for Uncollected Rents with respect to tenants whose Residential Lease or Retail Lease, as applicable, was assigned to Purchaser at Closing, but may take legal action against former tenants.

8.5.2    **Taxes and Assessments**.  Real estate and personal property taxes and assessments imposed by any governmental authority ("**Taxes**") with respect to the Property for the relevant tax year or period in which the Property is being sold and that are not yet due and payable or that have not yet been paid shall be prorated as of the Closing based upon one hundred percent (100%) of the most recent ascertainable assessed values and tax rates and based upon the number of days Purchaser and Seller will have owned the Property during such relevant tax year or period.  Seller shall receive a credit for any Taxes paid by Seller and applicable to any period after the Closing.

8.5.3    **Contracts**.  At Closing, Purchaser will assume the obligations for events first arising from and after the Closing Date under the Assumed Contracts.

8.5.4    **Tenant Deposits**.  All tenant security deposits and other deposits, if any, reflected on the updated Rent Roll delivered at Closing by Seller and not theretofore lawfully applied to tenant obligations under the applicable Residential Leases or Retail Leases shall be credited to Purchaser at the Closing.  As of the Closing, Purchaser shall assume Seller's obligations related to tenant security deposits to the extent of the actual security deposits credited to Purchaser at the Closing.  **Purchaser will indemnify, defend, and hold Seller harmless from and against all loss, cost, damages (including reasonable attorneys' fees) suffered by Seller arising from Purchaser's failure to return any tenant security deposit credited to Purchaser by Seller in accordance with this Agreement, in accordance with the terms of the applicable lease agreement, and such indemnity shall survive the Closing.**

8.5.5    **Utilities, Utility Deposits and Operating Costs**.  Utilities for the Property (excluding utilities for which payment is made directly by tenants), including water, sewer, electric, and gas, based upon the last reading of meters prior to the Closing, and other operating costs relative to the Property shall be prorated. Seller shall be entitled to a credit for all security deposits held by any of the utility companies providing service to the Real

Property which are actually transferred to Purchaser as of the Closing Date. Seller shall endeavor to obtain meter readings on the day before the Closing Date, and if such readings are obtained, there shall be no proration of such items and Seller shall pay at Closing the bills therefor for the period to the day preceding the Closing, and Purchaser shall pay the bills therefor for the period subsequent thereto. If the utility company will not issue separate bills, Purchaser will receive a credit against the Purchase Price for Seller's portion and will pay the entire bill prior to delinquency after Closing. If Seller has paid utilities in advance in the ordinary course of business, then Purchaser shall be charged its portion of such payment at Closing. If any utility bills are not ascertainable at the time of Closing, the parties will estimate the amount of such bill for the month of Closing based upon an average of bills from the prior three (3) months, Purchaser will receive a credit against the Purchase Price for Seller's portion of the estimated bill, Purchaser will pay the entire bill prior to delinquency after Closing, and the parties may adjust such proration pursuant to Section 7.5.8 below. Purchaser shall be responsible for making any security deposits required by utility companies providing service to the Real Property to the extent same are not transferred from Seller to Purchaser at Closing as provided above.

       8.5.6    **Owner Deposits**. Seller shall receive a credit from Purchaser at the Closing for the following (collectively, "**Owner Deposits**"): all bonds, deposits, letters of credit, set aside letters or other similar items, if any, that are outstanding with respect to the Real Property that have been provided by Seller or any of its affiliates to any governmental agency, public utility, or similar entity (to the extent assignable to Purchaser) which are refundable and which have been assigned to Purchaser as of the Closing. To the extent any Owner Deposits are not assignable to Purchaser; Purchaser shall replace such Owner Deposits and Seller (or its affiliates) shall receive a refund of such Owner Deposits. To the extent that any funds are released as a result of the termination of any Owner Deposits for which Seller did not get a credit, such funds shall be delivered to Seller immediately upon their receipt to the extent same are actually received by Purchaser.

       8.5.7    **Fees and Charges under Contracts**. Fees and charges under the Assumed Contracts shall be prorated at Closing on the basis of the periods to which such Assumed Contracts relate; provided that, any fees incurred in connection with the termination of Rejected Contracts or in connection with assignment of any Assumed Contracts or third party consents thereto shall be the sole responsibility of Seller, at Seller's sole cost and expense.

       8.5.8    **Final Adjustment After Closing**. If final prorations cannot be made at the Closing for any item being prorated under this Section 8.5, (a "**Post Closing Proration**"), then Purchaser and Seller agree to estimate such items on a fair and equitable basis, with any amounts payable by Seller being estimated on the Closing Statement based on 100% of the actual estimate, with final adjustment and payment to be made as soon as reasonably possible after the Closing (but in no event later than ninety (90) days following Closing). The terms and provisions of this Section 7.5.8 shall survive the Closing.

     8.6    **Domain Name**. Immediately following Closing, Seller will cause the DNS for the Domain Name for the Property to be changed and will initiate an account change for the Domain Name to an account or accounts designated by Purchaser. Within one (1) business day following

the Closing, Seller will provide to Purchaser administrative access to the Facebook, Twitter, Instagram and other similar social media accounts used exclusively for the Property without deleting or impairing Purchaser's access to the followers, subscribers, "likes" or "fans" thereof. Seller's obligations under this <u>Section 7.6</u> shall survive Closing.

 8.7 **Possession**. Upon Closing, possession of the Property shall be delivered to Purchaser, subject only to the Permitted Exceptions.

9. <u>**REPRESENTATIONS, WARRANTIES AND COVENANTS**</u>

 9.1. <u>**Seller's Representations and Warranties**</u>.  Seller makes the representations and warranties to Purchaser which are set forth below, as of the Effective Date and as of the Closing Date.

  9.1.1 Subject to and conditioned on approval from the Bankruptcy Court and entry of the Sale Order, this Agreement has been duly authorized, executed and delivered by Seller and all consents required under Seller's organizational documents or by law have been obtained.  All documents that are to be executed by Seller and delivered to Purchaser on the Closing Date have been, or on the Closing Date will be, duly executed, authorized and delivered by Seller.

  9.1.2 Seller is a limited liability company duly formed, currently existing and in good standing under the laws of the State of Delaware, and subject to and conditioned on approval from the Bankruptcy Court and entry of the Sale Order has the power and authority to consummate the transactions contemplated by this Agreement. Subject to and conditioned on approval from the Bankruptcy Court and entry of the Sale Order, Seller has obtained any and all consents required to enter into this Agreement and to consummate or cause to be consummated the transactions contemplated hereby, pursuant to section 365 of the Bankruptcy Code.

  9.1.3 Except as listed on <u>Exhibit C</u> (as such list may be updated by written notice thereof to Purchaser with respect to new Contracts entered into by Seller following the Effective Date in accordance with <u>Section 5.2</u> hereof) or as set in the Title Commitment, there are no other contracts or agreements related to the use, ownership or operation of the Property which would be binding upon Purchaser or the Property after the Closing.  True, correct, and complete copies of all Contracts have been delivered to Purchaser (or will be delivered as part of the Property Information).

  9.1.4 Neither Seller nor any of its respective officers, directors, shareholders, partners, members or affiliates (including without limitation indirect holders of equity interests in Purchaser) is or will be an entity or person: (i) that is listed in the Annex to, or is otherwise subject to the provisions of Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website,

http:www.treas.gov/ofac/t11sdn.pdf) (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in EO3224, (iv) is subject to sanctions of the United States government or is in violation of any federal, state, municipal or local laws, statutes, codes, ordinances, orders, decrees, rules or regulations relating to terrorism or money laundering, including, without limitation, EO13224 and the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, or (v) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) – (v) above are herein referred to as a "**Prohibited Person**"). Seller covenants and agrees that neither Seller nor any of its respective officers, directors, shareholders, partners, members or affiliates (including without limitation indirect holders of equity interests in Seller) shall (aa) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or (bb) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224.

9.2.    **Purchaser's Representations and Warranties**.    Purchaser makes the representations and warranties to Seller which are set forth below, as of the Effective Date and as of the Closing Date.

9.2.1    Purchaser is a limited liability company duly formed, currently existing and in good standing under the laws of the State of Delaware, is (or will be prior to Closing) qualified and in good standing to transact business in the State in which the Property is located and has the power and authority to consummate the transactions contemplated by this Agreement.  Each individual executing this Agreement on behalf of Purchaser represents and warrants to Seller that he or she is duly authorized to do so.

9.2.2    As of the Effective Date and as of the Closing Date, this Agreement has been duly authorized, executed and delivered by Purchaser and all consents required under Purchaser's organizational documents or by law have been obtained. All documents that are to be executed by Purchaser and delivered to Seller on the Closing Date have been, or on the Closing Date will be, duly executed, authorized and delivered by Purchaser.

9.2.3    Neither Purchaser nor any of its respective officers, directors, shareholders, partners, members or affiliates (including without limitation indirect holders of equity interests in Purchaser) is or will be an entity or person (i) that is listed in the Annex to, or is otherwise subject to the provisions of Executive Order 13224 issued on September 24, 2001 ("**EO13224**"), (ii) whose name appears on the United States Treasury Department's Office of Foreign Assets Control ("**OFAC**") most current list of "Specifically Designated National and Blocked Persons" (which list may be published from time to time in various mediums including, but not limited to, the OFAC website, http:www.treas.gov/ofac/t11sdn.pdf) (iii) who commits, threatens to commit or supports "terrorism", as that term is defined in EO3224, (iv) is subject to sanctions of the United States government or is in violation of any federal, state, municipal or local laws, statutes, codes, ordinances, orders, decrees, rules or regulations relating to terrorism or money laundering, including, without limitation, EO13224 and the Uniting and Strengthening America by

Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, or (v) who is otherwise affiliated with any entity or person listed above (any and all parties or persons described in clauses (i) – (v) above are herein referred to as a "**Prohibited Person**"). Purchaser covenants and agrees that neither Purchaser nor any of its respective officers, directors, shareholders, partners, members or affiliates (including without limitation indirect holders of equity interests in Purchaser) shall (aa) conduct any business, nor engage in any transaction or dealing, with any Prohibited Person, including, but not limited to, the making or receiving of any contribution of funds, goods, or services, to or for the benefit of a Prohibited Person, or (bb) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in EO13224.

        9.2.4   Purchaser represents that Purchaser is not purchasing any of the Property with "plan assets" of an Employee Benefit Plan subject to Title I of the Employee Retirement Income Security Act of 1974 or of a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "**Code**").

    9.3.   **Survival of Representations and Warranties**. The representations and warranties contained in Sections 9.1 and 9.2 shall not survive Closing.

    9.4.   **Notice Regarding Seller's Representations and Warranties**. Prior to Closing, if Purchaser has actual knowledge that any of Seller's representations or warranties are inaccurate, untrue or incorrect in any material respect, Purchaser shall promptly notify Seller, in writing, to that effect.  In the event that Purchaser notifies Seller of any such alleged inaccurate, untrue or incorrect representation or warranty, Seller shall not be deemed to be in default hereunder (unless Seller had actual knowledge of such breach of representation and warranty prior to the Effective Date), but shall nevertheless have an opportunity to correct or cure the inaccurate, untrue, or incorrect representation or warranty prior to the Closing Date, and Seller shall have the right to extend the Closing Date for up to thirty (30) days, by written notice thereof to Purchaser on or before the Closing Date (as it may have theretofore been extended under this Section 9.5) to correct or cure such inaccurate, untrue, or incorrect representation or warranty. If prior to the Closing Date, Seller obtains actual knowledge that any of Seller's representations or warranties are untrue, inaccurate or incorrect, Seller shall within two (2) business days of obtaining such knowledge, give Purchaser written notice thereof after obtaining such knowledge (but, in any event, at or prior to the Closing).  In either such event if any such inaccuracy, untruth, or incorrectness would: (i) reasonably be expected to impact the Property (or the value thereof) by at least $100,000.00, or (ii) reasonably be expected to impair Seller's ability to consummate the Closing in accordance with the terms hereof, and/or (iii) reasonably be expected to impair Purchaser's ability to consummate the Closing in accordance with the terms hereof, or which results in any of Purchaser's investors or capital partners retracting their commitment of equity to finance the purchase of the Property, and if the Seller is unable to correct or cure the inaccurate, untrue, or incorrect representation or warranty prior to the Closing Date (as it may have theretofore been extended under this Section 9.5), and Purchaser is unwilling to waive such inaccuracy, untruth, or incorrectness, then Purchaser shall have the right to terminate this Agreement by delivery to Seller of a written notice of termination, in which case: (x) the parties shall have no further rights or obligations hereunder, except for such obligations which expressly survive termination; (y) the Earnest Money shall be returned to Purchaser within one (1) business day of such termination; and

(z) Seller shall reimburse Purchaser for all Purchaser Reimbursable Expenses. In the event that Purchaser does not terminate this Agreement in accordance with the previous sentence, Purchaser shall be deemed to have waived such inaccurate, untrue or inaccurate representation or warranty contained in such notice and, notwithstanding anything set forth herein to the contrary, such representation or warranty shall not survive the Closing.

9.5.    **Hazardous Materials**.  Except as set forth in <u>Section 9.1.10</u>, Seller makes no representations or warranties as to the presence or absence of any Hazardous Materials (hereinafter defined) in, on, under or about the Property, including but not limited to asbestos or radon. The provisions of this <u>Section 9.6</u> shall survive Closing.

9.5.1    As used herein, the term "**Hazardous Materials**" shall mean any hazardous or toxic materials, substances or wastes, such as, without limitation: (a) substances defined as "hazardous substances," "hazardous materials," or "toxic substances" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("**CERCLA**"), the Resource Conservation and Recovery Act of 1976 ("**RCRA**"), and/or the Hazardous Materials Transportation Act (49 USC Section 1801, *et seq*.), as any of such acts are amended from time to time; (b) any materials, substances or wastes which are toxic, ignitable, corrosive or reactive and which are regulated by any local governmental authority, any agency of the State in which the Property is located or any agency of the United States of America; (c) asbestos, petroleum and petroleum based products, urea formaldehyde foam insulation, polychlorinated biphenyls (PCBs) and freon and other chlorofluorocarbons; and (d) those substances defined as any of the foregoing in the regulations adopted and publications promulgated pursuant to any Environmental Laws (defined in <u>Section 9.6.2</u> below)

9.5.2    For purposes of this Agreement, "**Environmental Laws**" includes without limitation the RCRA, CERCLA, and other federal laws governing the environment as in effect on the date of this Agreement together with their implementing regulations and guidelines as of the date of this Agreement, and all state, county and other local laws, regulations and ordinances that are equivalent or similar to the federal laws recited above or that purport to regulate Hazardous Materials.

The provisions of this <u>Section 9.6</u> shall survive Closing.

10.    **AS-IS TRANSACTION AND RELEASE; PURCHASER ACKNOWLEDGMENTS AND AGREEMENTS.**

10.1.    **As-Is Transaction, Purchaser Acknowledgments and Agreements**.  Purchaser hereby acknowledges and agrees as follows:

10.1.1    Except with respect to Seller's representations, warranties, covenants and obligations expressly set forth in this Agreement and the Closing Documents, Purchaser is acquiring the Property **"AS IS, WHERE IS" AND "WITH ALL FAULTS, LIABILITIES, AND DEFECTS, LATENT OR OTHERWISE, KNOWN OR UNKNOWN,"** in its present state and condition as of the Effective Date (reasonable wear and tear and casualty loss excepted), with no rights of recourse against Seller (or any related

or affiliated party) for same except as may be explicitly set forth in this Agreement or any of the Closing Documents.  Purchaser acknowledges that Purchaser will be given a full and complete opportunity to conduct its own investigation into the present state and condition of the Property.  Except with respect to Seller's representations, warranties, covenants and obligations expressly set forth in this Agreement and the Closing Documents, Purchaser represents and warrants as of the Closing that Purchaser is not relying on any representation or warranty of Seller. The provisions of this Section shall survive the Closing.

    10.1.2  Except with respect to Seller's representations, warranties, covenants and obligations expressly set forth in this Agreement and the Closing Documents, neither Seller nor any of Seller's agents, contractors, consultants, attorneys, or representatives have made, do not make, and specifically negate and disclaim, and Purchaser is not relying on, any representations, warranties, promises, covenants, agreements or guaranties of any kind or character whatsoever, whether express or implied, oral or written, past, present or future, of, as to, concerning, or with respect to: (i) the value of the Property; (ii) any income to be derived from the Property; (iii) the suitability of the Property for any and all activities and uses which Purchaser may conduct thereon, including without limitation, the possibilities for further development of the Property or construction thereon, the feasibility of adopting the condominium form of ownership or Purchaser's ability to market the same; (iv) the merchantability, marketability, or profitability of the Property or any improvements thereon; (v) the manner, quality, state of repair or lack of repair on the Property or any improvements thereon; (vi) the nature, quality or condition of the Property, including, without limitation, with respect to water conditions, soil, geological or geotechnical condition (including, without limitation, soil expansiveness, corrosivity, or stability, or seismic, hydrological, geological and topographical conditions and configurations, including, without limitation, any opinions or conclusions of any soils engineer(s) retained to perform geotechnical and/or soils studies or to oversee any soils engineering aspects of developing the Property); (vii) the compliance of or by the Seller, the Property, or its operation with any codes, laws, rules, ordinances, regulations of any applicable governmental authority or body; (viii) the manner or quality of the construction or materials incorporated into the Property; (ix) compliance with Environmental Laws or land use laws, rules, regulations, orders, codes or requirements, including, but not limited to, the Americans with Disabilities Act of 1990, the Federal Water Pollution Control Act, the U.S. Environmental Protection Agency regulations at 40 CFR, Part 261, the Clean Water Act, the Safe Drinking Water Act, the Hazardous Materials Transportation Act, the Toxic Substance Control Act, and/or any rules or regulations promulgated under any of the foregoing (as the same may be amended from time to time); (x) the presence or absence of radon gas, methane gas, or any hazardous materials at, on, under, or adjacent to the Property; (xi) the content, completeness or accuracy of any Property Information and/or Title Commitment; (xii) the conformity of any improvements to any plans or specifications, including, without limitation, any plans and specifications that may have been or may be provided to Purchaser; (xiii) the conformity of the Property to past, current or future applicable zoning or building requirements; (xiv) the existence of vested land use, zoning or building entitlements affecting the Property; (xv) water rights or the availability of or access to water; or (xvi) the presence or suitability of any utilities or availability thereof. Except with respect to Seller's representations, warranties, covenants and obligations expressly set forth in this Agreement and the Closing Documents, neither Seller nor its employees, agents, contractors, consultants, attorneys or representatives shall be liable for any

relief, including damages, rescission, reformation, allowance or adjustments based on the failure of the Property, including, but not limited to, amount of acreage, square footage, zoning, and environmental condition, to conform to any specific standard or expectation, or any third party documents or information. Notwithstanding any other provision herein, in the event that any Assumed Contracts contain any express representations or warranties from any contractor, subcontractor, agent, or consultant, Purchaser shall look solely to such contractor, subcontractor, agent, or consultant in the event of a breach thereof (unless such breach or default on the part of any such contractor, subcontractor, agent, or consultant also constitutes a breach of any of  Seller's representations or warranties contained in this Agreement or the Closing Documents), and shall not have any recourse against Seller in connection with any such breach by or attributable to that contractor, subcontractor, agent or consultant under the applicable Assumed Contract.  The provisions of this Section shall survive the Closing.

    10.2.  **Purchaser's Release of Seller**.

        10.2.1    AS A MATERIAL PART OF THE CONSIDERATION TO SELLER FOR THE SALE OF THE PROPERTY, PURCHASER, ON BEHALF OF ITSELF, AND ITS SUCCESSORS AND ASSIGNS, EXCEPT WITH RESPECT TO SELLER'S REPRESENTATIONS, WARRANTIES, COVENANTS AND OBLIGATIONS EXPRESSLY SET FORTH IN THIS AGREEMENT AND THE CLOSING DOCUMENTS, HEREBY IRREVOCABLY WAIVES, AND RELEASES SELLER, ITS MEMBERS, PRINCIPALS, AGENTS, REPRESENTATIVES, ATTORNEYS AND EMPLOYEES FROM ANY AND ALL CLAIMS, DEMANDS, OBLIGATIONS, DAMAGES, CAUSES OF ACTION AND LIABILITIES, WHETHER KNOWN OR UNKNOWN, OTHER THAN THOSE FOR BREACH OF SELLER'S REPRESENTATIONS AND WARRANTIES SET FORTH IN THIS AGREEMENT AND/OR THE CLOSING DOCUMENTS, THAT ARE BASED DIRECTLY OR INDIRECTLY ON, ARISE FROM OR IN CONNECTION WITH, OR ARE RELATED TO: (A) ANY DAMAGE, LOSS OR INJURY WHICH HERETOFORE HAVE BEEN OR WHICH HEREAFTER MAY BE SUSTAINED BY PURCHASER INCLUDING, WITHOUT LIMITATION, ANY DAMAGE, LOSS, OR INJURY RESULTING FROM OR ARISING OUT OF THE PRESENCE OF ANY HAZARDOUS MATERIALS OR OTHER ENVIRONMENTAL CONTAMINATION ON OR IN THE VICINITY OF THE PROPERTY, INCLUDING THE INTERIOR, THE SOIL AND/OR GROUNDWATER, (B) ANY AND ALL STATEMENTS, REPRESENTATIONS, WARRANTIES, DETERMINATIONS, CONCLUSIONS, ASSESSMENTS, OR ASSERTIONS MADE BY A THIRD PARTY AND CONTAINED IN ANY OF THE DOCUMENTS DELIVERED TO PURCHASER IN CONNECTION HEREWITH (INCLUDING, WITHOUT LIMITATION, THE PROPERTY INFORMATION), UNLESS SELLER HAD KNOWLEDGE THAT SAME WERE INACCURATE OR INCOMPLETE IN ANY MATERIAL RESPECT WHEN DELIVERED TO PURCHASER (C) ANY DEFECT, INACCURACY OR INADEQUACY IN THE CONDITION OF TITLE TO THE PROPERTY, LEGAL DESCRIPTION OF THE PROPERTY, OR COVENANTS, RESTRICTIONS, ENCUMBRANCES OR ENCROACHMENTS WHICH AFFECT THE PROPERTY, UNLESS SUCH DEFECT, INACCURACY OR INADEQUACY WAS CAUSED BY ANY ACT OR FAILURE TO ACT BY SELLER.

10.2.2    PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT: (i) PURCHASER MAY HEREAFTER DISCOVER FACTS DIFFERENT FROM OR IN ADDITION TO THOSE NOW OR AS OF THE CLOSING KNOWN OR BELIEVED TO BE TRUE REGARDING THE PROPERTY AND/OR THE DOCUMENTS DELIVERED TO PURCHASER IN CONNECTION HEREWITH, (ii) PURCHASER'S AGREEMENT TO RELEASE, ACQUIT AND DISCHARGE SELLER AS SET FORTH HEREIN SHALL REMAIN IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXISTENCE OR DISCOVERY OF ANY SUCH DIFFERENT OR ADDITIONAL FACTS (EXCEPT TO THE EXTENT SUCH DIFFERENT OR ADDITIONAL FACTS WERE KNOWN BY SELLER PRIOR TO CLOSING AND NOT DISCLOSED TO PURCHASER), AND (iii) EXCEPT WITH RESPECT TO SELLER'S REPRESENTATIONS, WARRANTIES, COVENANTS, AGREEMENTS AND OBLIGATIONS UNDER THIS AGREEMENT AND THE CLOSING DOCUMENTS, PURCHASER KNOWINGLY AND VOLUNTARILY WAIVES ANY AND ALL RIGHTS, BENEFITS AND PRIVILEGES TO THE FULLEST EXTENT PERMISSIBLE UNDER ANY FEDERAL, STATE, LOCAL, OR OTHER LAWS WHICH DO OR WOULD NEGATIVELY AFFECT VALIDITY OR ENFORCEABILITY OF ALL OR PART OF THE RELEASES SET FORTH IN THIS AGREEMENT.

10.2.3    THE WAIVER AND RELEASE CONTAINED HEREIN, SHALL BE DEEMED REAFFIRMED AT THE CLOSING AND SHALL SURVIVE THE CLOSING (AND NOT BE MERGED THEREIN) FOR TWELVE (12) MONTHS.

11.    **DEFAULT AND REMEDIES.**

11.1.    **Default by Purchaser**.  AS USED IN THIS AGREEMENT, "**PURCHASER DEFAULT**" SHALL MEAN THE FAILURE OF PURCHASER TO PERFORM ANY OF THE MATERIAL COVENANTS OR AGREEMENTS CONTAINED HEREIN WHICH ARE TO BE PERFORMED BY PURCHASER AND SUCH FAILURE IS NOT CURED WITHIN TEN (10) BUSINESS DAYS AFTER WRITTEN NOTICE FROM SELLER WITH REASONABLE SPECIFICITY OF SUCH DEFAULT(S) (EXCEPT IN THE CASE OF A DEFAULT IN PURCHASER'S OBLIGATION TO DELIVER ANY DEPOSIT OR THE PURCHASE PRICE TO SELLER AT CLOSING IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THIS AGREEMENT IN WHICH CASE NO NOTICE SHALL BE REQUIRED). PURCHASER AND SELLER HEREBY ACKNOWLEDGE AND AGREE THAT, IN THE EVENT OF A PURCHASER DEFAULT, SELLER WILL SUFFER DAMAGES IN AN AMOUNT WHICH WILL, DUE TO THE SPECIAL NATURE OF THE TRANSACTION CONTEMPLATED BY THIS AGREEMENT AND THE SPECIAL NATURE OF THE NEGOTIATIONS WHICH PRECEDED THIS AGREEMENT, BE IMPRACTICAL OR EXTREMELY DIFFICULT TO ASCERTAIN.  IN ADDITION, PURCHASER WISHES TO HAVE A LIMITATION PLACED UPON THE POTENTIAL LIABILITY OF PURCHASER TO SELLER IN THE EVENT OF A PURCHASER DEFAULT, AND WISHES TO INDUCE SELLER TO WAIVE OTHER REMEDIES WHICH SELLER MAY HAVE IN THE EVENT OF A PURCHASER DEFAULT. PURCHASER AND SELLER, AFTER DUE NEGOTIATION, HEREBY ACKNOWLEDGE AND AGREE THAT THE AMOUNT OF THE EARNEST MONEY REPRESENTS A FAIR AND REASONABLE ESTIMATE OF THE DAMAGES, KNOWN AND UNKNOWN, WHICH SELLER WILL SUSTAIN IN THE EVENT OF SUCH PURCHASER DEFAULT OR BREACH.

PURCHASER AND SELLER HEREBY AGREE THAT SELLER MAY, IN THE EVENT OF A PURCHASER BREACH OR DEFAULT, AS SELLER'S SOLE AND EXCLUSIVE REMEDY FOR PURCHASER'S BREACH OR DEFAULT, TERMINATE THIS AGREEMENT BY WRITTEN NOTICE TO PURCHASER AND ESCROW AGENT, RECEIVE THE EARNEST MONEY AS LIQUIDATED DAMAGES AND ESCROW AGENT IMMEDIATELY SHALL DELIVER THE EARNEST MONEY TO SELLER. SUCH RETENTION OF THE EARNEST MONEY BY SELLER IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER AND SHALL NOT BE DEEMED TO CONSTITUTE A FORFEITURE OR PENALTY. FOLLOWING TERMINATION OF THIS AGREEMENT, CANCELLATION OF THE ESCROW AND RETENTION OF THE DEPOSIT AS LIQUIDATED DAMAGES PURSUANT TO THIS SECTION 11.1, ALL OF THE RIGHTS AND OBLIGATIONS OF PURCHASER AND SELLER UNDER THIS AGREEMENT (EXCEPT THOSE OBLIGATIONS WHICH EXPRESSLY SURVIVE UNDER THIS AGREEMENT) SHALL BE TERMINATED.

NOTHING IN THIS SECTION 11.1 SHALL: (A) PREVENT OR PRECLUDE ANY RECOVERY OF REASONABLE ATTORNEYS' FEES OR OTHER COSTS INCURRED BY SELLER IN CONNECTION WITH ANY INDEMNIFICATION OBLIGATIONS OF PURCHASER CONTAINED HEREIN WHICH SURVIVE CLOSING OR THE EARLIER TERMINATION OF THIS AGREEMENT, OR (B) IMPAIR OR LIMIT THE EFFECTIVENESS OR ENFORCEABILITY OF THE INDEMNIFICATION OBLIGATIONS OF PURCHASER CONTAINED HEREIN WHICH SURVIVE CLOSING OR THE EARLIER TERMINATION OF THIS AGREEMENT.

11.2.  **Default by Seller**.  If Seller fails to perform any of its material covenants or agreements contained herein which are to be performed by Seller within ten (10) business days after written notice from Purchaser with reasonable specificity of such default(s) (except in the case of a default in Seller's obligation to convey the Property to Purchaser at Closing in accordance with the terms and conditions of this Agreement in which case no notice shall be required) ("**Seller Default**"), Purchaser may elect, as its sole remedy, to terminate this Agreement by written notice thereof to Seller, in which event (i) Escrow Agent shall immediately return the Earnest Money to Purchaser, (ii) Seller shall reimburse Purchaser for its reasonable and verifiable Purchaser Reimbursable Expenses up to a cap of $100,000, and (iii) to the extent approved by the Bankruptcy Court pursuant to the requirements of the Bid Procedures, and under the terms and conditions set forth in Section 13.19 below, Seller shall pay the Termination Fee (as defined in Section 14 below) to Purchaser. Notwithstanding anything herein to the contrary, Purchaser shall be deemed to have elected to terminate this Agreement if Purchaser fails to file a lawsuit asserting such claim or cause of action in the county in which the Real Property is located within thirty (30) days of the Seller Default. Except as set forth in this Section 11.2, Purchaser hereby waives the right to seek to enforce any other remedy against Seller, including without limitation a suit for monetary damages. Purchaser agrees not to file a *lis pendens* or other similar notice against the Real Property.

11.3.  **Waiver**.  In addition to any other limitations herein, in no event shall either party be liable to the other for special or punitive damages.

12.  **BROKER'S COMMISSIONS.**  Except for CBRE who shall be paid by Seller pursuant to separate agreement or pursuant to the Sale Order, neither party hereto has had any contact or

dealing regarding the Property, or any communication in connection with the subject matter of this transaction, through any licensed real estate broker or other person who can claim a right to a commission or finder's fee as a procuring cause of the sale contemplated herein.   In the event that any broker or finder claims a commission or finder's fee, the party responsible for the contact or communication on which the broker or finder makes such claim shall indemnify, save harmless and defend the other party from said claim and all costs and expenses (including reasonable attorneys' fees) incurred by the other party in defending against the same. The foregoing indemnities shall survive the Closing or earlier termination of this Agreement.

13.    **MISCELLANEOUS PROVISIONS.**

    13.1.    **Notices**.  All notices, requests, or consents provided for or permitted to be given under this Agreement must be in writing and must be given either by depositing that writing in the United States mail, addressed to the recipient, postage paid, and registered or certified with return receipt requested or by delivering that writing to the recipient in person, by courier, or by Electronic Transmission; and a notice, request, or consent given under this Agreement is effective on receipt by the person to receive it.  **Electronic Transmission**" means a form of communication that: (i) does not directly involve the physical transmission of paper, (ii) creates a record that may be retained, retrieved, and reviewed by the recipient, and (iii) may be directly reproduced in paper form by the recipient through an automated process, and expressly includes facsimile and e-mail transmissions and shall be deemed received when sent. All notices, requests, and consents to be sent to a party hereto must be sent to or made at the addresses set forth below or such other address as that party may specify by notice to the other parties.

    If to Seller:

    VIA MIZNER OWNER I, LLC
    c/o Penn Florida Companies
    1515 N. Federal Highway, Suite 306
    Boca Raton, FL   33432
    Attention: Mark A. Gensheimer
    Email: mag@pennflorida.com

    with a copy thereof to:

    Bruce R. Rosetto, Esq. And Marcia H. Langley, Esq.
    Greenberg Traurig, P.A.
    777 S. Flagler Drive, Suite 300 East
    West Palm Beach, FL 33401
    Email: rosettob@gtlaw.com
    and langleym@gtlaw.com

    and

    Bradley S. Shraiberg, Esq.
    2385 NW Executive Center Drive Suite 300
    Boca Raton, FL 33431

Email: bss@slp.law

If to Purchaser:

Cardone Real Estate Acquisitions, LLC
c/o Cardone Capital
18909 NE 29th Ave.
Aventura, Florida 33180
Attn: Ryan Tseko
Email: ryan@cardonecapital.com

with a copy to:

Wilson, Cribbs & Goren, P.C.
1233 West Loop South, Suite 800
Houston, Texas 77027
Attn: Anthony Marré & Eddie Michel
Email: amarre@wcglaw.com; emichel@wcglaw.com

and, if the party to be served is Title Company, addressed to Title Company as follows:

Bruce C. Rosetto, Esq. And Marcia H. Langley, Esq.
Greenberg Traurig, P.A.
777 S. Flagler Drive, Suite 300 East
West Palm Beach, FL 33401
Email: rosettob@gtlaw.com
And langleym@gtlaw.com

and, if the party to be served is Escrow Agent, addressed to Escrow Agent as follows:

Old Republic Title Insurance Company
595 South Federal Highway Suite 200
Boca Raton, Fl 33432
Attention: Eric Fuge
Email: efuge@oldrepublictitle.com
Phone: 954-421-4599

Service of any such notice or demand so made by: (a) personal delivery, (b) prepaid nationally recognized overnight courier service for overnight delivery or (c) electronic mail, or at the expiration of the third (3rd) business day after the date of dispatch, whichever is earlier in time. Either party hereto may from time to time, by notice in writing served upon the other as aforesaid, designate a different mailing address to which or a different person to whose attention all such notices or demands are thereafter to be addressed.

13.2. **Assignment; Binding on Successors and Assigns**. Neither party may assign this Agreement without the prior written consent of the other, and any such prohibited assignment shall be void. Notwithstanding the foregoing, Purchaser may no later than five (5) business days prior

to Closing, assign this Agreement to an affiliate which is a lawful entity entitled to do business in the state in which the Property is located without the prior written consent of Seller.  In the event of such an assignment of this Agreement to Assignee: (a) Purchaser shall notify Seller promptly, (b) Purchaser and its assignee shall be jointly and severally liable for all of Purchaser's liabilities and obligations under this Agreement, (c) the assignee shall assume all obligations of Purchaser under this Agreement, and (d) from and after any such assignment the term "Purchaser" in this Agreement (exclusive of this <u>Section 13.2</u>) shall be deemed to mean the assignee under any such assignment. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the respective legal representatives, successors, assigns, heirs, and devisees of the parties.

13.3.  **Further Assurances**.  In addition to the acts and deeds recited herein and contemplated to be performed, executed or delivered by Seller or Purchaser, Seller and Purchaser hereby agree to perform, execute and deliver, or cause to be performed, executed and delivered, on the Closing Date or thereafter any and all such further acts, deeds and assurances as Purchaser or Seller, as the case may be, may reasonably require in order to consummate fully the transactions contemplated hereunder.

13.4.  **Attorneys' Fees**.  If any legal action is brought or if an attorney is retained for the enforcement of this Agreement or any portion thereof, or because of any alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the prevailing party shall be entitled to recover from the other reimbursement for the reasonable fees of attorneys and other costs (including court costs and witness fees) incurred by it, in addition to any other relief to which it may be entitled.  The term "prevailing party" means the party obtaining substantially the relief sought in such action.

13.5.  **Entire Agreement**.  This Agreement contains the entire agreement and understanding of the parties in respect to the subject matter hereof, and the parties intend for the literal words of this Agreement to govern and for all prior negotiations, drafts, and other extrinsic communications, whether oral or written, to have no significance or evidentiary effect.  The parties further intend that neither this Agreement nor any of its provisions may be changed, amended, discharged, waived or otherwise modified orally except only by an instrument in writing duly executed by the party to be bound thereby.  The parties hereto fully understand and acknowledge the importance of the foregoing sentence and are aware that the law may permit subsequent oral modification of a contract notwithstanding contract language which requires that any such modification be in writing; but Purchaser and Seller fully and expressly intend that the foregoing requirements as to a writing be strictly adhered to and strictly interpreted and enforced by any court which may be asked to decide the question.  Each party hereto acknowledges that this Agreement accurately reflects the agreements and understandings of the parties hereto with respect to the subject matter hereof and hereby waive any claim against the other party which such party may now have or may hereafter acquire to the effect that the actual agreements and understandings of the parties hereto with respect to the subject matter hereof may not be accurately set forth in this Agreement.

13.6.  **Governing Law**.  This Agreement shall be governed by the laws of the State of Florida.

13.7.    **Consent to Jurisdiction**.  The Parties agree that (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any dispute which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereunder, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court in connection therewith.

13.8.    **Counterparts; Non-Paper Records**.  This Agreement may be signed or otherwise authenticated in any number of counterparts and by different parties to this Agreement on separate counterparts, each of which, when so authenticated, shall be deemed an original, but all such counterparts shall constitute one and the same Agreement. Any signature or other authentication delivered by facsimile or electronic transmission shall be deemed to be an original signature hereto. This Agreement, when signed or authenticated pursuant to this Section, shall be evidence of the existence of this Agreement and may be received in all courts and public spaces as conclusive evidence of the existence of this Agreement and that this Agreement was duly executed by the parties to this Agreement.

13.9.    **Headings; Construction**.  The various headings of this Agreement are included for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.  When the context and construction so require, all words used in the singular herein shall be deemed to have been used in the plural and the masculine shall include the feminine and the neuter and vice versa.  The use in this Agreement of the term "including" and related terms such as "include" shall in all cases mean "without limitation."  All references to "days" in this Agreement shall be construed to mean calendar days unless otherwise expressly provided and all references to "business days" shall be construed to mean days other than Saturdays, Sundays or legal holidays for national banks in the State of Florida and the State of Illinois.

13.10.    **Time of Essence**.  Seller and Purchaser hereby acknowledge and agree that time is strictly of the essence with respect to each and every term, condition, obligation and provision hereof and failure to perform timely any of the terms, conditions, obligations or provisions hereof by either party shall constitute a default under this Agreement by the parties so failing to perform.

13.11.    **Partial Validity; Severability**.  If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be held invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

13.12.    **No Third Party Beneficiaries**.  This Agreement is for the sole and exclusive benefit of the parties hereto and their respective permitted successors and assigns, and no third party is intended to, or shall have, any rights hereunder.

13.13.    **Joint Product of Parties**.  This Agreement is the result of arms-length negotiations between Seller and Purchaser and their respective attorneys.  Accordingly, neither party shall be

deemed to be the author of this Agreement and this Agreement shall not be construed against either party.

13.14.  **Calculation of Time Periods**.  Unless otherwise specified, if the day of the act or event under this Agreement is not a business day, the applicable date shall run until the end of the next business day.  Unless otherwise expressly provided herein, the last day of any period of time described herein shall be deemed to end at 5:00 p.m., Eastern time.

13.15.  **Procedure for Indemnity**.  The following provisions govern actions for indemnity under this Agreement.  Promptly after receipt by an indemnitee of notice of any claim, such indemnitee will, if a claim in respect thereof is to be made against the indemnitor, deliver to the indemnitor written notice thereof and the indemnitor shall have the right to participate in and, if the indemnitor agrees in writing that it will be responsible for any costs, expenses, judgments, damages, and losses incurred by the indemnitee with respect to such claim, to assume the defense thereof, with counsel mutually satisfactory to the parties; provided, however, that an indemnitee shall have the right to retain its own counsel, with the fees and expenses to be paid by the indemnitor, if the indemnitee reasonably believes that representation of such indemnitee by the counsel retained by the indemnitor would be inappropriate due to actual or potential differing interests between such indemnitee and any other party represented by such counsel in such proceeding.  The failure of indemnitee to deliver written notice to the indemnitor within a reasonable time after indemnitee receives notice of any such claim shall relieve such indemnitor of any liability to the indemnitee under this indemnity only if and to the extent that (i) such failure is prejudicial to its ability to defend such action, or (ii) such failure would bring any claim for indemnification outside the time frame for a party to provide an indemnity pursuant to the terms of this Agreement, and the omission so to deliver written notice to the indemnitor will not relieve it of any liability that it may have to any indemnitee other than as expressly set forth in this Section 12.14.  If an indemnitee settles a claim without the prior written consent of the indemnitor, then the indemnitor shall be released from liability with respect to such claim unless the indemnitor has unreasonably withheld such consent.

13.16.  **Section 1031 Exchange**.  Seller or Purchaser may consummate the transaction contemplated by this Agreement as part of a so-called like kind exchange (the "**Exchange**") pursuant to Section 1031 of the Code, provided that:  (a) the Closing shall not be delayed or affected by reason of the Exchange nor shall the consummation or accomplishment of the Exchange be a condition precedent or condition subsequent to Seller's or Purchaser's obligations under this Agreement, (b) Seller or Purchaser shall effect the Exchange through an assignment of its rights under this Agreement to a qualified intermediary, and (c) neither Purchaser nor Seller shall be required to take an assignment of the purchase agreement for the replacement property or be required to acquire or hold title to the Real Property for purposes of consummating the Exchange.  Neither Purchaser nor Seller shall by this Agreement or acquiescence to any Exchange, (1) have their rights under this Agreement affected or diminished in any manner, (2) be responsible for compliance with or be deemed to have warranted that any Exchange in fact complies with Section 1031 of the Code, (3) incur any additional cost or expense or potential liability as a result of the Exchange, or (4) be obligated to execute any agreement to effectuate the Exchange other than a simple consent.

13.17.  **No Personal Liability**.  Notwithstanding anything in this Agreement to the contrary under no circumstances shall Seller's constituent partners or members, Seller's asset manager, nor Seller's employees or agents have any personal liability hereunder.

13.18.  **Radon Gas Disclosure**. RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

13.19.  **Termination Fee**. (i) Seller has selected Buyer to serve, and Purchaser has consented to its selection and service, as a "Stalking Horse Bidder," whereby this Agreement shall serve as a base by which other offers for a potential alternative transaction (whether as a going concern sale, liquidation, refinancing, plan of reorganization or otherwise) (any such transaction, an "Alternative Transaction") may be measured and is subject to competing offers for an Alternative Transaction by way of the auction process contemplated by and more fully set forth in the Bid Procedures.  In accordance therewith, and notwithstanding anything herein to the contrary, Seller may at any time prior to the conclusion of the auction (whether before or during the auction process contemplated by the Bid Procedures) furnish information concerning the Real Property to any person in connection with a potential Alternative Transaction and negotiate, enter into and consummate an Alternative Transaction.  As consideration for and as a material inducement to Purchaser conducting its due diligence and entering into this Agreement, in the event this Agreement is terminated as a result of Seller entering into and consummating an Alternative Transaction, Purchaser shall be entitled to receive the sum of $2,000,000.00 (the "**Termination Fee**"), which shall be payable solely from the proceeds of an Alternative Transaction. Notwithstanding anything to the contrary in this Agreement, Seller may also identify and enter into agreements respecting (x) a "back-up" bid relating to an Alternative Transaction, and/or (y) other contingent plans or financings, in either case to become effective in the event Purchaser does not perform in accordance with the terms of this Agreement, none of which shall trigger payment of the Termination Fee.

(ii)    In connection with Section 14(i), promptly following the Effective Date, Seller shall file with the Bankruptcy Court (A) this Agreement with a notice of designation of stalking horse bid, in form and substance reasonably acceptable to Purchaser, and (B) a motion to supplement to the Bid Procedures, which shall seek Bankruptcy Court approval of the Termination Fee and shall be entered by the Bankruptcy Court on or before June 18, 2025. If the Bankruptcy Court approval of the Termination Fee has not been entered by such date, Purchaser may terminate this Agreement upon written notice to Seller, whereupon this Agreement shall automatically terminate, the parties shall be released from all further obligations under this Agreement (except pursuant to any provisions which by their terms survive a termination of this Agreement), the Earnest Money shall be returned to Purchaser within three (3) business days of such termination without additional consent or instruction from Seller, and Purchaser shall immediately return (or destroy) all original Property Information in its possession or control.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**<u>SELLER</u>**

**VIA MIZNER OWNER I, LLC**,
a Florida limited liability company

By: _____
Name: _____
Title: _____

**<u>PURCHASER</u>**

**CARDONE REAL ESTATE ACQUISITIONS**, **LLC**, a Delaware limited liability company,

By: _____
Name: Grant Cardone
Title: Manager

AGREED TO THIS _____ DAY OF _____, 2025, AS TO PROVISIONS RELATING TO ESCROW AGENT, AND ACKNOWLEDGMENT OF FULLY-EXECUTED COUNTERPART OF THIS AGREEMENT:

OLD REPUBLIC TITLE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**SELLER**

**VIA MIZNER OWNER I, LLC,**
a Florida limited liability company

By: _____
Name: Mark A. Gensheimer
Title:  Manager

**PURCHASER**

**CARDONE REAL ESTATE ACQUISITIONS, LLC,** a Delaware limited liability company,

By: _____
Name: Grant Cardone
Title: Manager

AGREED TO THIS _____ DAY OF _____, 2025, AS TO PROVISIONS RELATING TO ESCROW AGENT, AND ACKNOWLEDGMENT OF FULLY-EXECUTED COUNTERPART OF THIS AGREEMENT:

OLD REPUBLIC TITLE INSURANCE COMPANY

By: _____
Name: _____
Title: _____

LIST OF EXHIBITS AND SCHEDULES

| | | |
|---|---|---|
| EXHIBIT A | -- | Description of Real Property |
| EXHIBIT B | -- | Description of Personal Property |
| EXHIBIT C | -- | List of Contracts |
| EXHIBIT D | -- | Rent Roll |
| EXHIBIT E | -- | Form of Deed |
| EXHIBIT F | -- | Form of Assignment of Residential Leases, Retail Leases, Security Deposits and Contracts and Bill of Sale |
| EXHIBIT G | -- | Form of Tenant Notice |
| EXHIBIT I | -- | Property Information |
| SCHEDULE 5.4.1 | | Assumed Contracts |
| SCHEDULE 6.3 | | Retail Leases to be Assumed |

# EXHIBIT A

## DESCRIPTION OF REAL PROPERTY

.

Parcel 1 (Phase 1, Apartment Parcel):

A portion of Blocks 25-B, 26 and 28, also abandoned S.E. 9th St. and De Soto Road of SPANISH RIVER LAND COMPANY'S PLAT "A", as recorded in Plat Book 16, Pages 27 through 30, inclusive, of the Public Records of Palm Beach County, Florida, all being more particularly described as follows:

Beginning at the Southwest corner of Tract "A", BOCA RATON HOTEL AND CLUB, GOLF COURSE/OPEN SPACE REPLAT, according to the Plat thereof, as recorded in Plat Book 79, Pages 180 through 184, of the Public Records of Palm Beach County, Florida, said point being further described as being on the North Right-of-Way line of Camino Real, as now laid out and in use; thence North 89°46'45" West, along the North Right-of-Way line of said Camino Real, a distance of 327.29 feet to the Point of Curvature of a circular curve to the right; thence Westerly and Northerly, along the arc of said curve, having a radius of 30.00 feet, through a central angle of 89°46'45", an arc distance of 47.01 feet to the Point of Tangency, said point being further described as being on the East Right-of-Way line of Federal Highway (U.S. No. 1), as now laid out and in use; thence North 00°00'00" East, along said East Right-of-Way line, a distance of 359.53 feet; thence South 89°58'04" East, a distance of 357.10 feet to a point on the West line of said Tract "A", thence South 00°00'36" East, along said West line, a distance of 390.59 feet to said Southwest corner of Tract "A" and the POINT OF BEGINNING of this description.

Said lands situate, lying and being in the City of Boca Raton, Palm Beach County, Florida.

**EXHIBIT B**

**DESCRIPTION OF PERSONAL PROPERTY**

(Attached)

| North Lobby Inventory | Color | Description | Total |
|---|---|---|---|
| Tall Potted Plants | White | Narrow Long Stem Faux Plant | 3 |
| Square Facing Potted Plants | White | Squared Shape Plants with Faux Rocks/Plants | 3 |
| Arrival Chairs | Beige | Cloth-Wooden Legs | 2 |
| Side Tables | Marble | Marble Top-Gold Base | 3 |
| Side Tables | Pattern | Ceramic-Beige/Grey Design | 2 |
| High-back King Chairs | White | Leather-Wooden Legs | 4 |
| Large Ottoman | Grey | Cloth-Buttoned | 1 |
| Floor Lamps | Gold | Metal-White Lamp Shade | 2 |
| Button Back Chair | White | Leather-Wide | 1 |
| Pillowed High-back Chair | White | Leather-Hanging Pillow | 4 |
| Long Bench | Grey | Leather-Wooden Legs-8 ft | 1 |
| Short Bench | Grey | Leather-Wooden Legs-3 ft | 1 |
| Velvet Rope | Red | Metal-Rusting on Floor-Needs New Pad | 1 |
| Office Chairs | Grey | Leather-Rolling | 2 |
| Grocery Carts | Silver | Rolling-Metal | 4 |
| Trash Bins | Silver | Under Desk | 1 |
| Narrow Entry Rug | Blue | Pattern Cloth | 1 |
| Large Show Rug | Blue | Pattern Cloth | 1 |
| Bell Carts | Silver | Rolling-Metal-Requesting More | 1 |
| Office Chairs | Grey | Matching Cloth/Metal Office Chairs | 4 |
| **East Lobby Inventory** | **Color** | **Description** | **Total** |
| Arrival Chair | White | Leather-Wide Base | 1 |
| Office Chair | Grey | Leather-Rolling Chair | 1 |
| Waste Basket | Silver | Dual Drop-Under Desk | 1 |
| Entry Bench | Grey | Leather-Mahogany Base/Requesting Second | 1 |
| **Cyber Cafe Inventory** | **Color** | **Description** | **Total** |
| Large Standing Mirror | White | Diamond Cut Design | 1 |
| High-back Chairs | White | Leather-Wooden Legs | 2 |
| Side Table | Brown | Round-Wood | 1 |
| Bar Stools | White | Leather/Metal | 4 |
| Dining Tables | Marble | Marble Top-Round-Silver Base | 3 |
| Couch | White | Leather-Love Seat | 2 |
| Arm Chairs | White | Leather-Rounded | 2 |
| Coffee Tables | Brown | Wooden-Square | 4 |
| Trash Bin | Black | Under Counter Top | 1 |
| Dining Chair | White | Leather-At 1 Computer | 1 |
| Dining Chairs | White | Cloth/Leather | 13 |
| **Sunset Lounge Inventory** | **Color** | **Description** | **Total** |
| Coffee Table | Gold | Egg Shaped | 1 |
| Dining Tables | Grey | Marble Top-Wooden Base-6 ft | 2 |
| Shelved Stands | Brown | Wood/Metal Display | 2 |
| Side Table | Brown | Wood | 1 |
| Side Tables | Bronze | Metal | 3 |
| High-back Dining Chairs | Blue | Velvet-Wooden Legs | 2 |
| Dining Chairs | White | Leather-Wooden Legs | 12 |
| Arrival Chairs | Cream | Leather-Metal Base | 4 |
| High-back Arrival Chairs | Blue | Cloth-Wooden Legs | 4 |
| Chair/Stool Set | Blue | Cloth-Wooden Legs | 1 |
| Couches | Cream | Cloth-Wide-Metal Legs | 2 |
| Reversible Pillow | Blue | Cloth/Burlap | 1 |
| Large Dining Pillows | White | Cloth-Square | 2 |

| Item | Color | Description | Total |
|------|-------|-------------|-------|
| Throw Pillow | Blue | Cloth-Decorative Pattern | 4 |
| Throw Pillow | Cream | Cloth-Decorative Pattern | 2 |
| Throw Pillow | White | Cloth-Shimmering Decorative Pattern | 6 |
| Trash Can | Silver | Metal-Step Open | 1 |
| Floral Area Rug | Blue | Floral Pattern Design | 1 |
| **Club Room Inventory** | **Color** | **Description** | **Total** |
| Bar Stools | White | Leather-Wooden Legs | 13 |
| Dining Chairs | White | Leather-Wooden Legs | 13 |
| Couches | Blue | Cloth-Wooden Legs | 2 |
| Rounded Chairs | Beige | Cloth-Wooden Base | 6 |
| High-Backed Arrival Chairs | White | Cloth-Wooden Trim | 4 |
| Arrival Chairs | Blue | Cloth-Wooden Base | 4 |
| Pool Table | Brown | Cloth Felt-Wood Frame | 1 |
| Pool Stick Stand | Brown | Wood | 1 |
| Media/Game Cabinet | Brown | Wood-Glass Doors-9 ft | 1 |
| Trash Can | Silver | Metal-Step Open | 1 |
| Couch Pillows | Blue | Cloth-Standard | 16 |
| Throw Pillows | Blue | Cloth-Square | 4 |
| Throw Pillows | Beige | Cloth-Square | 4 |
| Decorative Pillows | Bronze | Cloth-Formal Throw Pillows-Square | 4 |
| Dining Tables | Clear | Glass Tables with Wooden Base | 3 |
| Coffee Table | Clear | Glass Tables with Wooden Base | 2 |
| Coffee Table | Marble | Marble Top-Gold Base | 1 |
| Pub Tables | Black | Wooden Top-Metal Shaft | 2 |
| **Fitness Center Inventory** | **Color** | **Description** | **Total** |
| Stair Master | Grey | StairMaster Brand | 1 |
| Elliptical | Grey | Octane Fitness | 2 |
| Lateral Climber | Grey | Octane Fitness | 1 |
| Treadmills | Silver | Cybex-Leather Blue Cushion | 3 |
| Recumbent Bikes | White | Cybex-Leather Blue Cushion | 2 |
| Leg Extension | White | Cybex-Leather Blue Cushion | 1 |
| Seated Leg Curl | White | Cybex-Leather Blue Cushion | 1 |
| Adjustable Benches | White | Cybex-Leather Blue Cushion | 2 |
| Decline Adjustable Bench | White | Cybex-Leather Blue Cushion | 1 |
| Dumbbell Rack | Black | SPRI-Metal | 1 |
| Dumbbells | Black | UTK-Metal (5-25 lbs) | 8 |
| Free Weight Rack | White | Cybex | 1 |
| Free Weight Set | Black | Hampton Fitness (5-75 lbs) | 16 |
| Assisted Bench Press | White | Cybex | 1 |
| Bar Heavy Weights | Black | Hampton Fitness (2.5-45 lbs) | 20 |
| Abdominal | White | Cybex-Leather Blue Cushion | 1 |
| Overhead Press | White | Cybex-Leather Blue Cushion | 1 |
| Chest Press | White | Cybex-Leather Blue Cushion | 1 |
| All-in-One Cross Trainer | White | Cybex-Cable Ready-Leather Blue Cushion | 1 |
| Trash Cans | Silver | Metal | 2 |
| Bosu Stand | White | Power Systems | 1 |
| Bosu Balls | Multi | SPRI | 4 |
| Half Bosu Balance Board | Blue | Vivo Home | 1 |
| Step Board | Grey | SPRI | 2 |
| Step Risers | Black | SPRI | 8 |
| Spin Bikes | Black | Schwinn | 4 |
| Crash Pads | Blue | Foam Fitness | 2 |
| Fitness Blocks | Black | Foam Fitness | 3 |
| Free Weight Stand | Black | Power Systems | 1 |

| Free Weight Set | Black | VPK (1-25 lbs) | 11 |
|---|---|---|---|
| Weighted Pole | Blue | VPK (20 lb) | 1 |
| Medicine Ball Stand | Black | Power Systems | 1 |
| Medicine Balls | Multi | SPRI (3-15 lbs) | 5 |
| Jump Ropes | Black | SPRI | 2 |
| Bands | Black | SPRI | 2 |
| Yoga Mats | Black | Aeromat Total Solution Elite Fitness | 2 |
| **Conference Room Inventory** | **Color** | **Description** | **Total** |
| Conference Table | White | Wooden-9 ft | 1 |
| Office Chairs | Grey | Cloth/Metal-Rolling | 6 |
| High-back Office Chairs | Grey | Leather-Rolling | 2 |
| Entry Chairs | Grey | Cloth-Wooden Legs | 2 |
| Armed Entry Chairs | Grey | Cloth-Wooden Legs | 2 |
| Formal Media Cabinet | White | Wooden-Acrylic Coat-Metal Legs | 1 |
| Employee Only Entry Sign | White | Cheap-Paper-Request New | 1 |
| **North Offices Inventory** | **Color** | **Description** | **Total** |
| U-Shaped Office Desks | White | Large-Wood | 2 |
| Office Desk | White | Large-Wood | 2 |
| High-back Office Chairs | Grey | Leather-Rolling | 4 |
| Arrival Chairs | White | Leather-Wide | 4 |
| Arrival Chairs | Grey | Cloth-Wooden Leg | 7 |
| Coffee Table | Marble | Marble Top-Gold Base | 1 |
| Designer Desk | White | Glass & White Designer Table | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| File Cabinet | White | Wide-Wood | 2 |
| **East Offices Inventory** | **Color** | **Description** | **Total** |
| Office Desk | Brown | Mahogany Wood-Silver Handles | 2 |
| Office Dresser | Brown | Mahogany Wood-Silver Handles | 1 |
| High-back Office Chair | Grey | Leather-Rolling | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| Arrival Chairs | Grey | Cloth-Wooden Leg | 2 |
| Side Table | Brown | Wood | 1 |
| Media Display Stand | White | Wood-4 ft | 1 |
| 2 Key Boxes | Beige | Beige-Max 500 Key Storage/60Key Storage | 2 |
| Narrow File Cabinet | Beige | Metal-4 ft | 1 |
| Wide File Cabinet | Grey | Metal-3 ft | 1 |
| Storage Cabinet | Beige | Swing Door Cabinet-3 ft | 1 |
| Office Desk | White | Wood-Silver Handles | 2 |
| Above Storage Attachment | White | Attached to Desk | 1 |
| Office Chair | Black | Leather-Rolling | 1 |
| Office Chair | Black | Cloth-Rolling | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| Folding Chair | Beige | Metal-Folding | 1 |
| **Break Room/Storage Inventory** | **Color** | **Description** | **Total** |
| Folding Table | Tan | Wood-8 ft | 2 |
| Folding Table | White | Plastic-6 ft | 2 |
| Folding Table | Black | Faux Leather | 1 |
| Armed Arrival Chairs | Grey | Cloth-Wooden Legs | 3 |
| Arrival Chair | Grey | Cloth-Wooden Legs | 1 |
| Bell Carts | Silver | Metal-Rolling (1 Modified for Housekeeping) | 3 |
| Office Chairs | Blue | Cloth-Rolling | 2 |
| Stackable Chairs | Black | Heavy Duty Plastic | 3 |
| Entry Chairs | Green | Cloth-Wood Trim/Legs | 2 |
| Outdoor Trash Bins | Black | Heavy Duty Plastic | 2 |

| | | | |
|---|---|---|---|
| Bar Stools | White | Leather/Metal-Rusting | 4 |
| **North Lobby Inventory** | **Color** | **Description** | **Total** |
| Tall Potted Plants | White | Narrow Long Stem Faux Plant | 3 |
| Square Facing Potted Plants | White | Squared Shape Plants with Faux Rocks/Plants | 3 |
| Arrival Chairs | Beige | Cloth-Wooden Legs | 2 |
| Side Tables | Marble | Marble Top-Gold Base | 3 |
| Side Tables | Pattern | Ceramic-Beige/Grey Design | 2 |
| High-back King Chairs | White | Leather-Wooden Legs | 4 |
| Large Ottoman | Grey | Cloth-Buttoned | 1 |
| Floor Lamps | Gold | Metal-White Lamp Shade | 2 |
| Button Back Chair | White | Leather-Wide | 1 |
| Pillowed High-back Chair | White | Leather-Hanging Pillow | 4 |
| Long Bench | Grey | Leather-Wooden Legs-8 ft | 1 |
| Short Bench | Grey | Leather-Wooden Legs-3 ft | 1 |
| Velvet Rope | Red | Metal-Rusting on Floor-Needs New Pad | 1 |
| Office Chairs | Grey | Leather-Rolling | 2 |
| Grocery Carts | Silver | Rolling-Metal | 4 |
| Trash Bins | Silver | Under Desk | 1 |
| Narrow Entry Rug | Blue | Pattern Cloth | 1 |
| Large Show Rug | Blue | Pattern Cloth | 1 |
| Bell Carts | Silver | Rolling-Metal | 1 |
| **East Lobby Inventory** | **Color** | **Description** | **Total** |
| Arrival Chair | White | Leather-Wide Base | 1 |
| Office Chair | Grey | Leather-Rolling Chair | 1 |
| Waste Basket | Silver | Dual Drop-Under Desk | 1 |
| Entry Bench | Grey | Leather-Mahogany Base | 1 |
| **Cyber Cafe Inventory** | **Color** | **Description** | **Total** |
| Large Standing Mirror | White | Diamond Cut Design | 1 |
| High-back Chairs | White | Leather-Wooden Legs | 2 |
| Side Table | Brown | Round-Wood | 1 |
| Bar Stools | White | Leather/Metal | 4 |
| Dining Tables | Marble | Marble Top-Round-Silver Base | 3 |
| Couch | White | Leather-Love Seat | 2 |
| Arm Chairs | White | Leather-Rounded | 2 |
| Coffee Tables | Brown | Wooden-Square | 4 |
| Trash Bin | Black | Under Counter Top | 1 |
| Dining Chair | White | Leather-At 1 Computer | 1 |
| Dining Chairs | White | Cloth/Leather | 13 |
| **Sunset Lounge Inventory** | **Color** | **Description** | **Total** |
| Coffee Table | Gold | Egg Shaped | 1 |
| Dining Tables | Grey | Marble Top-Wooden Base-6 ft | 2 |
| Shelved Stands | Brown | Wood/Metal Display | 2 |
| Side Table | Brown | Wood | 1 |
| Side Tables | Bronze | Metal | 3 |
| High-back Dining Chairs | Blue | Velvet-Wooden Legs | 2 |
| Dining Chairs | White | Leather-Wooden Legs | 12 |
| Arrival Chairs | Cream | Leather-Metal Base | 4 |
| High-back Arrival Chairs | Blue | Cloth-Wooden Legs | 4 |
| Chair/Stool Set | Blue | Cloth-Wooden Legs | 1 |
| Couches | Cream | Cloth-Wide-Metal Legs | 2 |
| Reversible Pillow | Blue | Cloth/Burlap | 1 |
| Large Dining Pillows | White | Cloth-Square | 2 |
| Throw Pillow | Blue | Cloth-Decorative Pattern | 4 |
| Throw Pillow | Cream | Cloth-Decorative Pattern | 2 |

| Throw Pillow | White | Cloth-Shimmering Decorative Pattern | 6 |
|---|---|---|---|
| Trash Can | Silver | Metal-Step Open | 1 |
| Floral Area Rug | Blue | Floral Pattern Design | 1 |
| **Club Room Inventory** | **Color** | **Description** | **Total** |
| Bar Stools | White | Leather-Wooden Legs | 13 |
| Dining Chairs | White | Leather-Wooden Legs | 13 |
| Couches | Blue | Cloth-Wooden Legs | 2 |
| Rounded Chairs | Beige | Cloth-Wooden Base | 6 |
| High-Backed Arrival Chairs | White | Cloth-Wood Trim | 4 |
| Arrival Chairs | Blue | Cloth-Wooden Base | 4 |
| Pool Table | Brown | Cloth Felt-Wood Frame | 1 |
| Pool Stick Stand | Brown | Wood | 1 |
| Media/Game Cabinet | Brown | Wood-Glass Doors-9 ft | 1 |
| Trash Can | Silver | Metal-Step Open | 1 |
| Couch Pillows | Blue | Cloth-Standard | 16 |
| Throw Pillows | Blue | Cloth-Square | 4 |
| Throw Pillows | Beige | Cloth-Square | 4 |
| Decorative Pillows | Bronze | Cloth-Formal Throw Pillows-Square | 4 |
| Dining Tables | Clear | Glass Tables with Wooden Base | 3 |
| Coffee Table | Clear | Glass Tables with Wooden Base | 2 |
| Coffee Table | Marble | Marble Top-Gold Base | 1 |
| Pub Tables | Black | Wooden Top-Metal Shaft | 2 |
| **Fitness Center Inventory** | **Color** | **Description** | **Total** |
| Stair Master | Grey | StairMaster Brand | 1 |
| Elliptical | Grey | Octane Fitness | 2 |
| Lateral Climber | Grey | Octane Fitness | 1 |
| Treadmills | Silver | Cybex-Leather Blue Cushion | 3 |
| Recumbent Bikes | White | Cybex-Leather Blue Cushion | 2 |
| Leg Extension | White | Cybex-Leather Blue Cushion | 1 |
| Seated Leg Curl | White | Cybex-Leather Blue Cushion | 1 |
| Adjustable Benches | White | Cybex-Leather Blue Cushion | 2 |
| Decline Adjustable Bench | White | Cybex-Leather Blue Cushion | 1 |
| Dumbbell Rack | Black | SPRI-Metal | 1 |
| Dumbbells | Black | UTK-Metal (5-25 lbs) | 8 |
| Free Weight Rack | White | Cybex | 1 |
| Free Weight Set | Black | Hampton Fitness (5-75 lbs) | 16 |
| Assisted Bench Press | White | Cybex | 1 |
| Bar Heavy Weights | Black | Hampton Fitness (2.5-45 lbs) | 20 |
| Abdominal | White | Cybex-Leather Blue Cushion | 1 |
| Overhead Press | White | Cybex-Leather Blue Cushion | 1 |
| Chest Press | White | Cybex-Leather Blue Cushion | 1 |
| All-in-One Cross Trainer | White | Cybex-Cable Ready-Leather Blue Cushion | 1 |
| Trash Cans | Silver | Metal | 2 |
| Bosu Stand | White | Power Systems | 1 |
| Bosu Balls | Multi | SPRI | 4 |
| Half Bosu Balance Board | Blue | Vivo Home | 1 |
| Step Board | Grey | SPRI | 2 |
| Step Risers | Black | SPRI | 8 |
| Spin Bikes | Black | Schwinn | 4 |
| Crash Pads | Blue | Foam Fitness | 2 |
| Fitness Blocks | Black | Foam Fitness | 3 |
| Free Weight Stand | Black | Power Systems | 1 |
| Free Weight Set | Black | VPK (1-25 lbs) | 11 |
| Weighted Pole | Blue | VPK (20 lb) | 1 |

| | | | |
|---|---|---|---|
| Medicine Ball Stand | Black | Power Systems | 1 |
| Medicine Balls | Multi | SPRI (3-15 lbs) | 5 |
| Jump Ropes | Black | SPRI | 2 |
| Bands | Black | SPRI | 2 |
| **Conference Room Inventory** | **Color** | **Description** | **Total** |
| Conference Table | White | Wooden-9 ft | 1 |
| Office Chairs | Grey | Cloth/Metal-Rolling | 6 |
| High-back Office Chairs | Grey | Leather-Rolling | 2 |
| Entry Chairs | Grey | Cloth-Wooden Legs | 2 |
| Armed Entry Chairs | Grey | Cloth-Wooden Legs | 2 |
| Formal Media Cabinet | White | Wooden-Acrylic Coat-Metal Legs | 1 |
| Employee Only Entry Sign | White | Signage | 1 |
| **North Offices Inventory** | **Color** | **Description** | **Total** |
| U-Shaped Office Desks | White | Large-Wood | 2 |
| Office Desk | White | Large-Wood | 2 |
| High-back Office Chairs | Grey | Leather-Rolling | 4 |
| Arrival Chairs | White | Leather-Wide | 4 |
| Arrival Chairs | Grey | Cloth-Wooden Leg | 7 |
| Coffee Table | Marble | Marble Top-Gold Base | 1 |
| Designer Desk | White | Glass & White Designer Table | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| File Cabinet | White | Wide-Wood | 2 |
| **East Offices Inventory** | **Color** | **Description** | **Total** |
| Office Desk | Brown | Mahogany Wood-Silver Handles | 2 |
| Office Dresser | Brown | Mahogany Wood-Silver Handles | 1 |
| High-back Office Chair | Grey | Leather-Rolling | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| Arrival Chairs | Grey | Cloth-Wooden Leg | 2 |
| Side Table | Brown | Wood | 1 |
| Media Display Stand | White | Wood-4 ft | 1 |
| 2 Key Boxes | Beige | Beige-Max 500 Key Storage/60Key Storage | 2 |
| Narrow File Cabinet | Beige | Metal-4 ft | 1 |
| Wide File Cabinet | Grey | Metal-3 ft | 1 |
| Storage Cabinet | Beige | Swing Door Cabinet-3 ft | 1 |
| Office Desk | White | Wood-Silver Handles | 2 |
| Above Storage Attachment | White | Attached to Desk | 1 |
| Office Chair | Black | Leather-Rolling | 1 |
| Office Chair | Black | Cloth-Rolling | 1 |
| Office Chair | Grey | Leather-Rolling | 1 |
| Folding Chair | Beige | Metal-Folding | 1 |
| **Break Room/Storage Inventory** | **Color** | **Description** | **Total** |
| Folding Table | Tan | Wood-8 ft | 2 |
| Folding Table | White | Plastic-6 ft | 2 |
| Folding Table | Black | Faux Leather | 1 |
| Armed Arrival Chairs | Grey | Cloth-Wooden Legs | 3 |
| Arrival Chair | Grey | Cloth-Wooden Legs | 1 |
| Bell Carts | Silver | Metal-Rolling (1 Modified for Housekeeping) | 3 |
| Office Chairs | Blue | Cloth-Rolling | 2 |
| Stackable Chairs | Black | Heavy Duty Plastic | 3 |
| Entry Chairs | Green | Cloth-Wood Trim/Legs | 2 |
| Outdoor Trash Bins | Black | Heavy Duty Plastic | 2 |
| Bar Stools | White | Leather/Metal-Rusting | 4 |

| Pool & Patio Inventory | Color | Brand | Total |
|---|---|---|---|
| Chaise Lounge (Good Condition) | Yellow | Tropitone | 39 |
| Chaise (Frame Only) | Bronze | Tropitone | 60 |
| Double Chaise Lounge/Cushion | Blue | Tropitone | 1 |
| Double Chaise (Cushion Only) | Blue | Tropitone | 1 |
| Etched Acrylic Side Table | Slate | Tropitone | 41 |
| Umbrella/Stand Sets | Navy | Basta Solf | 7 |
| Canopy Sets | Blue | Basta Solf | 5 |
| Formal Rattan Rod JC Patio Chair | Brown | Janus et Cie | 8 |
| Formal Outdoor JC Cushions | White | Janus et Cie | 8 |
| Formal Outdoor JC Pillows (Lg) | White | Janus et Cie | 8 |
| Formal Outdoor JC Pillows (Sm) | White | Janus et Cie | 8 |
| Outdoor Rattan JC Cooler Table | Brown | Janus et Cie | 1 |
| Formal Rattan SO Patio Chair | Brown | SourceOutdoor | 4 |
| Formal Outdoor SO Cushions | White | SourceOutdoor | 4 |
| Formal SO Side Table | Brown | SourceOutdoor | 2 |
| Formal SO Coffee Table (No Top) | Brown | SourceOutdoor | 1 |
| SO Metal Dining Tables | Brown | SourceOutdoor | 4 |
| SO Rattan Dinning Chair | Brown | SourceOutdoor | 16 |
| SO Dinning Cushion | Blue | SourceOutdoor | 16 |
| OS Dining Decorative Pillows | Design | SourceOutdoor | 16 |
| Formal Woven Rattan SO Chair | Brown | SourceOutdoor | 5 |
| SO Corner Cushions | White | SourceOutdoor | 4 |
| SO Middle Cushions | White | SourceOutdoor | 1 |
| Ceramic Side Tables | White | SourceOutdoor | 4 |
| Shade Set SO Patio Chair | Brown | SourceOutdoor | 1 |
| Shade Set Outdoor Cushion | Blue | SourceOutdoor | 1 |
| Throw Pillows | Blue | SourceOutdoor | 5 |
| Throw Pillows | Design | SourceOutdoor | 2 |
| Throw Pillows | Yellow | SourceOutdoor | 1 |
| Wooden Benches | Brown | Country Casual | 5 |

**EXHIBIT C**

**LIST OF CONTRACTS**

Navitas Credit Corp (Fitness Equipment)

Platinum Group Security (Concierge)

Hotwire (Cable/Internet)

Elevator Service (Otis)

Life Safety Service (Advanced Fire & Security)

Marketing Contracts

**EXHIBIT D**

**RENT ROLL**

(Attached)

**EXHIBIT D**

**RENT ROLL**

ZRS Management, LLC - 101 Via Mizner
RENT ROLL DETAIL
05/30/2025 10:56 AM
As of Date: 09/31/2025
Parameters: Properties: - all subproperties; Show All Unit Designations or Filter by: ALL; Subjournals: ALL; Sort by: Floorplan; Report Type: Details + Summary; Exclude Formers?: Yes; Show Unit Rent as: Market + Addl.

| Resit ID | Lease ID | Unit | Floorplan | Unit Designation | SQFT | Unit/Lease Status | Name | Move-In | Move-Out | Lease Start | Lease End | Market + Addl. | Required Deposit | Dep On Hand | Balance | Lease Rent | RENT | Total Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 0528 | A1 | N/A | 804 | Vacant | VACANT | | | | | 0 | | | 0 | | 0 | 0 |
| 72008 | 123057 | 0535 | A1 | N/A | 804 | Occupied | Zinyana, Boipelo | 01/10/2024 | | 04/10/2025 | 07/09/2026 | 2918 | 3806 | 3806 | -3065.29 | 2890 | 2890 | 3015 |
| 72147 | 122961 | 0628 | A1 | N/A | 804 | Occupied | Savage, Maxine | 10/31/2024 | | 10/31/2024 | 01/30/2026 | 2924 | 1000 | 1000 | 0 | 2812 | 2812 | 3012 |
| 72117 | 122915 | 0635 | A1 | N/A | 804 | Occupied | Wittig, John | 09/28/2024 | | 09/28/2024 | 12/27/2025 | 2804 | 1000 | 1000 | 0 | 2804 | 2804 | 3079 |
| 40340 | 122699 | 0728 | A1 | N/A | 804 | Occupied | Gilman, Jonathan | 02/09/2018 | | 02/12/2025 | 05/11/2026 | 2983 | 500 | 500 | -3189.25 | 2954 | 2954 | 3114 |
| 0 | 0 | 0735 | A1 | N/A | 804 | Vacant | VACANT | | | | | 2983 | | | 0 | | 0 | 0 |
| 61518 | 123114 | 0828 | A1 | N/A | 804 | Occupied | Rutheiser, Barry | 11/15/2021 | | 05/15/2025 | 08/14/2026 | 2914 | 1000 | 1000 | 0 | 2886 | 2886 | 3236 |
| 72160 | 122987 | 0835 | A1 | N/A | 804 | Occupied | Ostermann, Lukas | 11/25/2024 | | 11/25/2024 | 02/24/2026 | 3041 | 1000 | 1000 | 0 | 2811 | 2811 | 3011 |
| 0 | 0 | 0928 | A1 | N/A | 804 | Vacant | VACANT | | | | | 3016 | | | 0 | | 0 | 0 |
| 0 | 0 | 0935 | A1 | N/A | 804 | Vacant | VACANT | | | | | 3099 | | | 0 | | 0 | 0 |
| 0 | 0 | 01028 | A1 | N/A | 804 | Vacant | VACANT | | | | | 3158 | | | 0 | | 0 | 0 |
| 72116 | 122911 | 01035 | A1 | N/A | 804 | Occupied | Kaplan, Russell | 09/20/2024 | | 09/20/2024 | 12/19/2025 | 2965 | 1000 | 1000 | 0 | 2965 | 2965 | 3240 |
| 71993 | 123154 | 0532 | A10 | N/A | 897 | Occupied | Richards, Kennedy | 02/21/2024 | | 05/21/2025 | 08/20/2026 | 3017 | 3901 | 3901 | -274.65 | 2988 | 2988 | 3263 |
| 72144 | 122957 | 0632 | A10 | N/A | 897 | Occupied | Braun, Bradley | 12/27/2024 | | 12/27/2024 | 03/26/2026 | 2924 | 1000 | 1000 | 0 | 2924 | 2924 | 3049 |
| 72033 | 122738 | 0732 | A10 | N/A | 897 | Occupied-NTV | Grynbaum, Jason | 05/08/2024 | 08/07/2025 | 05/08/2024 | 08/07/2025 | 2983 | 1000 | 1000 | 35 | 2868 | 2868 | 3188 |
| 61535 | 123010 | 0832 | A10 | N/A | 897 | Occupied | Smith, Anne | 09/26/2021 | | 12/28/2024 | 12/27/2025 | 3041 | 3433 | 3433 | 0 | 3012 | 3012 | 3337 |
| 72143 | 122956 | 0932 | A10 | N/A | 897 | Occupied | Solangel, Mariana | 11/01/2024 | | 11/01/2024 | 01/31/2026 | 3099 | 1000 | 1000 | -3500.29 | 3099 | 3099 | 3449 |
| 72202 | 123076 | 01032 | A10 | N/A | 897 | Occupied | Polkarpov, Ivan | 03/15/2025 | | 03/15/2025 | 06/14/2026 | 3158 | 1000 | 1000 | 0 | 3158 | 3158 | 3358 |
| 72148 | 122962 | 01132 | A10 | N/A | 897 | Occupied | Green, Adam | 11/15/2024 | | 11/15/2024 | 02/14/2026 | 3217 | 1000 | 1000 | 0 | 3217 | 3217 | 3462 |
| 71978 | 122990 | 01232 | A10 | N/A | 897 | Occupied | Roberts, Reisa | 11/22/2023 | | 11/22/2024 | 08/21/2025 | 3198 | 1000 | 1000 | 0 | 3229 | 3229 | 3354 |
| 61819 | 122740 | TS-32 | A10 | N/A | 897 | Occupied-NTV | Gilbert, Joshua | 02/10/2023 | 08/09/2025 | 05/10/2024 | 08/09/2025 | 3502 | 1000 | 1000 | 0 | 3502 | 3502 | 3852 |
| 0 | 0 | 0539 | A11 | N/A | 917 | Admin/Down | VACANT | | | | | 3063 | | | 0 | | 0 | 0 |
| 72095 | 122867 | 0639 | A11 | N/A | 917 | Occupied | Rose, Alyssa | 08/31/2024 | | 08/31/2024 | 11/29/2025 | 2939 | 2939 | 3939 | 0 | 2939 | 2939 | 3134 |
| 72024 | 123142 | 0739 | A11 | N/A | 917 | Occupied | Sahai, Kavita | 02/19/2024 | | 05/16/2025 | 08/15/2026 | 2996 | 1000 | 1000 | -504.49 | 2967 | 2967 | 3167 |
| 71970 | 102622 | 0839 | A11 | N/A | 917 | Occupied | Mohl, Robert | 12/13/2023 | | 12/13/2023 | 12/12/2025 | 3051 | 1000 | 1000 | -3104.29 | 2934 | 2934 | 3054 |
| 51223 | 122753 | 0939 | A11 | N/A | 917 | Occupied | Cumano, Zdenka | 12/03/2020 | | 04/03/2024 | 07/02/2025 | 3009 | 500 | 500 | 35 | 3009 | 3009 | 3209 |
| 51251 | 123134 | 01039 | A11 | N/A | 917 | Occupied | Dorcent, Mario | 01/09/2021 | | 05/09/2025 | 08/08/2026 | 3059 | 500 | 500 | 40 | 3151 | 3151 | 3351 |
| 72090 | 122861 | 01139 | A11 | N/A | 917 | Occupied | Sorbero, Carol | 08/12/2024 | | 08/12/2024 | 11/11/2025 | 3224 | 4224 | 4224 | 0 | 3224 | 3224 | 3419 |
| 61482 | 123008 | 01239 | A11 | N/A | 917 | Occupied | Guerra, Alexis | 07/12/2021 | | 01/12/2025 | 04/11/2026 | 3168 | 1000 | 1000 | 0 | 3137 | 3137 | 3462 |
| 61561 | 122801 | PH-39 | A11 | N/A | 917 | Occupied-NTVL | Walker, Bonnie | 12/01/2021 | 06/30/2025 | 07/01/2024 | 06/30/2025 | 3245 | 1000 | 1000 | -3474.25 | 3245 | 3245 | 3440 |
| 72107 | 123120 | PH-38 | A11 | N/A | 917 | Applicant | Armijmeeder, Ryan | 07/16/2025 | | 07/16/2025 | 10/15/2026 | 0 | 4245 | 0 | -99 | 3245 | 3245 | 3245 |
| 72210 | 123103 | TS-39 | A11 | N/A | 917 | Occupied | Tacher, Marc | 04/21/2025 | | 04/21/2025 | 07/20/2026 | 3339 | 3339 | 3339 | 0 | 3339 | 3339 | 240 |
| 61660 | 122993 | 0623 | A12 | N/A | 951 | Occupied | Alpevovich, Max | 07/27/2022 | | 12/02/2024 | 07/19/2025 | 3480 | 1000 | 1000 | 0 | 3513 | 3513 | 3718 |
| 72124 | 122930 | 0723 | A12 | N/A | 951 | Occupied | Lane, James | 10/18/2024 | | 10/18/2024 | 01/17/2026 | 3501 | 1000 | 1000 | 0 | 3501 | 3501 | 3701 |
| 61745 | 122970 | 0823 | A12 | N/A | 951 | Occupied | Mondry, Steven | 09/20/2022 | | 12/20/2024 | 05/19/2026 | 3600 | 1000 | 1000 | -3801.25 | 3566 | 3566 | 3766 |
| 72185 | 123043 | 0923 | A12 | N/A | 951 | Occupied | Evans, Sarah | 04/15/2025 | | 04/15/2025 | 07/14/2026 | 3661 | 1000 | 1000 | 0 | 3661 | 3661 | 200 |
| 71982 | 123035 | 01023 | A12 | N/A | 951 | Occupied | Godofsky, Phyllis | 01/10/2025 | | 01/10/2025 | 04/09/2026 | 3981 | 1500 | 1500 | 0 | 3981 | 3981 | 4306 |
| 72044 | 122761 | 01123 | A12 | N/A | 951 | Occupied | DeLuca, Jonathan | 05/18/2024 | | 05/18/2024 | 08/17/2025 | 3779 | 1000 | 1000 | 0 | 3634 | 3634 | 3984 |
| 72019 | 123106 | 01223 | A12 | N/A | 951 | Occupied | German, Patricia | 02/19/2024 | | 05/19/2025 | 05/18/2026 | 3567 | 4430 | 4430 | 0 | 3533 | 3533 | 3733 |
| 72224 | 123127 | PH-23 | A12 | N/A | 951 | Occupied | Laplante, Audrey | 04/28/2025 | | 04/28/2025 | 07/27/2026 | 4025 | 1000 | 1000 | 0 | 4025 | 4025 | 200 |
| 61712 | 122878 | TS-23 | A12 | N/A | 951 | Occupied | Tucker, Montana | 07/19/2022 | | 10/19/2024 | 01/18/2026 | 4318 | 1000 | 1000 | 0 | 4277 | 4277 | 4547 |
| 61705 | 122963 | 0604 | A13 | N/A | 951 | Occupied | Leach, George | 08/27/2022 | | 12/27/2024 | 03/26/2026 | 2989 | 1000 | 1000 | 0 | 2960 | 2960 | 3235 |
| 72113 | 123065 | 0704 | A13 | N/A | 951 | Occupied | Jay, Abraham | 02/28/2025 | | 02/28/2025 | 05/27/2026 | 3051 | 0 | 5966 | 0 | 3051 | 3051 | 3476 |
| 72173 | 123027 | 0804 | A13 | N/A | 951 | Occupied | DeStefano, Alexa | 03/15/2025 | | 03/15/2025 | 06/14/2026 | 3114 | 1000 | 1000 | 0 | 3114 | 3114 | 3439 |
| 72043 | 122760 | 0904 | A13 | N/A | 951 | Occupied | Chain, Steven | 05/30/2024 | | 05/30/2024 | 08/29/2025 | 3189 | 1000 | 1000 | 0 | 3066 | 3066 | 3261 |
| 61881 | 122923 | 01004 | A13 | N/A | 951 | Occupied | Sher, Stefanie | 07/27/2023 | | 10/27/2024 | 01/26/2026 | 3252 | 4127 | 4127 | 0 | 3221 | 3221 | 3491 |
| 0 | 0 | 01104 | A13 | N/A | 951 | Vacant-Leased | VACANT | | | | | 3313 | | | 0 | | 0 | 0 |
| 72235 | 123145 | 01104 | A13 | N/A | 951 | Applicant | Kuruc, Ross | 06/30/2025 | | 06/30/2025 | 09/29/2026 | 0 | 1000 | 0 | -249 | 3313 | 3313 | 3513 |
| 0 | 0 | 01204 | A13 | N/A | 951 | Vacant-Leased | VACANT | | | | | 3376 | | | 0 | | 0 | 0 |
| 72212 | 123107 | 01204 | A13 | N/A | 951 | Occupied | Leahy Goldstein, Mary | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1000 | 1000 | -112.93 | 3376 | 3376 | 3501 |
| 72203 | 123078 | PH-04 | A13 | N/A | 951 | Occupied | DAlessandro, Michael | 03/22/2025 | | 03/22/2025 | 03/21/2026 | 3563 | 1000 | 1000 | -3945.08 | 3563 | 3563 | 3913 |
| 72133 | 122938 | TS-04 | A13 | N/A | 951 | Occupied | Koroleva, Ekaterina | 11/09/2024 | | 11/09/2024 | 02/08/2026 | 3439 | 1000 | 1000 | 0 | 3439 | 3439 | 3564 |
| 61948 | 122794 | 0640 | A14 | N/A | 924 | Occupied-NTVL | Rizzo, Todd | 05/25/2022 | 06/02/2025 | 05/25/2024 | 08/24/2025 | 3088 | 1000 | 1000 | 998.48 | 3088 | 3088 | 4258 |
| 72229 | 123133 | 0540 | A14 | N/A | 924 | Applicant | Bowgren, Sarah | 06/26/2025 | | 06/26/2025 | 09/25/2026 | 0 | 1000 | 1000 | 0 | 3088 | 3088 | 3328 |
| 61495 | 122940 | 0640 | A14 | N/A | 924 | Occupied | Kabbas, Diane | 08/15/2021 | | 11/15/2024 | 02/14/2026 | 3053 | 1000 | 1000 | 0 | 3024 | 3024 | 3224 |
| 51414 | 122879 | 0740 | A14 | N/A | 924 | Occupied | Blair, Caroline | 05/20/2021 | | 08/20/2024 | 08/19/2025 | 3110 | 3084 | 3084 | 40 | 3110 | 3110 | 3305 |
| 72076 | 122822 | 0840 | A14 | N/A | 924 | Occupied | Belmond, Zion | 06/28/2024 | | 06/28/2024 | 09/27/2025 | 3031 | 1000 | 1000 | 0 | 3031 | 3031 | 3351 |
| 61473 | 123056 | 0940 | A14 | N/A | 924 | Occupied | Aptekar, Sylvia | 07/23/2021 | | 04/23/2025 | 07/22/2026 | 3225 | 1000 | 1000 | 0 | 3194 | 3194 | 3394 |
| 0 | 0 | 01040 | A14 | N/A | 924 | Vacant-Leased | VACANT | | | | | 3282 | | | 0 | | 0 | 0 |
| 72248 | 123166 | 01040 | A14 | N/A | 924 | Applicant | Parker, Salvatore | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1000 | 0 | 0 | 3282 | 3282 | 3407 |
| 72162 | 123001 | 01140 | A14 | N/A | 924 | Occupied | Roesler, Richard | 01/04/2025 | | 01/04/2025 | 04/03/2026 | 3212 | 1000 | 1000 | -3522.25 | 3212 | 3212 | 3487 |
| 61824 | 122796 | 01240 | A14 | N/A | 924 | Occupied | Fuller, Glenn | 04/12/2023 | | 07/12/2024 | 07/11/2025 | 3212 | 1000 | 1000 | 35 | 3212 | 3212 | 3532 |
| 61824 | 123140 | 01240 | A14 | N/A | 924 | Pending renewal | Fuller, Glenn | 04/12/2023 | | 07/12/2025 | 07/11/2026 | 0 | 1000 | 1000 | 0 | 3308 | 3308 | 3623 |
| 61597 | 122850 | PH-40 | A14 | N/A | 924 | Occupied | Creager, Matthew | 02/08/2022 | | 08/08/2024 | 11/07/2025 | 3447 | 1000 | 1000 | 0 | 3447 | 3447 | 3807 |
| 51219 | 122766 | TS-40 | A14 | N/A | 924 | Occupied | Wylborski, Richard | 12/20/2020 | | 04/20/2024 | 04/19/2025 | 3456 | 0 | 500 | -9260.58 | 3560 | 3560 | 4580 |
| 71969 | 123015 | 01133 | A15 | N/A | 1139 | Occupied | Meester, Drew | 11/27/2023 | | 02/27/2025 | 02/26/2026 | 3843 | 1000 | 1000 | 0 | 3806 | 3806 | 4006 |
| 61831 | 122818 | 01233 | A15 | N/A | 1139 | Occupied-NTVL | Dixie, Keira | 04/21/2023 | 07/20/2025 | 07/21/2024 | 07/20/2025 | 4158 | 1000 | 1000 | 35 | 4158 | 4158 | 3358 |
| 72230 | 123135 | 01233 | A15 | N/A | 1139 | Applicant | Walker, Kevin | 08/03/2025 | | 08/03/2025 | 08/02/2026 | 0 | 1000 | 1000 | 0 | 4158 | 4158 | 4158 |
| 61522 | 122719 | TS-33 | A15 | N/A | 1139 | Occupied-NTV | Casasanto, Stephen | 11/30/2021 | 05/31/2025 | 03/01/2024 | 05/31/2025 | 4307 | 1000 | 1000 | 145.15 | 4141 | 4141 | 4411 |
| 61687 | 122960 | 0605 | A2 | N/A | 804 | Occupied | Perosi, Jill | 10/01/2022 | | 01/01/2025 | 03/31/2026 | 2862 | 1000 | 1000 | -3110.25 | 2835 | 2835 | 3035 |
| 72005 | 123090 | 0606 | A2 | N/A | 804 | Occupied | Weiss, Andre | 01/17/2024 | | 04/17/2025 | 07/16/2026 | 2862 | 1000 | 1000 | -3069.25 | 2835 | 2835 | 3035 |
| 51290 | 122771 | 0705 | A2 | N/A | 804 | Occupied | Wehnes, Ashley | 03/01/2021 | | 06/01/2025 | 05/31/2025 | 2868 | 500 | 500 | 0 | 2927 | 2927 | 3127 |
| 51290 | 123113 | 0705 | A2 | N/A | 804 | Pending renewal | Wehnes, Ashley | 03/01/2021 | | 06/01/2025 | 05/31/2026 | 0 | 500 | 500 | 0 | 3015 | 3015 | 3215 |
| 61829 | 122776 | 0706 | A2 | N/A | 804 | Occupied | Hooker, Fabiola | 03/15/2023 | | 06/15/2024 | 06/14/2025 | 2927 | 1000 | 1000 | 0 | 2927 | 2927 | 3122 |
| 51290 | 122805 | 0805 | A2 | N/A | 804 | Occupied | Frank, Randi | 05/21/2025 | | 05/21/2025 | 05/20/2026 | 2998 | 1000 | 1000 | 0 | 2998 | 2998 | 3238 |
| 72091 | 122863 | 0806 | A2 | N/A | 804 | Occupied | Lane, Sandra | 09/09/2024 | | 09/09/2024 | 12/08/2025 | 2996 | 1000 | 1000 | 0 | 2996 | 2996 | 3083 |
| 72161 | 122991 | 0905 | A2 | N/A | 815 | Occupied | Carvalho, Mariana | 12/01/2024 | | 12/01/2024 | 11/30/2025 | 3063 | 1000 | 1000 | 0 | 3063 | 3063 | 3263 |
| 50730 | 122979 | 0906 | A2 | N/A | 804 | Occupied | Posterino, Antonio | 05/01/2019 | | 11/07/2024 | 02/03/2026 | 3063 | 500 | 500 | 40 | 3033 | 3033 | 3253 |
| 72052 | 122775 | 01005 | A2 | N/A | 804 | Occupied | Sampson, Jordan | 05/24/2024 | | 05/24/2024 | 08/23/2025 | 3126 | 3126 | 3126 | 0 | 3126 | 3126 | 3471 |
| 61610 | 123108 | 01006 | A2 | N/A | 804 | Occupied | Marcus, Michael | 08/01/2021 | | 05/01/2025 | 11/30/2025 | 3064 | 1000 | 1000 | -3327.25 | 3093 | 3093 | 3293 |
| 61610 | 122773 | 01105 | A2 | N/A | 804 | Occupied-NTV | Kavanaugh, Bart | 03/26/2023 | 06/15/2025 | 06/26/2024 | 09/25/2025 | 3189 | 1000 | 1000 | -1709.79 | 3189 | 3189 | 3189 |
| 72078 | 122830 | 01106 | A2 | N/A | 804 | Occupied | Iroff, Jayson | 07/12/2024 | | 07/12/2024 | 10/11/2025 | 3189 | 1000 | 1000 | 0 | 3189 | 3189 | 3464 |
| 40510 | 122998 | 01205 | A2 | N/A | 804 | Occupied | DeMartino, Patrice | 07/01/2018 | | 01/13/2025 | 04/12/2026 | 3128 | 500 | 500 | 40 | 3232 | 3232 | 3472 |
| 72222 | 123124 | 01206 | A2 | N/A | 804 | Occupied | Boyer, Thomasena | 05/30/2025 | | 05/30/2025 | 08/29/2026 | 3284 | 1000 | 1000 | 223.46 | 3284 | 3284 | 3484 |
| 61813 | 123087 | PH-05 | A2 | N/A | 804 | Occupied | Cohen, Tobi | 02/01/2023 | | 05/01/2025 | 07/31/2026 | 3360 | 1000 | 1000 | 0 | 3404 | 3404 | 3529 |
| 72225 | 123128 | PH-06 | A2 | N/A | 804 | Occupied | Spivey, Alexandra | 05/01/2025 | | 05/01/2025 | 07/29/2026 | 3437 | 1000 | 1000 | 0 | 3437 | 3437 | 125 |
| 61754 | 122858 | TS-05 | A2 | N/A | 804 | Occupied | Madsen, Gregory | 09/24/2022 | | 09/24/2024 | 12/23/2025 | 3316 | 1000 | 1000 | 0 | 3284 | 3284 | 3479 |
| 72107 | 122856 | TS-06 | A2 | N/A | 804 | Occupied | Lutin, Danielle | 09/30/2024 | | 09/30/2024 | 09/29/2025 | 3383 | 1000 | 1000 | -3434.29 | 3264 | 3264 | 3384 |
| 72083 | 122835 | 0610 | A3 | N/A | 845 | Occupied | Barsky, Eleanor | 07/12/2024 | | 07/12/2024 | 10/11/2025 | 3156 | 1000 | 1000 | 0 | 3156 | 3156 | 3351 |
| 61853 | 123009 | 0710 | A3 | N/A | 845 | Occupied | Carter, Caroline | 04/22/2022 | | 04/22/2025 | 04/21/2026 | 3105 | 1000 | 1000 | 0 | 3247 | 3247 | 3447 |
| 72075 | 122821 | 0810 | A3 | N/A | 845 | Occupied | Kone, Susan | 07/07/2024 | | 07/07/2024 | 07/06/2025 | 3220 | 1000 | 1000 | 0 | 3220 | 3220 | 3415 |
| 61576 | 123096 | 0910 | A3 | N/A | 845 | Occupied | Ringo, James | 02/05/2022 | | 05/06/2025 | 08/05/2026 | 3284 | 1000 | 1000 | 0 | 3253 | 3253 | 3453 |
| 61859 | 123038 | 01010 | A3 | N/A | 845 | Occupied | Siegfried, Cheryl | 05/01/2023 | | 06/01/2025 | 05/31/2026 | 3352 | 4223 | 4223 | 0 | 3352 | 3352 | 3547 |
| 72228 | 123131 | 01110 | A3 | N/A | 845 | Occupied-NTVL | Ingram, Conor | 05/01/2025 | 07/30/2025 | 05/01/2025 | 07/30/2025 | 3420 | 1000 | 1000 | 0 | 3420 | 3420 | 3420 |
| 72246 | 123161 | 01110 | A3 | N/A | 845 | Applicant | Balog, Mark | 08/13/2025 | | 08/13/2025 | 11/12/2026 | 0 | 1000 | 0 | 0 | 3420 | 3420 | 3620 |
| 61694 | 122914 | 01210 | A3 | N/A | 845 | Occupied | Nater, Frances | 09/14/2022 | | 11/19/2024 | 08/18/2025 | 3484 | 1000 | 1000 | 0 | 3451 | 3451 | 3731 |
| 50963 | 122797 | PH-10 | A3 | N/A | 845 | Occupied | Semenishin, Matthew | 11/19/2019 | | 05/19/2024 | 08/18/2025 | 3708 | 500 | 500 | 35 | 3838 | 3838 | 4033 |

ZRS Management, LLC - 101 Via Mizner
RENT ROLL DETAIL
05/30/2025 10:56 AM
As of Date: 09/31/2025
Parameters: Properties: - all subproperties; Show All Unit Designations or Filter by: ALL; Subjournals: ALL; Sort by: Floorplan; Report Type: Details + Summary; Exclude Formers?: Yes; Show Unit Rent as: Market + Addl.

| Resh ID | Lease ID | Unit | Floorplan | Unit Designation | SQFT | Unit/Lease Status | Name | Move-In | Move-Out | Lease Start | Lease End | Market + Addl | Required Deposit | Dep On Hand | Balance | Lease Rent | RENT | Total Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 72122 | 122927 | T5-10 | A3 | N/A | 845 | Occupied | Kramer, Dustin | 10/31/2024 | | 10/31/2024 | 01/30/2026 | 3098 | 1000 | 1000 | -973.82 | 3330 | 3330 | 3530 |
| 61515 | 122845 | 0712 | A3s | N/A | 845 | Occupied | Banks, Scott | 09/15/2021 | | 09/15/2024 | 09/14/2025 | 3137 | 1000 | 1000 | 0 | 3137 | 3137 | 3457 |
| 10075 | 122983 | 0812 | A3s | N/A | 844 | Occupied | Gilliman, Zack | 09/08/2016 | | 11/20/2024 | 11/19/2025 | 3182 | 500 | 500 | 0 | 3152 | 3152 | 3457 |
| 61779 | 123045 | 0912 | A3s | N/A | 844 | Occupied | Gebran, Carlo | 02/05/2025 | | 02/05/2025 | 05/03/2026 | 3227 | 1500 | 1500 | 0 | 3227 | 3227 | 3427 |
| 71971 | 123051 | 01012 | A3s | N/A | 844 | Occupied | Nunziati, James | 11/12/2023 | | 02/12/2025 | 05/11/2026 | 3270 | 1000 | 1000 | 0 | 3238 | 3238 | 3443 |
| 61877 | 122742 | 01112 | A3s | N/A | 844 | Occupied | Mayer, Julie | 04/19/2023 | | 04/19/2024 | 07/18/2025 | 3314 | 1000 | 1000 | 0 | 3314 | 3314 | 3509 |
| 51104 | 122989 | 01212 | A3s | N/A | 844 | Occupied | Fratello, Jerome | 07/06/2020 | | 01/06/2025 | 04/05/2026 | 3359 | 500 | 500 | 0 | 3327 | 3327 | 3527 |
| 72077 | 122827 | PH-12 | A3s | N/A | 844 | Occupied | Zwick, Marjorie | 07/31/2024 | | 07/31/2024 | 10/30/2025 | 3580 | 1000 | 1000 | -3950.29 | 3580 | 3580 | 3900 |
| 72231 | 123137 | T5-12 | A3s | N/A | 844 | Occupied | Sandler, Jared | 05/03/2025 | | 05/03/2025 | 08/02/2026 | 3469 | 1000 | 1000 | 87.5 | 3469 | 3469 | 3744 |
| 50782 | 122870 | 0607 | A4 | N/A | 845 | Occupied | Gomez, Angel | 10/01/2019 | | 10/01/2024 | 12/31/2025 | 2954 | 500 | 500 | 0 | 2925 | 2925 | 3045 |
| 72099 | 122875 | 0707 | A4 | N/A | 845 | Occupied | Young, Janet | 08/21/2024 | | 08/21/2024 | 11/20/2025 | 3018 | 1000 | 3018 | 0 | 3018 | 3018 | 3213 |
| 72065 | 122806 | 0807 | A4 | N/A | 845 | Occupied | Preziosi, Mikeyla | 06/13/2024 | | 06/13/2024 | 09/12/2025 | 3097 | 3097 | 3097 | -300 | 3097 | 3097 | 3417 |
| 0 | | 0907 | A4 | N/A | 845 | Vacant-Leased | VACANT | | | | | 3163 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72240 | 123156 | 0907 | A4 | N/A | 845 | Applicant | Anankomkoene, Lina | 06/06/2025 | | 06/06/2025 | 09/05/2026 | 0 | 1000 | 0 | -249 | 3163 | 3163 | 3363 |
| 72001 | 123088 | 01007 | A4 | N/A | 845 | Occupied | Gigliotti, Richard | 01/26/2024 | | 04/26/2025 | 07/25/2026 | 3230 | 1000 | 1000 | 0 | 3199 | 3199 | 3404 |
| 61795 | 123040 | 01107 | A4 | N/A | 845 | Occupied | Gruber, Lori | 12/21/2022 | | 03/21/2025 | 06/20/2026 | 3296 | 1000 | 1000 | 0 | 3264 | 3264 | 3589 |
| 0 | | 01207 | A4 | N/A | 845 | Vacant-Leased | VACANT | | | | | 3374 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72241 | 123157 | 01207 | A4 | N/A | 845 | Applicant | MUIR, DOUGLAS | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1000 | 0 | 0 | 3374 | 3374 | 3574 |
| 72150 | 122965 | PH-07 | A4 | N/A | 845 | Occupied | McCarthy, Edward | 12/27/2024 | | 12/27/2024 | 03/26/2026 | 3463 | 1000 | 1000 | 0 | 3463 | 3463 | 3663 |
| 72146 | 122959 | T5-07 | A4 | N/A | 845 | Occupied | Heller, Marti | 11/30/2024 | | 11/30/2024 | 02/27/2026 | 3407 | 3407 | 3407 | 0 | 3407 | 3407 | 3607 |
| 72096 | 122868 | 0638 | A5 | N/A | 845 | Occupied | Morris, Daniel | 08/22/2024 | | 08/22/2024 | 11/21/2025 | 2675 | 2675 | 2675 | 0 | 2675 | 2675 | 2870 |
| 20197 | 122834 | 0638 | A5 | N/A | 845 | Occupied | Smolenyak, Robert | 03/31/2017 | | 06/12/2024 | 11/11/2025 | 2739 | 500 | 500 | 0 | 2739 | 2739 | 2934 |
| 72028 | 122729 | 0738 | A5 | N/A | 845 | Occupied | Loorkhoor, Nicholas | 03/15/2024 | | 03/15/2024 | 06/14/2025 | 2670 | 1000 | 1000 | 0 | 2567 | 2567 | 2887 |
| 72028 | 123105 | 0738 | A5 | N/A | 845 | Pending renewal | Loorkhoor, Nicholas | 03/15/2024 | | 06/15/2025 | 09/14/2026 | 0 | 1000 | 0 | 0 | 2644 | 2644 | 2969 |
| 61912 | 122948 | 0838 | A5 | N/A | 845 | Occupied | Kanios, Michael | 09/08/2023 | | 12/08/2024 | 03/07/2026 | 2845 | 1000 | 1000 | 0 | 2818 | 2818 | 3018 |
| 72142 | 122955 | 0938 | A5 | N/A | 845 | Occupied | Davelooae, Barbara | 12/10/2024 | | 12/10/2024 | 03/09/2026 | 2898 | 1000 | 1000 | 0 | 2898 | 2898 | 3098 |
| 72114 | 122607 | 01038 | A5 | N/A | 845 | Occupied | Bohn, Liza | 09/28/2024 | | 09/28/2024 | 12/27/2025 | 2848 | 1000 | 1000 | 0 | 2848 | 2848 | 3048 |
| 72079 | 122831 | 0537 | A6 | N/A | 880 | Occupied | Aldz, Timothy | 08/15/2024 | | 08/15/2024 | 11/14/2025 | 2875 | 1000 | 1000 | 0 | 2875 | 2875 | 3070 |
| 72041 | 122756 | 0637 | A6 | N/A | 880 | Occupied | Burkhart, Elinor | 06/20/2024 | | 06/20/2024 | 09/19/2025 | 2842 | 1000 | 1000 | -2962.25 | 2733 | 2733 | 2928 |
| 50950 | 122851 | 0737 | A6 | N/A | 880 | Occupied | Strasnick, Kenneth | 11/18/2019 | | 08/01/2024 | 10/31/2025 | 2897 | 500 | 500 | 0 | 2897 | 2897 | 3092 |
| 72220 | 123121 | 0837 | A6 | N/A | 880 | Occupied | Squire, Edward | 05/21/2025 | | 05/21/2025 | 08/20/2026 | 2953 | 1000 | 1000 | 0 | 2953 | 2953 | 3153 |
| 0 | | 0937 | A6 | N/A | 880 | Vacant-Leased | VACANT | | | | | 3006 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61910 | 122852 | 01037 | A6 | N/A | 880 | Occupied-NTV | Baugh, Jack | 06/21/2023 | 06/10/2025 | 08/01/2024 | 07/31/2025 | 3061 | 1000 | 1000 | 0 | 3061 | 3061 | 3456 |
| 72101 | 122880 | 0616 | A7 | N/A | 880 | Occupied | Haugen, Casey | 09/27/2024 | | 09/27/2024 | 12/26/2025 | 3121 | 1000 | 1000 | 0 | 3121 | 3121 | 3316 |
| 51037 | 122767 | 0716 | A7 | N/A | 880 | Occupied-NTV | Morgan, Courtney | 01/23/2020 | 07/22/2025 | 04/23/2024 | 07/22/2025 | 3191 | 500 | 500 | 0 | 3066 | 3066 | 3563 |
| 72207 | 123098 | 0816 | A7 | N/A | 880 | Occupied | Ackerman, Richard | 05/29/2025 | | 05/29/2025 | 08/28/2026 | 3260 | 1000 | 1000 | 0 | 3260 | 3260 | 3385 |
| 72085 | 122966 | 0916 | A7 | N/A | 880 | Occupied | Haas, Gary | 11/03/2024 | | 11/03/2024 | 12/15/2025 | 3330 | 0 | 3063 | 0 | 3202 | 3202 | 3587 |
| 72175 | 123029 | 01016 | A7 | N/A | 880 | Occupied | Saland, Kalli | 01/25/2025 | | 01/25/2025 | 01/24/2026 | 3397 | 1000 | 1000 | 0 | 3397 | 3397 | 3597 |
| 61915 | 122624 | 01116 | A7 | N/A | 880 | Occupied | Clynes, Thomas | 08/08/2023 | | 08/08/2024 | 08/07/2025 | 3467 | 4334 | 4334 | 0 | 3467 | 3467 | 3667 |
| 72088 | 122909 | 01216 | A7 | N/A | 880 | Occupied | Posner, Ronald | 09/10/2024 | | 09/10/2024 | 11/24/2025 | 3514 | 1000 | 1000 | -61.93 | 3514 | 3514 | 3639 |
| 0 | | PH-16 | A7 | N/A | 880 | Vacant-Leased | VACANT | | | | | 3802 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72221 | 123123 | PH-16 | A7 | N/A | 880 | Applicant | Lynch, Geoffrey | 06/15/2025 | | 06/15/2025 | 09/14/2026 | 0 | 1000 | 0 | 0 | 3802 | 3802 | 4002 |
| 61938 | 122888 | T5-16 | A7 | N/A | 880 | Occupied | Carvalho, Ana | 09/29/2023 | | 10/29/2024 | 01/28/2026 | 3630 | 4490 | 4490 | 0 | 3595 | 3595 | 3795 |
| 61844 | 122798 | 0531 | A8 | N/A | 880 | Occupied | Whitman, Sophie | 04/19/2023 | | 07/19/2024 | 07/18/2025 | 2914 | 1000 | 1000 | 0 | 2914 | 2914 | 3074 |
| 61844 | 123150 | 0531 | A8 | N/A | 880 | Pending renewal | Whitman, Sophie | 04/19/2023 | | 07/19/2025 | 10/18/2026 | 0 | 1000 | 0 | 0 | 3001 | 3001 | 3166 |
| 40569 | 122982 | 0631 | A8 | N/A | 880 | Occupied | Inniss, Randi | 08/13/2018 | | 12/19/2024 | 03/18/2026 | 2868 | 1581 | 1581 | 0 | 2841 | 2841 | 3041 |
| 51286 | 122934 | 0731 | A8 | N/A | 880 | Occupied | Faro, Jody | 03/28/2021 | | 03/28/2025 | 06/27/2026 | 2805 | 500 | 500 | -3012.25 | 2778 | 2778 | 2978 |
| 61555 | 122921 | 0831 | A8 | N/A | 880 | Occupied | Robbins, Nancy | 10/25/2021 | | 10/27/2024 | 10/26/2025 | 2984 | 1000 | 1000 | 0 | 2955 | 2955 | 3150 |
| 61649 | 122795 | 0931 | A8 | N/A | 880 | Occupied | Blicht, Glenn | 06/01/2022 | | 06/01/2024 | 05/31/2025 | 2914 | 3449 | 3449 | -3235.25 | 2914 | 2914 | 3109 |
| 61649 | 123132 | 0931 | A8 | N/A | 880 | Pending renewal | Blicht, Glenn | 06/01/2022 | | 06/01/2025 | 08/31/2026 | 0 | 3449 | 0 | 0 | 3001 | 3001 | 3201 |
| 61748 | 122901 | 01031 | A8 | N/A | 880 | Occupied | Krauss, Robyn | 09/26/2022 | | 09/26/2024 | 09/25/2025 | 3098 | 1000 | 1000 | 0 | 3068 | 3068 | 3188 |
| 72171 | 123025 | 0529 | A9 | N/A | 897 | Occupied | Caplen, Erica | 01/24/2025 | | 01/24/2025 | 04/23/2026 | 2970 | 1000 | 1000 | 0 | 2970 | 2970 | 3170 |
| 61928 | 122968 | 0629 | A9 | N/A | 897 | Occupied | Luberger, Lynn | 08/08/2023 | | 11/08/2024 | 02/07/2026 | 2970 | 1000 | 1000 | -2.67 | 2942 | 2942 | 3142 |
| 40605 | 122792 | 0729 | A9 | N/A | 897 | Occupied | Davidman, Stephen | 10/18/2016 | | 07/18/2024 | 10/22/2025 | 3017 | 1000 | 1000 | 0 | 3017 | 3017 | 3137 |
| 72177 | 123031 | 0534 | A9 | N/A | 897 | Occupied | Rubin, Mark | 02/26/2025 | | 02/26/2025 | 05/25/2026 | 2970 | 1000 | 1000 | 0 | 2970 | 2970 | 3170 |
| 71979 | 123074 | 0629 | A9 | N/A | 897 | Occupied | Kasera, Raunak | 01/11/2024 | | 04/11/2025 | 07/10/2026 | 2924 | 1000 | 1000 | -3118.25 | 2896 | 2896 | 3096 |
| 72092 | 122864 | 0630 | A9 | N/A | 897 | Occupied | Palarino, Jeffrey | 10/01/2024 | | 10/01/2024 | 12/29/2025 | 2888 | 1000 | 1000 | 0 | 2888 | 2888 | 3083 |
| 72131 | 122930 | 0633 | A9 | N/A | 897 | Occupied | Bonner, Maria | 09/30/2024 | | 09/30/2024 | 12/29/2025 | 2924 | 1000 | 1000 | -300 | 2924 | 2924 | 3124 |
| 40579 | 122708 | 0634 | A9 | N/A | 897 | Occupied | Solomon, Karen | 09/29/2018 | | 03/29/2024 | 06/28/2025 | 2924 | 500 | 500 | -3063.22 | 2812 | 2812 | 3007 |
| 40579 | 123139 | 0634 | A9 | N/A | 897 | Pending renewal | Solomon, Karen | 09/29/2018 | | 06/29/2025 | 09/28/2026 | 0 | 500 | 0 | 0 | 2896 | 2896 | 3096 |
| 72226 | 123129 | 0729 | A9 | N/A | 897 | Occupied | Dalton, Joseph | 04/29/2025 | | 04/29/2025 | 07/28/2026 | 2983 | 1000 | 1000 | 138.01 | 2983 | 2983 | 200 |
| 72074 | 122820 | 0733 | A9 | N/A | 897 | Occupied-NTV | Lica, Jet | 07/01/2024 | 06/15/2025 | 07/01/2024 | 09/27/2025 | 2983 | 1000 | 1000 | 122.17 | 2915 | 2983 | 3183 |
| 72032 | 122733 | 0734 | A9 | N/A | 897 | Occupied | Ruszczynski, John | 03/15/2024 | | 03/15/2024 | 06/14/2025 | 2983 | 1000 | 1000 | 0 | 2868 | 2868 | 2988 |
| 61816 | 123059 | 0829 | A9 | N/A | 897 | Occupied | Ayala, Tanya | 03/23/2023 | | 03/23/2025 | 03/22/2026 | 3041 | 1000 | 1000 | -3342.39 | 3132 | 3132 | 3332 |
| 72130 | 122934 | 0830 | A9 | N/A | 897 | Occupied | Costello, James | 10/21/2024 | | 10/21/2024 | 01/20/2026 | 4373 | 4373 | 4373 | 5360.27 | 4373 | 4373 | 4573 |
| 40572 | 123080 | 0833 | A9 | N/A | 897 | Occupied | Davidman, Nicole | 09/18/2018 | | 04/21/2025 | 07/20/2026 | 3041 | 500 | 500 | 0 | 3012 | 3012 | 3292 |
| 61860 | 122769 | 0834 | A9 | N/A | 897 | Occupied | Springer, Ira | 04/28/2023 | | 04/28/2024 | 07/27/2025 | 2933 | 1000 | 1000 | 0.04 | 2933 | 2933 | 3128 |
| 72030 | 122731 | 0929 | A9 | N/A | 897 | Occupied | Davidson, Jennifer | 03/01/2024 | | 03/01/2024 | 05/31/2025 | 3099 | 1000 | 1000 | -3444.29 | 2980 | 2980 | 3300 |
| 72030 | 123144 | 0929 | A9 | N/A | 897 | Pending renewal | Davidson, Jennifer | 03/01/2024 | | 06/01/2025 | 08/31/2026 | 0 | 1000 | 0 | 0 | 3069 | 3069 | 3389 |
| 72020 | 122706 | 0930 | A9 | N/A | 897 | Occupied-NTV | Gartner, Scott | 03/04/2024 | 06/05/2025 | 03/06/2024 | 06/05/2025 | 3099 | 1000 | 1000 | 0 | 2980 | 2980 | 3175 |
| 72236 | 123146 | 0933 | A9 | N/A | 897 | Occupied | Casson, Nicholas | 05/14/2025 | | 05/14/2025 | 08/13/2026 | 3099 | 4099 | 4099 | 0 | 3099 | 3099 | 3299 |
| 0 | | 0934 | A9 | N/A | 897 | Vacant-Leased | VACANT | | | | | 3099 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72244 | 123150 | 0934 | A9 | N/A | 897 | Applicant | Bokobza, Ron | 06/10/2025 | | 06/10/2025 | 06/09/2026 | 0 | 1000 | 0 | 0 | 3099 | 3099 | 3099 |
| 0 | | 01029 | A9 | N/A | 897 | Vacant | VACANT | | | | | 3158 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72048 | 123038 | 01030 | A9 | N/A | 897 | Occupied | Sack, Gail | 01/17/2025 | | 01/17/2025 | 04/16/2026 | 3158 | 1000 | 1000 | 125 | 3158 | 3158 | 3448 |
| 50779 | 122837 | 01033 | A9 | N/A | 897 | Occupied | Price, Jennifer | 04/15/2019 | | 08/01/2024 | 10/31/2025 | 3158 | 500 | 500 | 40 | 3158 | 3158 | 3353 |
| 72056 | 122785 | 01034 | A9 | N/A | 897 | Occupied | Lund, Amalia | 07/31/2024 | | 07/31/2024 | 10/28/2025 | 3027 | 3027 | 3027 | 0 | 3027 | 3027 | 3222 |
| 40581 | 122757 | 0502 | AD1s | N/A | 995 | Occupied | Taylor, Joan | 10/01/2018 | | 06/03/2024 | 09/02/2025 | 4162 | 500 | 500 | 0 | 4162 | 4162 | 4357 |
| 72013 | 122600 | 0602 | AD1s | N/A | 995 | Occupied | Chido, Lynne | 05/28/2021 | | 02/28/2025 | 05/27/2026 | 4024 | 500 | 500 | 0 | 3763 | 3763 | 4088 |
| 71960 | 122601 | 0702 | AD1s | N/A | 995 | Occupied | King, Stacy | 10/30/2023 | | 03/01/2025 | 05/31/2026 | 4024 | 500 | 500 | 0 | 3935 | 3935 | 4135 |
| 72182 | 123040 | 0802 | AD1s | N/A | 995 | Occupied | Romano, Jacques | 03/12/2025 | | 03/12/2025 | 06/11/2026 | 4162 | 1000 | 1000 | 0 | 4162 | 4162 | 4362 |
| 51091 | 122843 | 0902 | AD1s | N/A | 995 | Occupied | Fetterman, Brandon | 06/01/2020 | | 09/01/2024 | 08/31/2025 | 4232 | 500 | 500 | 40 | 3995 | 3995 | 4190 |
| 51222 | 122743 | 01002 | AD1s | N/A | 995 | Occupied | Kemp, David | 01/02/2021 | | 04/01/2024 | 07/31/2025 | 4296 | 0 | 0 | 0 | 4131 | 4131 | 4326 |
| 61808 | 123116 | 01102 | AD1s | N/A | 995 | Occupied | Crofts, Kevin | 02/27/2023 | | 05/01/2025 | 07/31/2026 | 4386 | 1000 | 1000 | 0 | 4324 | 4324 | 4599 |
| 61828 | 123136 | 01202 | AD1s | N/A | 995 | Occupied | Martinez, Miguel | 04/26/2023 | | 04/26/2025 | 04/25/2026 | 4307 | 1000 | 1000 | -6289.89 | 4436 | 4436 | 4861 |
| 72014 | 112703 | PH-02 | AD1s | N/A | 995 | Occupied | Sacks, Mark | 04/30/2024 | | 04/30/2024 | 07/29/2025 | 4734 | 1000 | 1000 | -44.08 | 4552 | 4552 | 4837 |
| 72035 | 122744 | 0519 | AD2s | N/A | 1039 | Occupied | Seward, Mark | 05/09/2024 | | 05/09/2024 | 08/08/2025 | 4450 | 1000 | 1000 | -4783.25 | 4394 | 4394 | 4714 |
| 72035 | 123143 | 0519 | AD2s | N/A | 1039 | Pending renewal | Seward, Mark | 05/09/2024 | | 08/09/2025 | 11/08/2026 | 0 | 1000 | 0 | 0 | 4526 | 4526 | 4851 |
| 51129 | 122951 | 0619 | AD2s | N/A | 1039 | Occupied | Wein, John | 08/31/2020 | | 11/29/2024 | 02/28/2026 | 4175 | 500 | 500 | 0 | 4134 | 4134 | 4334 |
| 72190 | 123050 | 0719 | AD2s | N/A | 1039 | Occupied | Schwartz, Terry | 02/27/2025 | | 02/27/2025 | 05/26/2026 | 4133 | 1000 | 1000 | 0 | 4133 | 4133 | 4333 |
| 40571 | 123006 | 0719 | AD2s | N/A | 1039 | Occupied | Saylor, Dexter | 07/13/2018 | | 01/01/2025 | 03/31/2026 | 4245 | 500 | 500 | -4492.48 | 4204 | 4204 | 4454 |
| 61842 | 122863 | 0819 | AD2s | N/A | 1039 | Occupied | Navarro, Carlos | 01/25/2025 | | 01/25/2025 | 07/10/2026 | 4318 | 1000 | 1000 | 0 | 4346 | 4346 | 4546 |
| 71961 | 123058 | 0919 | AD2s | N/A | 1039 | Occupied | Litzenberger, Patricia | 11/17/2023 | | 02/17/2025 | 05/16/2026 | 4388 | 1000 | 1000 | 0 | 4346 | 4346 | 4546 |
| 61842 | 122881 | 01019 | AD2s | N/A | 1039 | Occupied | Clark, Bernadette | 05/31/2023 | | 08/31/2024 | 11/30/2025 | 4460 | 1000 | 1000 | 0 | 4460 | 4460 | 4780 |
| 20130 | 122944 | 01119 | AD2s | N/A | 1039 | Occupied | Holod, Danuta | 11/11/2016 | | 11/04/2024 | 02/03/2026 | 4530 | 500 | 500 | 0 | 4487 | 4487 | 4687 |
| 50849 | 123064 | 01219 | AD2s | N/A | 1039 | Occupied | J CIOFFI CARGO MANAGEMENT, ... | 05/05/2025 | | 05/05/2025 | 08/04/2026 | 4602 | 1000 | 1000 | -512.75 | 4602 | 4602 | 6877 |

ZRS Management, LLC - 101 Via Mizner
**RENT ROLL DETAIL**
05/30/2025 10:56 AM
As of Date: 09/31/2025
Parameters: Properties: - all subproperties; Show All Unit Designations or Filter by: ALL; Subjournals: ALL; Sort by: Floorplan; Report Type: Details + Summary; Exclude Formers?: Yes; Show Unit Rent as: Market + Addl.

| Resh ID | Lease ID | Unit | Floorplan | Unit Designation | SQFT | Unit/Lease Status | Name | Move-In | Move-Out | Lease Start | Lease End | Market + Addl. | Required Deposit | Dep On Hand | Balance | Lease Rent | RENT | Total Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 72189 | 123049 | PH-19 | AD2s | N/A | 1039 | Occupied | Daley, Jeffrey | 04/04/2025 | | 04/04/2025 | 07/03/2026 | 4989 | 1000 | 1000 | 0 | 4989 | 4989 | 325 |
| 61882 | 122803 | TS-19 | AD2s | N/A | 1050 | Occupied | Gregory, Jonathan | 06/30/2023 | | 06/30/2024 | 09/29/2025 | 4702 | 1000 | 1000 | 0 | 4702 | 4702 | 4897 |
| 72218 | 123119 | 0620 | AD3s | N/A | 1050 | Occupied | Dimauro, Amanda | 04/30/2025 | | 04/30/2025 | 07/29/2026 | 4175 | 1000 | 1000 | 0 | 4175 | 4175 | 200 |
| 40390 | 122774 | 0620 | AD3s | N/A | 1050 | Occupied | Richter, Laura | 02/01/2018 | | 06/10/2024 | 09/09/2025 | 4133 | 500 | 500 | 41.13 | 4133 | 4133 | 4403 |
| 61769 | 122883 | 0720 | AD3s | N/A | 1050 | Occupied | Riemer, Leon | 10/18/2022 | | 10/18/2024 | 10/17/2025 | 4203 | 1000 | 1000 | 0 | 4162 | 4162 | 4462 |
| 72068 | 122810 | 0820 | AD3s | N/A | 1050 | Occupied | Marcus, Jamie | 08/10/2024 | | 08/10/2024 | 11/09/2025 | 4274 | 1000 | 1000 | 0 | 4274 | 4274 | 4469 |
| 0 | 0 | 0920 | AD3s | N/A | 1050 | Vacant-Leased | VACANT | | | | | 4346 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72238 | 123151 | 0920 | AD3s | N/A | 1050 | Applicant | Scorzo, Vincent | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1000 | 0 | 0 | 4346 | 4346 | 4346 |
| 61927 | 122981 | 01020 | AD3s | N/A | 1050 | Occupied | Rex, Jason | 09/27/2023 | | 12/27/2024 | 03/26/2026 | 4451 | 1000 | 1000 | -4784.29 | 4408 | 4408 | 4733 |
| 61568 | 123081 | 01120 | AD3s | N/A | 1050 | Occupied | Podolsky, Robert | 01/14/2022 | | 04/14/2025 | 07/13/2026 | 4530 | 1000 | 1000 | 0 | 4487 | 4487 | 4762 |
| 50920 | 122765 | 0615 | B1 | N/A | 1259 | Occupied | Gruskin, Marc | 11/01/2019 | | 05/02/2024 | 08/01/2025 | 4432 | 750 | 750 | 0 | 4432 | 4432 | 4777 |
| 61746 | 123085 | 0715 | B1 | N/A | 1259 | Occupied | Freed, David | 09/15/2022 | | 03/15/2025 | 06/14/2026 | 4765 | 1500 | 1500 | 0 | 4719 | 4719 | 4919 |
| 61663 | 122833 | 0815 | B1 | N/A | 1259 | Occupied | Taylor, Marilyn | 04/27/2022 | | 08/01/2024 | 07/31/2025 | 4836 | 1500 | 1500 | 80 | 4836 | 4836 | 5161 |
| 40634 | 122805 | 0915 | B1 | N/A | 1259 | Occupied | Weiner, Felice | 10/30/2018 | | 06/01/2024 | 05/31/2025 | 4906 | 750 | 750 | 0 | 4906 | 4906 | 5176 |
| 40634 | 123152 | 0915 | B1 | N/A | 1259 | Pending renewal | Weiner, Felice | 10/30/2018 | | 06/01/2025 | 05/31/2026 | 0 | 750 | | 0 | 5053 | 5053 | 5328 |
| 72164 | 123007 | 01015 | B1 | N/A | 1259 | Occupied | Tremblay, Mark | 01/22/2025 | | 01/22/2025 | 04/21/2026 | 4977 | 1500 | 1500 | -88.71 | 4977 | 4977 | 5177 |
| 40368 | 122724 | 01115 | B1 | N/A | 1259 | Occupied | Bell, Michel | 11/25/2017 | | 03/03/2024 | 06/02/2025 | 5028 | 2417 | 2417 | 0 | 4835 | 4835 | 5155 |
| 40368 | 123147 | 01115 | B1 | N/A | 1259 | Pending renewal | Bell, Michel | 11/25/2017 | | 06/03/2025 | 06/02/2026 | 0 | 2417 | | 0 | 4980 | 4980 | 5305 |
| 51227 | 123003 | 01215 | B1 | N/A | 1259 | Occupied | MAINSAIL HOUSING OF MIAMI LLC * | 12/14/2020 | | 12/14/2024 | 12/13/2025 | 5099 | 750 | 750 | -160 | 5050 | 5050 | 5515 |
| 0 | 0 | PH-15 | B1 | N/A | 1259 | Vacant | VACANT | | | | | 5190 | 0 | 0 | 0 | 0 | 0 | 0 |
| 71985 | 123148 | TS-15 | B1 | N/A | 1259 | Occupied | Perez, Vanessa | 02/13/2024 | | 05/13/2025 | 05/12/2026 | 5273 | 1500 | 1500 | 0 | 5222 | 5222 | 5422 |
| 61843 | 122826 | 0542 | B10 | N/A | 1292 | Occupied | McBride, Cheryl | 04/21/2023 | | 07/21/2024 | 10/20/2025 | 4131 | 1500 | 1500 | 0 | 4131 | 4131 | 4451 |
| 61911 | 122860 | 0642 | B10 | N/A | 1292 | Occupied | Ploresch, Gregory | 07/05/2023 | | 10/05/2024 | 01/04/2026 | 4200 | 1500 | 1500 | 0 | 4159 | 4159 | 4519 |
| 72152 | 122973 | 0742 | B10 | N/A | 1292 | Occupied | Chellew, Paola | 11/30/2024 | | 11/30/2024 | 03/01/2026 | 4286 | 1500 | 1500 | 0 | 4286 | 4286 | 4591 |
| 0 | 0 | 0842 | B10 | N/A | 1292 | Vacant | VACANT | | | | | 4349 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72149 | 122964 | 0942 | B10 | N/A | 1292 | Occupied | Wigelman, Alyssa | 11/26/2024 | | 11/26/2024 | 02/25/2026 | 4418 | 1500 | 1500 | 0 | 4418 | 4418 | 4693 |
| 61864 | 122813 | 01042 | B10 | N/A | 1292 | Occupied | Antoine, Tiffany | 06/28/2024 | | 06/28/2024 | 09/27/2025 | 4484 | 1500 | 1500 | 0.04 | 4484 | 4484 | 4676 |
| 61913 | 122969 | 01142 | B10 | N/A | 1292 | Occupied | Kolnick, Brett | 08/30/2024 | | 11/30/2024 | 03/01/2026 | 4550 | 1500 | 1500 | 0 | 4506 | 4506 | 4781 |
| 50822 | 123033 | 01242 | B10 | N/A | 1292 | Occupied | Velez, Pedro | 02/01/2020 | | 02/01/2025 | 04/30/2026 | 4634 | 750 | 750 | 0 | 4590 | 4590 | 4865 |
| 61833 | 123020 | PH-42 | B10 | N/A | 1292 | Occupied | Oliveira, Andre | 03/10/2023 | | 01/01/2025 | 12/31/2025 | 5000 | 0 | 0 | 0 | 4952 | 4952 | 2601 |
| 71972 | 123053 | TS-42 | B10 | N/A | 1292 | Occupied | Vrbanovic, Nikola | 12/22/2023 | | 03/22/2025 | 06/21/2026 | 4801 | 1500 | 1500 | -300 | 4754 | 4754 | 4954 |
| 0 | 0 | 01138 | B11 | N/A | 1341 | Vacant | VACANT | | | | | 4365 | 0 | 0 | 0 | 0 | 0 | 0 |
| 51407 | 123091 | 01238 | B11 | N/A | 1341 | Occupied | Rintrona, Noemi | 06/01/2021 | | 04/01/2025 | 06/30/2026 | 4635 | 750 | 750 | 0 | 4591 | 4591 | 4716 |
| 72167 | 123016 | PH-38 | B11 | N/A | 1341 | Occupied | Rabkin, Romy | 01/30/2025 | | 01/30/2025 | 04/29/2026 | 4774 | 4774 | 4774 | 0 | 4774 | 4774 | 4949 |
| 50719 | 122804 | TS-38 | B11 | N/A | 1341 | Occupied | Cauff, Stuart | 01/30/2019 | | 08/05/2024 | 11/04/2025 | 4689 | 750 | 750 | 40 | 4689 | 4689 | 4959 |
| 0 | 0 | 0624 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 5929 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72139 | 122946 | 0625 | B12 | N/A | 1369 | Occupied | Del Giudice, Antonio | 11/30/2024 | | 11/30/2024 | 02/28/2026 | 5541 | 1500 | 1500 | -145.16 | 5541 | 5541 | 7241 |
| 0 | 0 | 0724 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 6009 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72179 | 123036 | 0725 | B12 | Conventional | 1369 | Occupied | Weinzimer, Charlotte | 02/28/2025 | | 02/28/2025 | 05/27/2026 | 5893 | 1500 | 1500 | 0 | 5893 | 5893 | 6168 |
| 72006 | 123093 | 0824 | B12 | N/A | 1369 | Occupied | Gerber, Kelly | 01/03/2024 | | 04/03/2025 | 07/02/2026 | 6087 | 1500 | 1500 | 0 | 6029 | 6029 | 6304 |
| 10069 | 123012 | 0825 | B12 | N/A | 1369 | Occupied | Freedman, Lawrence | 09/05/2016 | | 12/18/2024 | 03/17/2026 | 5973 | 750 | 750 | 0 | 5472 | 5472 | 5747 |
| 63 | 122980 | 0924 | B12 | N/A | 1369 | Occupied | Foster, Ellen | 11/01/2016 | | 12/01/2024 | 11/30/2025 | 6167 | 750 | 750 | 0 | 6108 | 6108 | 6633 |
| 0 | 0 | 0925 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 6051 | 0 | 0 | 0 | 0 | 0 | 0 |
| 0 | 0 | 01025 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 6132 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61589 | 112704 | 01124 | B12 | N/A | 1369 | Occupied | Dolnick, Kevin | 01/22/2022 | | 01/22/2024 | 04/21/2025 | 6307 | 1500 | 1500 | 0 | 6246 | 6246 | 7321 |
| 72080 | 122832 | 01125 | B12 | N/A | 1369 | Occupied | Siegel, Jaynie | 07/19/2024 | | 07/19/2024 | 10/18/2025 | 6187 | 1500 | 1500 | 0 | 6187 | 6187 | 6362 |
| 61766 | 122942 | 01224 | B12 | N/A | 1369 | Occupied | Weisberg, Cindy | 11/11/2022 | | 11/11/2024 | 02/10/2026 | 6347 | 1500 | 1500 | 0 | 6286 | 6286 | 6486 |
| 61892 | 122933 | 01225 | B12 | N/A | 1369 | Occupied | Scala, Frank | 05/31/2023 | | 10/01/2024 | 12/31/2025 | 6267 | 1500 | 1500 | -6838.29 | 6267 | 6267 | 6267 |
| 0 | 0 | PH-24 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 6786 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72087 | 122853 | PH-25 | B12 | N/A | 1369 | Occupied | Richman, Benjamin | 07/29/2024 | | 07/29/2024 | 10/28/2025 | 6167 | 1500 | 1500 | 0 | 6167 | 6167 | 6487 |
| 0 | 0 | TS-24 | B12 | N/A | 1369 | Vacant | VACANT | | | | | 6687 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72038 | 122751 | TS-25 | B12 | N/A | 1369 | Occupied | Sundheim, John | 04/12/2024 | | 04/12/2024 | 07/11/2025 | 6460 | 1500 | 1500 | -6422.29 | 6212 | 6212 | 6407 |
| 72038 | 123153 | TS-25 | B12 | N/A | 1369 | Pending renewal | Sundheim, John | 04/12/2024 | | 07/12/2025 | 07/11/2026 | 0 | 1500 | | 0 | 6398 | 6398 | 6598 |
| 72047 | 122768 | 0523 | B13 | N/A | 1384 | Occupied | Olavarria, Aida | 05/15/2024 | | 05/15/2024 | 08/14/2025 | 5865 | 1500 | 1500 | 0 | 5422 | 5422 | 5667 |
| 0 | 0 | TS-30 | B14 | N/A | 1384 | Vacant | VACANT | | | | | 4905 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72178 | 122934 | 0525 | B15 | N/A | 1384 | Occupied | Bortnick, Charles | 01/29/2025 | | 01/29/2025 | 04/28/2026 | 5586 | 1500 | 1500 | 0 | 5586 | 5586 | 6011 |
| 0 | 0 | 0522 | B16s | N/A | 1384 | Vacant | VACANT | | | | | 7237 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72166 | 123014 | 0622 | B16s | N/A | 1683 | Occupied | Piccione, Patricia | 02/27/2025 | | 02/27/2025 | 05/26/2026 | 6552 | 1500 | 1500 | 0 | 6552 | 6552 | 6752 |
| 0 | 0 | 0722 | B16s | N/A | 1683 | Vacant-Leased | VACANT | | | | | 6650 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72249 | 123167 | 0722 | B16s | N/A | 1683 | Applicant | Batista Cagan, Stefano | 07/07/2025 | | 07/07/2025 | 07/06/2026 | 0 | 1500 | 0 | 0 | 6650 | 6650 | 6650 |
| 0 | 0 | 0822 | B16s | N/A | 1683 | Vacant | VACANT | | | | | 6749 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61493 | 123095 | 0922 | B16s | N/A | 1683 | Occupied | Zwick, Michael | 08/26/2021 | | 05/26/2025 | 05/25/2026 | 6847 | 1500 | 1500 | 0 | 6782 | 6782 | 7007 |
| 0 | 0 | 01022 | B16s | N/A | 1683 | Vacant | VACANT | | | | | 6943 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72232 | 123138 | 01122 | B16s | N/A | 1683 | Applicant | Mauro, Marina | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1500 | 0 | 0 | 6943 | 6943 | 7268 |
| 72137 | 122941 | 01222 | B16s | N/A | 1683 | Occupied | Bresky, Robin | 11/15/2024 | | 11/15/2024 | 02/14/2026 | 7016 | 1500 | 1500 | 0 | 7016 | 7016 | 7141 |
| 72219 | 123120 | 01222 | B16s | N/A | 1683 | Occupied | Gabbai, Eran | 04/22/2025 | | 04/22/2025 | 07/21/2026 | 7117 | 1117 | 1117 | 0 | 7117 | 7117 | 200 |
| 72200 | 123073 | PH-22 | B16s | N/A | 1683 | Occupied | Kranz, Gary | 03/31/2025 | | 03/31/2025 | 06/29/2026 | 7607 | 1500 | 1500 | 23.39 | 7607 | 7607 | 7957 |
| 51196 | 122728 | TS-22 | B16s | N/A | 1683 | Occupied | Kushner, David | 12/01/2020 | | 04/01/2024 | 06/30/2025 | 7360 | 750 | 750 | 0 | 7360 | 7360 | 8080 |
| 51196 | 123163 | TS-22 | B16s | N/A | 1683 | Pending renewal | Kushner, David | 12/01/2020 | | 07/01/2025 | 09/30/2026 | 0 | 750 | | 0 | 7581 | 7581 | 8306 |
| 20181 | 122772 | 0526 | B17 | N/A | 1683 | Occupied | Merson, Leanne | 02/01/2017 | | 04/19/2025 | 05/18/2025 | 7190 | 750 | 750 | -7515.29 | 7190 | 7190 | 7500 |
| 50820 | 112706 | 0626 | B17 | N/A | 1683 | Occupied | Kaminsky, Barbara | 06/19/2019 | | 03/19/2024 | 06/18/2025 | 6454 | 750 | 750 | 0.65 | 6206 | 6206 | 6526 |
| 50820 | 123109 | 0626 | B17 | N/A | 1683 | Pending renewal | Kaminsky, Barbara | 06/19/2019 | | 06/19/2025 | 09/18/2026 | 0 | 750 | | 0 | 6392 | 6392 | 6717 |
| 72156 | 123013 | 0726 | B17 | N/A | 1683 | Occupied | Freedman, Brigit | 01/04/2025 | | 01/04/2025 | 02/09/2026 | 6552 | 2000 | 2000 | 0 | 6552 | 6552 | 6892 |
| 51357 | 122922 | 0826 | B17 | N/A | 1683 | Occupied | Rakkenes, Olaf | 05/30/2021 | | 11/30/2024 | 03/01/2026 | 6650 | 750 | 750 | -7009 | 6684 | 6684 | 6911 |
| 71962 | 122947 | 0926 | B17 | N/A | 1683 | Occupied | Gollner, Stephanie | 10/31/2023 | | 12/01/2024 | 11/30/2025 | 6749 | 1500 | 1500 | 0 | 6684 | 6684 | 7009 |
| 10070 | 122809 | 01026 | B17 | N/A | 1683 | Occupied | Popper, Eliot | 10/14/2016 | | 08/01/2024 | 10/31/2025 | 6847 | 750 | 750 | 0 | 6847 | 6847 | 7167 |
| 51364 | 122780 | 0506 | B2 | N/A | 1307 | Occupied-NTV | Vogel, Susan | 05/25/2021 | 06/30/2025 | 07/01/2024 | 06/30/2025 | 5151 | 750 | 750 | 0 | 5151 | 5151 | 5346 |
| 72009 | 112693 | 0609 | B3 | N/A | 1307 | Occupied | Brandano, John | 01/20/2024 | | 01/20/2024 | 04/19/2025 | 4765 | 1500 | 1500 | 0 | 4719 | 4719 | 5809 |
| 72011 | 123045 | 0609 | B3 | N/A | 1307 | Pending renewal | Brandano, John | 01/20/2024 | | 04/20/2025 | 07/19/2026 | 0 | 1500 | | 0 | 4811 | 4811 | 4811 |
| 40388 | 123000 | 0709 | B3 | N/A | 1307 | Occupied | Mazar, Susana | 12/01/2017 | | 01/14/2025 | 04/13/2026 | 4710 | 750 | 750 | -4728.69 | 4665 | 4665 | 4940 |
| 51298 | 122919 | 0713 | B3 | N/A | 1307 | Occupied | Ravaee, Manije | 04/15/2021 | | 10/15/2024 | 01/14/2026 | 4801 | 750 | 750 | 0 | 4754 | 4754 | 4949 |
| 72097 | 122871 | 0809 | B3 | N/A | 1307 | Occupied | Houston, John | 09/05/2024 | | 09/05/2024 | 12/04/2025 | 4782 | 1500 | 1500 | 0 | 4782 | 4782 | 4957 |
| 72145 | 122958 | 0813 | B3 | N/A | 1307 | Occupied-NTV | Kaplan, Adrienne | 12/01/2024 | 06/30/2025 | 12/01/2024 | 03/01/2026 | 4642 | 1500 | 1500 | -4716.34 | 4642 | 4642 | 4842 |
| 72184 | 123042 | 0909 | B3 | N/A | 1307 | Occupied | Martin, Douglas | 02/28/2025 | | 02/28/2025 | 05/27/2026 | 4859 | 1500 | 1500 | -84.68 | 4859 | 4859 | 5059 |
| 72064 | 122802 | 0913 | B3 | N/A | 1307 | Occupied | Ringel, Richard | 06/14/2024 | | 06/14/2024 | 09/13/2025 | 4946 | 1500 | 1500 | 0 | 4756 | 4756 | 4951 |
| 0 | 0 | 01009 | B3 | N/A | 1307 | Vacant | VACANT | | | | | 4930 | 0 | 0 | 0 | 0 | 0 | 0 |
| 61862 | 123094 | 01013 | B3 | N/A | 1307 | Occupied | Camino, Carleigh | 05/27/2023 | | 05/27/2025 | 05/26/2026 | 5021 | 1500 | 1500 | 0 | 5172 | 5172 | 5522 |
| 72140 | 122949 | 01109 | B3 | N/A | 1307 | Occupied-NTV | Schalm, Deborah | 11/30/2024 | 05/31/2025 | 10/17/2024 | 05/31/2025 | 4747 | 1500 | 1500 | -5261.72 | 4747 | 4747 | 5122 |
| 61605 | 123115 | 01113 | B3 | N/A | 1307 | Occupied-NTV | Friedman, Karen | 02/28/2022 | | 05/28/2025 | 08/27/2026 | 5074 | 1500 | 1500 | -5384.25 | 5025 | 5025 | 5350 |
| 51350 | 122828 | 01209 | B3 | N/A | 1307 | Occupied | Martinez, Ricardo | 04/26/2021 | | 07/26/2024 | 07/25/2025 | 5055 | 750 | 750 | 0 | 5055 | 5055 | 5250 |
| 72084 | 122842 | 01213 | B3 | N/A | 1307 | Occupied | Levy, Iris | 08/05/2024 | | 08/05/2024 | 11/04/2025 | 5147 | 1500 | 1500 | 0 | 5147 | 5147 | 5467 |
| 72186 | 123044 | PH-09 | B3 | N/A | 1307 | Occupied | Tonkin, Jason | 03/24/2024 | 03/24/2024 | 03/24/2025 | 03/24/2026 | 5420 | 1500 | 6055 | 35 | 4855 | 4855 | 3431 |
| 72186 | 123044 | PH-13 | B3 | N/A | 1307 | Occupied | Devito, Francesca | 01/31/2025 | | 01/31/2025 | 02/09/2026 | 5509 | 5509 | 5509 | -54122.36 | 5509 | 5509 | 5794 |
| 71974 | 123092 | TS-09 | B3 | N/A | 1307 | Occupied | Koesten, Gary | 02/22/2024 | | 05/22/2025 | 08/21/2026 | 5134 | 1500 | 1500 | 0 | 5085 | 5085 | 5410 |
| 61530 | 122727 | TS-13 | B3 | N/A | 1307 | Occupied | Smiley, Norman | 10/26/2021 | | 04/28/2024 | 07/27/2025 | 5226 | 1500 | 1500 | 35 | 5025 | 5025 | 5484 |
| 61822 | 123089 | 0504 | B4 | N/A | 1328 | Occupied | Schipma, Scott | 02/25/2023 | | 05/25/2025 | 08/24/2026 | 5230 | 1500 | 1500 | 0 | 5284 | 5284 | 5484 |

ZRS Management, LLC - 101 Via Mizner
**RENT ROLL DETAIL**
05/30/2025 10:56 AM
As of Date: 05/31/2025

Parameters: Properties: - all subproperties; Show All Unit Designations or Filter by: ALL; Subjournals: ALL; Sort by: Floorplan; Report Type: Details + Summary; Exclude Formers?: Yes; Show Unit Rent as: Market + Addl.

| Resh ID | Lease ID | Unit | Floorplan | Unit Designation | SQFT | Unit/Lease Status | Name | Move-In | Move-Out | Lease Start | Lease End | Required Addl. | Required Deposit | Dep On Hand | Balance | Lease Rent | RENT | Total Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51277 | 128897 | 0501 | B5 | N/A | 1341 | Occupied | Segal, Tatiana | 03/01/2021 | | 09/01/2024 | 11/30/2025 | 5914 | 750 | 750 | 0 | 5914 | 5914 | 6140 |
| 51454 | 123004 | 0503 | B5 | N/A | 1341 | Occupied | Allen, Carolyn | 08/13/2021 | | 02/13/2025 | 05/12/2026 | 6580 | 1500 | 1500 | -6768.29 | 6517 | 6517 | 6717 |
| 72105 | 128893 | 0601 | B5 | N/A | 1341 | Occupied | Rosen, Evan | 10/09/2024 | | 10/09/2024 | 01/08/2026 | 5171 | 1500 | 1500 | 0 | 5171 | 5171 | 5371 |
| 51205 | 122904 | 0603 | B5 | N/A | 1341 | Occupied | Suger Castillo, Jose | 11/15/2020 | | 11/16/2024 | 02/15/2026 | 6158 | | 4567 | -245 | 6099 | 6099 | 6699 |
| 61900 | 122974 | 0701 | B5 | N/A | 1341 | Occupied | Levine, Richard | 06/29/2023 | | 09/29/2024 | 12/28/2025 | 5876 | 1500 | 1500 | 0 | 5820 | 5820 | 6045 |
| 0 | 0 | 0703 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6235 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 0801 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6200 | | | 0 | 0 | 0 | 0 |
| 72138 | 122943 | 0803 | B5 | N/A | 1341 | Occupied | Weill, Steven | 10/31/2024 | | 10/31/2024 | 01/30/2026 | 5991 | 1500 | 1500 | 65 | 5991 | 5991 | 6191 |
| 0 | 0 | 0901 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6011 | | | 0 | 0 | 0 | 0 |
| 72195 | 123064 | 0903 | B5 | N/A | 1341 | Occupied | Leistner, Barry | 03/07/2025 | | 03/07/2025 | 06/06/2026 | 6100 | 1500 | 1500 | 0 | 6100 | 6100 | 6225 |
| 0 | 0 | 01001 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6088 | | | 0 | 0 | 0 | 0 |
| 61823 | 123022 | 01003 | B5 | N/A | 1341 | Occupied | Benjamin, Sharon | 03/10/2023 | | 03/10/2025 | 04/09/2026 | 8897 | 1500 | 1500 | -9414.84 | 9164 | 9164 | 9364 |
| 0 | 0 | 01101 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6144 | | | 0 | 0 | 0 | 0 |
| 61618 | 122823 | 01103 | B5 | N/A | 1341 | Occupied | Gerber, Harold | 04/22/2022 | | 07/22/2024 | 10/21/2025 | 6235 | 1500 | 1500 | 35 | 6235 | 6235 | 6430 |
| 72168 | 123019 | 01201 | B5 | N/A | 1341 | Occupied | Applebaum, Jeffrey | 01/28/2025 | | 01/28/2025 | 04/27/2026 | 6222 | 1500 | 1500 | 0 | 6222 | 6222 | 6572 |
| 0 | 0 | 01203 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6312 | | | 0 | 0 | 0 | 0 |
| 61770 | 123101 | PH-01 | B5 | N/A | 1341 | Occupied | Zeig, Steven | 10/20/2022 | | 04/20/2025 | 04/19/2026 | 6542 | 1500 | 1500 | 0 | 6479 | 6479 | 7004 |
| 61879 | 82441 | PH-03 | B5 | N/A | 1341 | Occupied | Feeney, Francis | 06/30/2023 | | 06/30/2023 | 06/29/2024 | 6637 | 1500 | 1500 | 0 | 6637 | 6637 | 7197 |
| 71967 | 123052 | TS-01 | B5 | N/A | 1341 | Occupied | Luciano, Maria | 11/29/2023 | | 03/01/2025 | 05/31/2026 | 6352 | 1500 | 1500 | 0 | 6291 | 6291 | 6991 |
| 0 | 0 | TS-03 | B5 | N/A | 1341 | Vacant | VACANT | | | | | 6445 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 0518 | B6 | N/A | 1341 | Vacant | VACANT | | | | | 6580 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 0618 | B6 | N/A | 1341 | Vacant | VACANT | | | | | 6158 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 0718 | B6 | N/A | 1341 | Vacant | VACANT | | | | | 6235 | | | 0 | 0 | 0 | 0 |
| 61798 | 123077 | 0818 | B6 | N/A | 1341 | Occupied | Mashkovich, Edward | 02/28/2023 | | 02/28/2025 | 02/27/2026 | 6291 | 1500 | 1500 | -45.31 | 6230 | 6230 | 6680 |
| 0 | 0 | 0918 | B6 | N/A | 1341 | Vacant | VACANT | | | | | 6100 | | | 0 | 0 | 0 | 0 |
| 72158 | 122985 | 01018 | B6 | N/A | 1341 | Occupied | Ernst, Derek | 11/29/2024 | | 11/29/2024 | 02/28/2026 | 6177 | 1500 | 1500 | 0 | 6177 | 6177 | 6627 |
| 24 | 122939 | 01118 | B6 | N/A | 1341 | Occupied | Smerilson, Marc | 10/20/2016 | | 10/01/2024 | 12/31/2025 | 6235 | 750 | 750 | 0 | 6175 | 6175 | 6620 |
| 72213 | 123110 | 01218 | B6 | N/A | 1341 | Occupied | Demarlino, Karen | 04/25/2025 | | 04/25/2025 | 07/24/2026 | 6312 | 1500 | 1500 | 47.81 | 6312 | 6312 | 6512 |
| 72100 | 122877 | PH-18 | B6 | N/A | 1341 | Occupied | Bond, Baron | 10/19/2024 | | 10/19/2024 | 01/18/2026 | 6637 | 1500 | 1500 | -7035.02 | 6637 | 6637 | 6457 |
| 51119 | 122998 | TS-18 | B6 | N/A | 1341 | Occupied | Gordon, Carl | 07/31/2020 | | 01/31/2025 | 04/30/2026 | 6445 | 750 | 750 | 0 | 6383 | 6383 | 6508 |
| 0 | 0 | 0617 | B7 | N/A | 1400 | Vacant | VACANT | | | | | 6098 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 0617 | B7 | N/A | 1400 | Vacant | VACANT | | | | | 4833 | | | 0 | 0 | 0 | 0 |
| 72118 | 122916 | 0717 | B7 | N/A | 1400 | Occupied | Chosnek, Jeremy | 10/26/2024 | | 10/26/2024 | 01/25/2026 | 4909 | 1500 | 1500 | 0 | 4909 | 4909 | 5234 |
| 71997 | 123032 | 0817 | B7 | N/A | 1400 | Occupied | Bramley, Jennifer | 12/19/2023 | | 01/19/2025 | 08/18/2025 | 4989 | 1500 | 1500 | 0 | 5037 | 5037 | 5337 |
| 51406 | 123072 | 0917 | B7 | N/A | 1400 | Occupied | Lansky, Barbara | 07/07/2021 | | 04/07/2025 | 07/06/2026 | 5066 | 750 | 750 | 0 | 5017 | 5017 | 5217 |
| 61871 | 122912 | 01017 | B7 | N/A | 1400 | Occupied | Larrason, Lisa | 06/27/2023 | | 09/27/2024 | 12/26/2025 | 5144 | 1500 | 1500 | -5390.29 | 5094 | 5094 | 5339 |
| 72169 | 123021 | 01117 | B7 | N/A | 1400 | Occupied | Gruenberg, Ronald | 01/10/2025 | | 01/10/2025 | 04/09/2026 | 5202 | 1500 | 1500 | 0 | 5202 | 5202 | 5527 |
| 61721 | 123011 | 01217 | B7 | N/A | 1400 | Occupied | Roy, Donna | 09/10/2022 | | 03/10/2025 | 05/09/2026 | 5279 | 1500 | 1500 | 0 | 5228 | 5228 | 5468 |
| 50645 | 123126 | PH-17 | B7 | N/A | 1400 | Occupied | Wasserson, James | 11/01/2018 | | 05/25/2025 | 05/24/2026 | 5869 | 750 | 750 | -5496.33 | 5155 | 5155 | 5430 |
| 72082 | 122846 | TS-17 | B7 | N/A | 1400 | Occupied | Siegal, Jeffrey | 07/31/2024 | | 07/31/2024 | 10/30/2025 | 5474 | 5474 | 5474 | 0 | 5474 | 5474 | 5784 |
| 61629 | 122926 | 0541 | B8 | N/A | 1187 | Occupied | Rosen, Lee | 03/18/2022 | | 10/18/2024 | 10/17/2025 | 3920 | 1500 | 1500 | 40 | 4077 | 4077 | 4347 |
| 61517 | 122869 | 0641 | B8 | N/A | 1187 | Occupied | Zimmel, Lisa | 09/15/2021 | | 09/15/2024 | 12/14/2025 | 3872 | 1500 | 1500 | 0 | 3872 | 3872 | 4067 |
| 51246 | 122849 | 0741 | B8 | N/A | 1187 | Occupied | Fredricks, Steven | 02/01/2021 | | 08/01/2024 | 10/31/2025 | 4006 | 500 | 500 | 40 | 4006 | 4006 | 4201 |
| 0 | 0 | 0841 | B8 | N/A | 1187 | Vacant | VACANT | | | | | 4103 | | | 0 | 0 | 0 | 0 |
| 40358 | 122952 | 0941 | B8 | N/A | 1187 | Occupied | Damico, Larry | 10/14/2017 | | 11/05/2024 | 11/04/2025 | 4167 | 750 | 750 | 40 | 4127 | 4127 | 4327 |
| 0 | 0 | 01041 | B8 | N/A | 1187 | Vacant | VACANT | | | | | 4227 | | | 0 | 0 | 0 | 0 |
| 71947 | 122997 | 01141 | B8 | N/A | 1187 | Occupied | Brovda, Jonathan | 09/29/2023 | | 12/29/2024 | 12/29/2025 | 4289 | 1500 | 1500 | 0 | 4246 | 4246 | 4573 |
| 0 | 0 | 01241 | B8 | N/A | 1187 | Vacant | VACANT | | | | | 4365 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | TS-41 | B8 | N/A | 1187 | Vacant | VACANT | | | | | 4364 | | | 0 | 0 | 0 | 0 |
| 72025 | 123070 | 0611 | B9 | N/A | 1292 | Occupied | Freedman, Jill | 02/09/2024 | | 05/09/2025 | 08/08/2026 | 5106 | 1500 | 1500 | 0 | 5057 | 5057 | 5332 |
| 49 | 122882 | 0711 | B9 | N/A | 1292 | Occupied | Samuels, Barry | 09/12/2016 | | 10/07/2024 | 01/06/2026 | 4908 | 750 | 750 | 0 | 4861 | 4861 | 5056 |
| 61797 | 123060 | 0811 | B9 | N/A | 1292 | Occupied | Feigelman, Korissa | 12/20/2022 | | 03/20/2025 | 03/19/2026 | 4981 | 1500 | 1500 | 40 | 4933 | 4933 | 5258 |
| 72106 | 122894 | 0911 | B9 | N/A | 1292 | Occupied | Levine, Caroline | 11/26/2024 | | 11/26/2024 | 02/25/2026 | 5053 | 1500 | 1500 | -0.73 | 5053 | 5053 | 5253 |
| 72217 | 123118 | 01011 | B9 | N/A | 1292 | Occupied | Parsons, Jodi | 05/29/2025 | | 05/29/2025 | 08/28/2026 | 5124 | 1500 | 1500 | 0 | 5124 | 5124 | 5324 |
| 71948 | 122996 | 01111 | B9 | N/A | 1292 | Occupied | Zafiros, Jason | 09/29/2023 | | 12/29/2024 | 12/28/2025 | 5197 | 1500 | 1500 | 0 | 4385 | 4385 | 4585 |
| 61923 | 122925 | 01211 | B9 | N/A | 1292 | Occupied | Berichi, Charles | 07/21/2023 | | 10/21/2024 | 01/20/2026 | 5268 | 1500 | 1500 | 0 | 5217 | 5217 | 5412 |
| 72083 | 122841 | PH-11 | B9 | N/A | 1292 | Occupied | DeFrank, AnnaMarie | 07/18/2024 | | 07/18/2024 | 10/17/2025 | 5394 | 1500 | 1500 | 0 | 5394 | 5394 | 5588 |
| 72211 | 123104 | TS-11 | B9 | N/A | 1292 | Occupied | Finnerty, Eoin | 05/15/2025 | | 05/15/2025 | 08/14/2026 | 5339 | 1500 | 1500 | 0 | 5339 | 5339 | 5614 |
| 61921 | 122924 | 01221 | C1 | N/A | 1645 | Occupied | Robbins, Marion | 08/29/2023 | | 11/29/2024 | 02/28/2026 | 7796 | 2000 | 2000 | 40 | 7691 | 7691 | 8091 |
| 72111 | 122903 | PH-21 | C1 | N/A | 1645 | Occupied | Plutzer, Richard | 09/11/2024 | | 09/11/2024 | 12/10/2025 | 8424 | 2000 | 2000 | 127.38 | 8424 | 8424 | 8704 |
| 72141 | 122950 | TS-21 | C1 | N/A | 1645 | Occupied | Mele, Tatyana | 12/09/2024 | | 12/09/2024 | 03/08/2026 | 8119 | 2000 | 2000 | 0 | 8119 | 8119 | 8319 |
| 71994 | 102867 | 0521 | C2 | N/A | 1517 | Occupied | Sardi, Sandra | 01/14/2024 | | 01/14/2024 | 04/13/2025 | 7769 | 2000 | 2000 | 0 | 7179 | 7179 | 8169 |
| 51264 | 122910 | 0621 | C2 | N/A | 1517 | Occupied | Omati, Patrica | 02/13/2021 | | 09/13/2024 | 09/12/2025 | 7165 | 1500 | 1500 | -135 | 7165 | 7165 | 7585 |
| 72046 | 122763 | 0721 | C2 | N/A | 1517 | Occupied | Keezer Greenberg, Ellen | 05/08/2024 | | 05/08/2024 | 08/07/2025 | 7233 | 2000 | 2000 | -7477.02 | 6955 | 6955 | 7400 |
| 61937 | 122825 | 0821 | C2 | N/A | 1517 | Occupied | Melnick, Scott | 08/25/2023 | | 08/25/2024 | 08/24/2025 | 7322 | 7040 | 7040 | 0 | 7322 | 7322 | 7922 |
| 72174 | 123028 | 0921 | C2 | N/A | 1517 | Occupied | Cartledge, John | 01/31/2025 | | 01/31/2025 | 04/30/2026 | 7249 | 2000 | 2000 | -7625.29 | 7249 | 7249 | 7574 |
| 61935 | 122967 | 01021 | C2 | N/A | 1517 | Occupied | Weinstein, Alan | 10/03/2023 | | 01/03/2025 | 04/02/2026 | 7312 | 2000 | 2000 | 0 | 7242 | 7242 | 7528 |
| 51391 | 123100 | 01121 | C2 | N/A | 1517 | Occupied | Sternkler, Sarah | 09/01/2021 | | 04/01/2025 | 06/30/2026 | 7400 | 1000 | 1000 | 40 | 7328 | 7328 | 7528 |
| 72119 | 122917 | 0527 | C3 | N/A | 1517 | Occupied | Price, Ethan | 09/17/2024 | | 09/17/2024 | 12/16/2025 | 6243 | 2000 | 2000 | 0 | 6243 | 6243 | 6668 |
| 51081 | 122895 | 0627 | C3 | N/A | 1517 | Occupied | Abbott, Bianca | 06/01/2020 | | 09/01/2024 | 08/31/2025 | 6155 | | | 0 | 6155 | 6155 | 120 |
| 0 | 0 | 0727 | C3 | N/A | 1517 | Vacant | VACANT | | | | | 6243 | | | 0 | 0 | 0 | 0 |
| 72247 | 123164 | 0727 | C3 | N/A | 1517 | Applicant | PANTAZI, MARIA | 06/30/2025 | | 06/30/2025 | 06/29/2026 | 0 | | | 0 | 6243 | 6243 | 6243 |
| 72059 | 122789 | 0827 | C3 | N/A | 1517 | Occupied | Bloomberg, Donna | 05/29/2024 | | 05/29/2024 | 08/28/2025 | 6306 | 2000 | 2000 | 0 | 6306 | 6306 | 6576 |
| 20118 | 123083 | 0927 | C3 | N/A | 1517 | Occupied | Natanzon, Rony | 04/14/2025 | | 04/14/2025 | 07/13/2026 | 6373 | 2000 | 2000 | 164.79 | 6373 | 6373 | 6498 |
| 0 | 0 | 01027 | C3 | N/A | 1517 | Vacant | VACANT | | | | | 6457 | | | 0 | 0 | 0 | 0 |
| 0 | 0 | 01136 | C4 | N/A | 1623 | Vacant | VACANT | | | | | 6376 | | | 0 | 0 | 0 | 0 |
| 71941 | 122892 | 0536 | C5 | N/A | 1481 | Occupied | Sakharuk, Tetiana | 09/02/2023 | | 09/02/2024 | 09/01/2025 | 5750 | 5629 | 5629 | 0 | 5695 | 5695 | 5890 |
| 72172 | 123026 | 0636 | C5 | N/A | 1481 | Occupied | Schnitzer, Mark | 01/07/2025 | | 01/07/2025 | 04/06/2026 | 5454 | 2000 | 2000 | 0 | 5454 | 5454 | 5654 |
| 61861 | 122855 | 0736 | C5 | N/A | 1481 | Occupied | Freiberg, Craig | 06/23/2023 | | 09/23/2024 | 12/22/2025 | 5684 | 2000 | 2000 | -6067.02 | 5629 | 5629 | 5989 |
| 72078 | 122876 | 0836 | C5 | N/A | 1481 | Occupied | Sigel Israel, Traci | 08/30/2024 | | 08/30/2024 | 11/29/2025 | 5866 | 2000 | 2000 | 0 | 5866 | 5866 | 6116 |
| 0 | 0 | 0936 | C5 | N/A | 1481 | Vacant | VACANT | | | | | 5819 | | | 0 | 0 | 0 | 0 |
| 61820 | 122920 | 01036 | C5 | N/A | 1481 | Occupied | Assal, Ethan | 09/20/2024 | | 09/20/2024 | 12/19/2025 | 5878 | 1000 | 1000 | 0 | 5878 | 5878 | 345 |
| 72004 | 112862 | 0516 | C7 | N/A | 1735 | Occupied-NTV | Balfan, Mark | 01/26/2024 | 05/31/2024 | 01/26/2024 | 07/25/2025 | 7243 | 2000 | 2000 | 0 | 6964 | 6964 | 7599 |
| 0 | 0 | 01130 | C7 | N/A | 1966 | Vacant | VACANT | | | | | 7274 | | | 0 | 0 | 0 | 0 |
| 40398 | 102886 | 01230 | C7 | N/A | 2060 | Occupied | Prokhoy, Nehaui | 12/08/2023 | | 12/08/2023 | 12/31/2025 | 7470 | | | 35 | 7183 | 7183 | 7183 |
| 72072 | 122862 | 0613 | C8s | N/A | 2150 | Occupied | Pollok, David | 08/08/2024 | | 08/08/2024 | 11/07/2025 | 9614 | 3241 | 9614 | 0 | 9614 | 9614 | 10099 |
| 40583 | 122992 | 0608 | S1 | N/A | 628 | Occupied | Oktay, Berat | 09/29/2018 | | 01/06/2025 | 04/05/2026 | 2220 | 500 | 500 | -2434.25 | 2199 | 2199 | 2399 |
| 51318 | 122945 | 0708 | S1 | N/A | 628 | Occupied | McCloud, Lacey | 03/15/2021 | | 12/15/2024 | 03/14/2026 | 2287 | 500 | 500 | 0 | 2176 | 2176 | 2301 |
| 72201 | 123075 | 0808 | S1 | N/A | 628 | Occupied | Galante, Anthony | 04/08/2025 | | 03/22/2025 | 06/21/2026 | 2351 | 1000 | 1000 | 0 | 2351 | 2351 | 2551 |
| 72102 | 122885 | 0908 | S1 | N/A | 628 | Occupied | Juyled, Laura | 09/13/2024 | | 09/13/2024 | 12/12/2025 | 2346 | 2346 | 2346 | -1580 | 2346 | 2346 | 2546 |
| 61527 | 122994 | 01008 | S1 | N/A | 628 | Occupied | McInerney, Matthew | 09/15/2021 | | 12/15/2024 | 03/14/2026 | 2397 | 1000 | 1000 | -2609.25 | 2374 | 2374 | 2571 |
| 0 | 0 | 01108 | S1 | N/A | 628 | Vacant | VACANT | | | | | 2468 | | | 0 | 0 | 0 | 0 |
| 72063 | 122920 | 01208 | S1 | N/A | 628 | Occupied | Freedman, Stephen | 06/10/2024 | | 06/10/2024 | 09/09/2025 | 2464 | | | 0 | 2464 | 2464 | 2659 |
| 0 | 0 | PH-08 | S1 | N/A | 628 | Vacant | VACANT | | | | | 2591 | | | 0 | 0 | 0 | 0 |
| 61800 | 122746 | TS-08 | S1 | N/A | 628 | Occupied | Robbins, Richard | 12/17/2022 | | 03/17/2026 | 06/16/2025 | 2550 | 1000 | 1000 | 0.11 | 2452 | 2452 | 2572 |
| 51199 | 123068 | 0614 | S2 | N/A | 638 | Occupied | Barsoom, Zina | 11/15/2020 | | 05/01/2025 | 07/31/2026 | 2294 | 500 | 500 | -2506.25 | 2272 | 2272 | 2472 |
| 72070 | 122812 | 0714 | S2 | N/A | 638 | Occupied | Metropulos, Nicholas | 07/14/2024 | | 07/14/2024 | 10/13/2025 | 2360 | 1000 | 1000 | 33.27 | 2360 | 2360 | 2555 |

**ZRS Management, LLC - 101 Via Mizner**

**RENT ROLL DETAIL**

**05/30/2025 10:56 AM**

**As of Date 05/31/2025**

Parameters: Properties: - all subproperties-; Show All Unit Designations or Filter by: ALL; Subjournals: ALL; Sort by: Floorplan; Report Type: Details + Summary; Exclude Formers?: Yes; Show Unit Rent as: Market + Addl.

| Resh ID | Lease ID | Unit | Floorplan | Unit Designation | SQFT | Unit/Lease Status | Name | Move-In | Move-Out | Lease Start | Lease End | Market + Addl. | Required Deposit | Dep On Hand | Balance | Lease Rent | RENT | Total Billing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 71940 | 122846 | 0814 | S2 | N/A | 638 | Occupied | Kronick, Gene | 09/01/2023 | | 09/01/2024 | 08/31/2025 | 2424 | 1000 | 1000 | -2529.25 | 2424 | 2424 | 2619 |
| 61534 | 122784 | 0914 | S2 | N/A | 638 | Occupied | Broder, Robin | 05/24/2024 | | 05/24/2024 | 08/23/2025 | 2493 | 1000 | 1000 | 0 | 2493 | 2493 | 2613 |
| 50775 | 122857 | 01014 | S2 | N/A | 638 | Occupied | McCarthy-Shearer, Joanne | 03/26/2019 | | 09/26/2024 | 12/25/2025 | 2558 | 500 | 500 | 0 | 2534 | 2534 | 2729 |
| 51301 | 122777 | 01114 | S2 | N/A | 638 | Occupied | Kichukova, Donna | 03/21/2021 | | 06/21/2024 | 06/20/2025 | 2622 | 500 | 500 | 0 | 2622 | 2622 | 2742 |
| 51301 | 123117 | 01114 | S2 | N/A | 638 | Pending renewal | Kichukova, Donna | 03/21/2021 | | 06/21/2025 | 06/20/2026 | 0 | 500 | 0 | 0 | 2701 | 2701 | 2826 |
| 0 | 0 | 01214 | S2 | N/A | 638 | Vacant-Leased | VACANT | | | | | 2688 | 0 | 0 | 0 | 0 | 0 | 0 |
| 72237 | 123149 | 01214 | S2 | N/A | 638 | Applicant | Manaha, Zaneb | 05/31/2025 | | 05/31/2025 | 08/30/2026 | 0 | 1000 | 0 | 0 | 2688 | 2688 | 2888 |
| 50863 | 123122 | PH-14 | S2 | N/A | 638 | Occupied | Rowe, Hugh | 08/01/2019 | | 05/03/2025 | 08/02/2026 | 2622 | 500 | 500 | 0 | 2597 | 2597 | 2922 |
| 72205 | 123082 | TS-14 | S2 | N/A | 638 | Occupied | Gutman, Emily | 03/31/2025 | | 03/31/2025 | 06/29/2026 | 2591 | 1000 | 1000 | 0 | 2591 | 2591 | 2716 |
| **Totals:** | | | | | | | | | | | | **1615628** | **460740** | **450123** | **-266160.03** | **1326585** | **1322444** | **1336712** |

Note: This section consists of records for occupied and vacant units only. Vacant unit's charges, credits and totals are not part of detail totals.

**EXHIBIT E**

**FORM OF DEED**

**RECORDING    REQUESTED BY:**

_____
_____
_____

**WHEN RECORDED MAIL THIS INSTRUMENT TO:**

_____
_____
_____

Parcel Identification Numbers:

**SPACE ABOVE THIS LINE FOR RECORDER'S USE**

**SPECIAL WARRANTY DEED**

**THIS SPECIAL WARRANTY DEED** is made and entered into as of the \_\_\_ day of _____, 202\_\_ by [_____], a [_____] (the "Grantor"), whose mailing address is _____, to [_____], a [_____] (the "Grantee"), whose post office address is _____. Wherever used herein, the terms "Grantor" and "Grantee" shall include all of the parties to this instrument and their successors and assigns.

**W I T N E S S E T H:**

**GRANTOR**, for and in consideration of Ten and No/100 Dollars ($10.00) and other good and valuable consideration paid by Grantee, the receipt and sufficiency of which is hereby acknowledged, has granted, bargained and sold, and by these presents does grant, bargain and sell, to Grantee, and Grantee's heirs, successors and assigns forever, the following property located in

_____ County, Florida (the "Property"), to-wit:

All of that certain land (the "Land") situated in _____ County, Florida more particularly described on Exhibit "A" attached hereto and incorporated herein by reference; and

All right, title and interest of Grantor in and to the improvements of any nature whatsoever situated on the Land.

**TOGETHER** with all right, title and interest of Grantor in and to rights, privileges, tenements, hereditaments, rights-of-ways, easements, appendages, appurtenances, reversions, remainders, and riparian or littoral rights belonging or in any wise appertaining to the Land or any improvements thereon and all right, title and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the Land.

**TO HAVE AND TO HOLD** unto Grantee and Grantee's successors and assigns in fee simple forever.

**GRANTOR** hereby covenants with Grantee that Grantor is lawfully seized of the Property in fee simple, that Grantor has good right and lawful authority to sell and convey the Property, that Grantor hereby fully warrants the title to the Property and will forever defend the same against the lawful claims of all persons claiming by, through or under the said Grantor, but none other, subject, however, to the matters set forth on Exhibit "B" attached hereto and incorporated herein by reference, without hereby re-imposing same (the "Permitted Exceptions").[1]

[SIGNATURE ON FOLLOWING PAGE]

---

[1] Only to reference actual recorded items of record and 2025 taxes not yet due and payable.

**[SIGNATURE PAGE TO SPECIAL WARRANTY DEED]**

      **IN WITNESS WHEREOF**, Grantor has signed and sealed these presents the day and year first above written.

*Signed, sealed and delivered in the presence of:*

**GRANTOR**:

_____, a _____

_____
Print Name: _____

By:   _____
      Name: _____
      Title: _____

_____
Print Name: _____

STATE OF _____ )
                                ) SS:
COUNTY OF _____)

      This foregoing instrument was Acknowledged before me, by means of ☐ physical presence or ☐ online notarization, on this \_\_\_ day of _____, 202\_\_, by _____, the _____, of _____, a _____, on behalf of the company, who is personally known to me or who has produced _____ as identification.

_____
Notary Public
Print Name: _____
My commission expires: _____

{AFFIX NOTARY SEAL}

**Exhibits to Special Warranty Deed**

Exhibit "A":   Legal Description of Land

Exhibit "B":   Permitted Exceptions

## EXHIBIT F

## ASSIGNMENT OF LEASES, SECURITY DEPOSITS AND CONTRACTS AND BILL OF SALE

This instrument is executed and delivered as of the _____ day of _____, 2025 pursuant to that certain Purchase and Sale Agreement ("Agreement") dated _____, 2025, by and between VIA MIZNER OWNER I, LLC, a Florida limited liability company ("Seller"), and _____, a _____ limited liability company ("Purchaser"), covering the real property described in Exhibit A attached hereto ("Real Property").

1.      Sale of Personalty.  For good and valuable consideration, Seller hereby sells, transfers, sets over and conveys to Purchaser the following (collectively, the "Property"):

(a)      Tangible Personalty.  All of Seller's right, title and interest, if any, in and to all Personal Property (as defined in the Agreement) except any such personal property belonging to tenants under the Residential Leases, Retail Leases or the management agent, if any; and

(b)      Intangible Personalty.  All the right, title and interest of Seller in and to the Intangible Property (as defined in the Agreement) including, without limitation, (i) all assignable warranties, guaranties, licenses, permits, entitlements, governmental approvals and certificates of occupancy which benefit the Real Property and/or the Personal Property, (ii) all right, title and interest of Seller in and to the name "Midtown Apartments" (iii) any URL or website domain name for the Property as set forth in the Agreement; and (iv) any Facebook, Instagram, Twitter, or other similar social media accounts pertaining to the Property.

2.      Assignment of Residential Leases, Retail Leases, and Contracts.  For good and valuable consideration, Seller hereby assigns, transfers, sets over and conveys to Purchaser, and Purchaser hereby accepts the following (the "Assigned Property"):

(a)      Residential Leases.  All of the landlord's right, title and interest in and to the tenant leases listed in Exhibit B-1 attached hereto, together with any and all guarantees made in connection therewith ("Residential Leases");

(b)      Retail Leases.  All of the landlord's right, title and interest in and to the tenant leases listed in Exhibit B-2 attached hereto, together with any and all guarantees made in connection therewith ("Retail Leases");

(c)      Security Deposits.  All of Seller's right, title and interest in and to those security deposits actually held by Seller pursuant to the Residential Leases and Retail Leases and listed in Exhibit B attached hereto (the "Security Deposits").

(d)      Service Contracts and Commission Agreements.  Seller's right, title and interest in and to the service contracts and commission agreements described in Exhibit C attached hereto (the "Contracts").

3.    <u>Assumption</u>.  Purchaser hereby accepts and assumes the liability and obligations of Seller under and with respect to the Assigned Property to the extent arising from events first occurring from and after the date of Closing (as defined in the Agreement).

4.    <u>Agreement Applies</u>.  The covenants, agreements, disclaimers, representations, warranties, indemnities and limitations provided in the Agreement with respect to the Property described above (including, without limitation, the limitations of liability provided in the Agreement), are hereby incorporated herein by this reference as if herein set out in full and shall inure to the benefit of and shall be binding upon Purchaser and Seller and their respective successors and assigns.

5.    <u>Seller's Indemnification</u>.  Seller hereby indemnifies, protects, defends and holds Purchaser, Purchaser's shareholders, members, partners, directors, officers, employees, affiliates and their respective shareholders, members, partners, directors, officers, employees and affiliates, together with their respective successors, and assigns, harmless from any and all claims, damages, losses, suits, proceedings, costs and expenses, including, without limitation, reasonable attorneys' fees (collectively, "<u>Losses</u>"), arising out of, by virtue of or in any way related to the breach by Seller of (or Seller's failure to timely perform) any or all of the obligations imposed on Seller under the Residential Leases, Retail Leases and the Contracts or with respect to the Security Deposits, which obligations accrue prior to the date of the Closing.

6.    <u>Purchaser's Indemnification</u>.  Purchaser hereby indemnifies, protects, defends and holds Seller, Seller's shareholders, members, partners, directors, officers, employees, affiliates and their respective shareholders, members, partners, directors, officers, employees, and affiliates, together with their respective successors, and assigns, harmless from any and all Losses, arising out of, by virtue of or in any way related to the breach by Purchaser of (or Purchaser's failure to timely perform) any or all of the obligations imposed on Purchaser under the Residential Leases, Retail Leases and the Contracts or with respect to the Security Deposits, which obligations accrue from and after the date of the Closing.

7.    <u>Disclaimer</u>.  As set forth in the Agreement, which provisions are hereby incorporated by this reference as if herein set out in full, the Property and Assigned Property are conveyed by Seller and accepted by Purchaser AS IS, WHERE IS, AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF WHATSOEVER NATURE, EXPRESS OR IMPLIED, IT BEING THE INTENTION OF SELLER AND PURCHASER EXPRESSLY TO NEGATE AND EXCLUDE ALL WARRANTIES, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTIES CREATED BY ANY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE REAL PROPERTY CONVEYED HEREUNDER, AND ALL OTHER REPRESENTATIONS AND WARRANTIES WHATSOEVER CONTAINED IN OR CREATED BY THE UNIFORM COMMERCIAL CODE OF THE STATE OR STATES WHERE THE REAL PROPERTY IS LOCATED.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of the date first written above.

**<u>SELLER</u>**

VIA MIZNER OWNER I, LLC, a Florida limited liability company

By:_____
Name: _____
Title: _____


**<u>PURCHASER</u>**

_____,
a _____ limited liability company


By:_____
Name: _____
Title: _____


By:_____
Name: _____
Title: _____

**EXHIBIT G**

**TENANT NOTICE LETTER**

**Re:     Notice to Tenant – Change of Ownership of 101 Via Mizner, Boca Raton, Florida**
        (the "Property")


Dear Tenant:

        We, the undersigned Seller, have sold the Property, of which your lease premises are a part, and have assigned your lease to the undersigned Purchaser.

        From and after the date of this notice, all rent payments should be made payable to the order of _____ and transmitted to: _____.

        _____ will be the new property manager of the Property after the transfer of ownership.  If you have any questions, please contact the new property manager.

        To the extent that the undersigned Seller held a security deposit provided by you on the date of the sale of the Property, such security deposit has been transferred to the undersigned Purchaser and is being held by Purchaser.

        As required by Florida Statues §83.49, we inform you that:

        YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.

        IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.

        YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.

THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

**EXHIBIT I**

**PROPERTY INFORMATION**

Current rent roll

Current Trailing 12 month financials

Previous three years of financial statements

Concession details

Tax bill

Rentable items list

Historical renewal history

Citibank lease

Building/Architectural plans

Demographic report

Title

Survey

Environmental Report (ESA Phase I)

Property Condition Report (PCA)

PZR Report (Zoning Compliance)

Insurance loss runs/claim history

Security Deposit Schedule

Elevator Certificates

Personal Property Inventory

101 Via Mizner Marketing Materials

**SCHEDULE 5.4.1**

**ASSUMED CONTRACTS**

Navitas Credit Corp (Fitness Equipment)

Platinum Group Security (Concierge)

Hotwire (Cable/Internet)

Elevator Service (Otis)

Life Safety Service (Advanced Fire & Security)

**SCHEDULE 6.3**

**RETAIL LEASES TO BE ASSUMED**

1.      Lease between Seller, as successor-in-interest to Camino Investments Holdings Limited Partnership, as Landlord, and Citibank, N.A., as Tenant, dated May 14, 2014.