UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

| | |
|---|---|
| Via Mizner Owner I, LLC, | Case No. 25-10369-EPK |
| | (Jointly Administered) |
| Via Mizner Pledgor I, LLC, | Case No. 25-10371-EPK |
| Debtors. | Chapter 11 |
| _____/ | |

### NOTICE OF FILING PROPOSED ORDER APPROVING SALE OF DEBTOR'S ASSETS

Via Mizner Owner, I, LLC (the "Debtor"), by and through undersigned counsel, hereby files the attached proposed Order Approving Sale of Debtor's Assets in conjunction with the *Expedited Motion to Approve Procedures for Free and Clear Sale of Substantially All Assets of Debtor Via Mizner Owner I* [ECF No. 103] (the "Procedures Motion") filed by the Debtor, the *Order Granting Expedited Motion to Approve Procedures for Free and Clear Sale of Substantially All Assets of Debtor Via Mizner Owner I* [ECF No. 108] (the "Procedures Order"), the *Amended Order Granting Emergency Agreed Motion to Modify Bid Procedures, Continue Sale Hearing, and Modify Milestones in Cash Collateral Order* [ECF No. 138] (the "Order Setting Hearing"), the *Expedited Motion for Order Approving (1) Second Amendment to Purchase and Sale Agreement; (2) Sale of Assets to Mizner 366 JV, LLC; and (3) Entry into Operating Agreement* [ECF No. 159] (the "Sale Motion") filed by the Debtor, the *Emergency Motion to Approve Stalking Horse Bidder and Bid Protections* [ECF No. 125] (the "Stalking Horse Motion"), and the *Order Granting Emergency Motion to Approve Stalking Horse Bidder and Bid Protections* [ECF No. 135] (the "Stalking Horse Order").

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive CM/ECF electronic notices in this case on July 10, 2025.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law

By: <u>*/s/ Bradley S. Shraiberg*</u>
     Bradley S. Shraiberg
     Florida Bar No. 121622

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

VIA MIZNER OWNER I, LLC,                                  Case No. 25-10369-EPK
(Jointly Administered)

    Debtors.                                                              Chapter 11
_____/

**PROPOSED ORDER APPROVING SALE OF DEBTOR'S ASSETS**

**THIS MATTER** came before the Court for hearing on July 10, 2025, upon the *Expedited Motion to Approve Procedures for Free and Clear Sale of Substantially All Assets of Debtor Via Mizner Owner I* [ECF No. 103] (the "Procedures Motion") filed by the Debtor, the *Order Granting Expedited Motion to Approve Procedures for Free and Clear Sale of Substantially All Assets of Debtor Via Mizner Owner I* [ECF No. 108] (the "Procedures Order"), the *Amended Order Granting Emergency Agreed Motion to Modify Bid Procedures, Continue Sale Hearing, and Modify Milestones in Cash Collateral Order* [ECF No. 138] (the "Order Setting Hearing"), the

{2488/000/00576965}

*Expedited Motion for Order Approving (1) Second Amendment to Purchase and Sale Agreement; (2) Sale of Assets to Mizner 366 JV, LLC; and (3) Entry into Operating Agreement* [ECF No. 159] (the "Sale Motion") filed by the Debtor, the *Emergency Motion to Approve Stalking Horse Bidder and Bid Protections* [ECF No. 125] (the "Stalking Horse Motion"), and the *Order Granting Emergency Motion to Approve Stalking Horse Bidder and Bid Protections* [ECF No. 135] (the "Stalking Horse Order").

For the reasons states on the record, and being otherwise fully advised in the premises, the it is FOUND AND DETERMINED:

A. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.[1]

B. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in the Motion are 11 U.S.C. §§ 363.

C. Due and adequate notice of the Procedures Motion and the Sale Motion and of the relief requested therein has been given in accordance with the provisions of 11 U.S.C. §§ 102(1) and 363, and Bankruptcy Rules 2002 and 6004. No other or further notice of the Procedures Motion or Sale Motion is or shall be required.

D. The Purchase Agreement (the "PSA") between the Debtor and Cardone Real Estate Acquisitions, LLC (the "Cardone"), a copy of which is attached to the Stalking Horse Motion as Exhibit A, as amended by the First Amendment (filed at ECF No. 133) and Second Amendment

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

2

(attached to the Sale Motion as Exhibit 1) is valid and enforceable, and was the result of arm's-length, good faith negotiation between the Debtor and Cardone. Cardone intends to assign its rights under the PSA to Mizner 366, LLC (the "Purchaser"), a wholly owned subsidiary of Mizner 366 JV, LLC ("Mizner 366 JV"). Such assignment is the result of arm's-length, good faith negotiation between the Debtor, Cardone, and the Purchaser.

E. The Operating Agreement for Mizner 366 JV, a copy of which is attached to the Sale Motion as Exhibit 2, is valid and enforceable, and was the result of arm's-length, good faith negotiation between the Debtor, Cardone, Purchaser, and Mizner 366 JV. The PSA, Operating Agreement, and all other documents contemplated thereby shall be referred to herein as the "Sale Documents."

F. The sale and transactions contemplated by the PSA and Operating Agreement are undertaken by Cardone, the Purchaser, and Mizner 366 JV in good faith, as that term is used in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale and transactions shall not affect the validity of the sale of the Property[2] to the Purchaser or its assigns, unless such authorization is duly stayed pending such appeal. The Purchaser is a purchaser in good faith of the Property and is entitled to all of the protections afforded by 11 U.S.C. § 363(m).

G. The Purchaser entered into the proposed sale without collusion, in good faith, and from an arm's length bargaining position, and has not violated 11 U.S.C. § 363(n) by any action or inaction, and the PSA does not violate the provisions of 11 U.S.C. § 363(n). The Debtor and the Purchaser have not engaged in any conduct that would cause or permit the PSA to be avoided

---

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the PSA, the Sale Motion, or the Operating Agreement, as applicable.

3

under 11 U.S.C. § 363(n).

H.  The Debtor has, to the extent necessary or applicable, (a) the full corporate power and authority to execute and deliver the Sale Documents and all other documents contemplated thereby; (b) all corporate authority necessary to consummate the transaction contemplated by the Sale Documents; and (c) taken all corporate action necessary to authorize and approve the Sale Documents and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Sale Documents, are required for the Debtor to consummate the Sale, the Sale Documents, or the transactions contemplated thereby.

I.  Pursuant to the *Emergency Motion to Approve Assumption and Assignment Procedures* [ECF No. 145] (the "Assumption Procedures Motion") and the *Order Granting Emergency Motion to Approve Assumption and Assignment Procedures* [ECF No. 149] (the "Assumption Procedures Order"), the Debtor has sought to assume and assign certain executory contracts and unexpired leases.[3]

J.  The Purchaser is neither a successor nor a continuation of the Debtor.

K.  The Purchaser is unrelated to the Debtor, including the Debtor's past and present principals and owners.

L.  There is a sound business justification for the sale and transactions described in the Sale Documents.

M.  The disclosures made by the Debtors concerning the Sale Motion, the Sale Documents, the Sale, and the assumption and assignment of the Assumed Contracts to Purchaser were good, complete, and adequate.

---

[3] As used herein, the terms Counterparty, Cure Costs, Assumed Contracts, Residential Leases, and Retail Lease shall have the meaning ascribed to them in the Assumption Procedures Motion.

N.  The Purchase Price is fair and reasonable.

O.  No holder of any liens, claims, interests, or encumbrances on the Property objected to the Motion, and therefore, all holders of liens, claims, interests, or encumbrances on the Property consented to the sale of the Property free and clear of all interests, liens, claims, and encumbrances under 11 U.S.C. § 363(f)(2).

P.  The aggregate value of the Property is no greater than the Purchase Price, and therefore, pursuant to 11 U.S.C. § 506(a)(1), the aggregate value of all interests, liens, claims, and encumbrances on the Property is less than the Purchase Price.

Accordingly, for the foregoing reasons, and being otherwise fully advised in the premises, it is **ORDERED** and **ADJUDGED** that:

1.  The Sale Motion [ECF No. 159] is **GRANTED**.

2.  The Debtor is authorized to enter into the Second Amendment.

3.  The Debtor is authorized to enter into the Operating Agreement.

4.  The Sale Documents are valid and enforceable and are approved—together with the transactions contemplated therein—in their entirety, and the Debtor, Cardone, the Purchaser, and Mizner 366 JV are authorized to close on the PSA and undertake all necessary actions and transactions to do so (the closing of the PSA being the "Closing"). For the avoidance of doubt, all persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtor to transfer the Property to the Purchaser in accordance with the Sale Documents.

5.  The Sale Documents and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court.

6.       Except as set forth in the PSA, the sale of the Debtor's Property, as defined in the PSA is approved on an as-is where-is basis, free and clear of any and all interests, claims, liens, and encumbrances thereon pursuant to 11 U.S.C. §§ 105(a), 363(b), 363(f), 365(b), and 365(f), including without limitation, mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, and other liens (including mechanics', materialman's, and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including, for the avoidance of doubt, any of the foregoing asserted by Via Mizner Lender 1 LLC, Via Mizner Lender 2, LLC, and TIG Romspen US Master Mortgage LP ("Romspen").[4]

---

[4] Pursuant to the PSA, the Purchaser has agreed to assume the obligations under that certain promissory note(s) secured by that certain Amended and Restated Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement from Via Mizner Owner I, LLC, a Delaware limited liability company, successor by conversion from Via Mizner Owner I, LLC, a Florida limited liability company, as to Parcel 1 (Phase 1, Apartment Parcel) to Parlex 3 Finance LLC, a Delaware limited liability company, dated September 30, 2021, filed of record October 5, 2021, in Official Records Book 32929, Page 0658, Public Records of PALM BEACH County, Florida, in the original principal amount of $195,000,000.00, as assigned to Parlex 15 Finco, LLC - Series XIII by assignment recorded February 17, 2022 in Official Records Book 33321, Page 1417, as assigned to Parlex 15 Finco - Series XIII, a series of Parlex 15 Finco, LLC, a Delaware limited liability company, in its capacity as administrative agent, by assignment recorded November 27, 2022 in Official Records Book 34685, Page 1259, Public Records of Palm Beach County, Florida (the "Assumed Mortgage"). As such, the Property would be transferred subject to the Assumed Mortgage.

7. All claims, liens, interests, and encumbrances on the Property sold pursuant to the PSA shall attach to the cash proceeds of the sale with the same priority, validity, and effect as they now have in and on such assets, subject to the rights, claims, defenses, and objections of the Debtor, its estate, and all interested parties.

8. The sale of the Property shall be free and clear of any claims of derivative, vicarious, or successor liability of any kind, nature, or character whatsoever, by reason of any theory of law or equity. Cardone, the Purchaser, and Mizner 366 JV, as the result of any action taken in connection with the purchase of the Property, shall not be deemed to (a) be the successor of the Debtor; (b) have, *de facto* otherwise, merged with or into the Debtor; (c) be a mere continuation or a substantial continuation of the Debtor or for payment of any benefit(s) accruing to the Debtor; (d) be a successor in interest to the Debtor under any theory of successor liability for employee-related claims against the Debtor and/or its principal brought under the Fair Labor Standards Act; or (e) be a successor of or to the Debtor for any other type of claims, interests or causes of action against the Debtor or the Property of any kind whatsoever.

9. If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing interests in the Property shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests which the person or entity has with respect to the Property, then (a) the Debtor is authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Property, and (b) the Purchaser is authorized to file, register, or otherwise record a certified copy of this Order which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all interests in the Property of any

kind or nature whatsoever (except with respect to the Residential Leases and Retail Lease as set forth in the PSA).

10. This Order shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of federal, state, county, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Property free and clear of all interests or claims, or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and specifically directed to strike recorded encumbrances, claims, liens, and other interests against the Property recorded prior to the date of this Order (except with respect to the Residential Leases and Retail Lease Assumed Leases as set forth in the PSA). Further, all Recording Officers are hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the PSA and related agreements.

11. Subject to the Debtor's satisfaction of its obligations under this Order (including paragraph 14 hereof) and solely to the extent set forth herein, any interest holders that did not object, or that withdrew their objections, to the Procedures Motion, Sale Motion, Stalking Horse Motion, or the PSA, are deemed to have consented to the sale of the Property free and clear of their respective interests on the Property pursuant to section 363(f)(2) of the Bankruptcy Code.

12. Prior to the Closing of the sale of the Property, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be necessary to release

effective as of the Closing its interests in the Property, if any, as such interests may have been recorded or may otherwise exist.

13. The Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the PSA, all amendments and modifications thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: a) subject to the terms and conditions of the PSA and this Order, compel delivery of the Property to the Purchaser or its assigns; b) compel delivery of the Purchase Price by the Purchaser, or its assigns, or performance of other obligations of the Purchaser, or its assigns, contained in the PSA; c) resolve any disputes arising under or related to the PSA, except as otherwise provided therein; and d) interpret, implement, and enforce the provisions of this Order.

14. At Closing, the Debtor shall indefeasibly pay in cash to the Agent the full amount due to the Agent as the administrative agent for the Debtor's secured creditors, including but not limited to all amounts due on account of principal, accrued interest and default interest, fees, expenses (including all outstanding reasonable attorney's fees) and other charges. The Agent shall not be entitled to reimbursement from the Debtor of any fees and costs incurred after Closing other than reimbursement for fees and costs incurred by the Agent in connection with releasing collateral, transfering any bank accounts or otherwise for any action undertaken at the request of the Debtor or the Purchaser.

15. Notwithstanding anything in the Operating Agreement or in the PSA, (i) the Operating Agreement is subject to the PSA and to this Order, (ii) the Manager (as defined in the Operating Agreement) will cause the Company (as defined in the Operating Agreement) and its subsidiaries to comply with the terms of the PSA and this Order, (iii) the Debtors shall have no

rights under the Operating Agreement until Closing, and (iv) the Purchaser is authorized to take all action unilaterally with respect to the PSA.

16. No later than two (2) business days following the Closing Date and payment in full of the secured claims in accordance with paragraph 14, the Agent shall provide the following notices:

   a. Notice to Valley National Bank ("Valley") under that certain Deposit Account Control Agreement (the "DACA") dated as of September 30, 2021 by and among PARLEX 15 FINCO, LLC – SERIES XIII, a series of Parlex 15 Finco, LLC, a Delaware limited liability company (as successor by assignment from Parlex 3 Finance LLC), Valley and Via Mizner Owner I, LLC, which notice will direct Valley to release Agent's security interest in the Accounts (as defined in the DACA).

   b. Notice to PNC Bank, National Association ("PNC") under that certain Cash Management Agreement (the "CMA") dated as of September 30, 2021 by and among PARLEX 15 FINCO, LLC – SERIES XIII, a series of Parlex 15 Finco, LLC, a Delaware limited liability company (as successor by assignment from Parlex 3 Finance LLC), PNC and Via Mizner Owner I, LLC, which notice will direct PNC to release Agent's security interest in the Cash Management Account (as defined in the CMA) and any subaccounts thereunder.

Agent, PNC and Valley are authorized to take all necessary actions to terminate Agent's security interest in, and control of, the DACA accounts and cash management account.

17. Pursuant to the Assumption Procedures Order, the Debtor is authorized and directed to pay all Cure Costs to the applicable Counterparty within two business days of Closing, and with

10

respect to Cure Costs that are disputed as of the Closing Date, the Debtor will pay such Cure Costs within five business days following resolution of the dispute.

18. Pursuant to the Assumption Procedures Order, if a Counterparty files a Cure Cost Objection but not a Stalking Horse Performance Objection, the Debtor is authorized to assume and assign the applicable Contract or Lease notwithstanding the pending Cure Cost Objection.

19. Pursuant to the Assumption Procedures Order, the Debtor shall file and serve a notice of contracts which have been assumed and assigned at Closing to the Purchaser within two business days of Closing.

20. Within two business days of Closing, the Debtor shall file a notice of the occurrence of Closing.

21. Pursuant to the Assumption Procedures Order, if a Counterparty does not file a timely Cure Cost Objection or Stalking Horse Bidder Objection, the Debtor is authorized to assume and assign the Assumed Contracts, the Residential Leases, and the Retail Lease to the Purchaser at Closing.

22. The Counterparties to the Assumed Contracts, Residential Leases, and the Retail Lease are hereby enjoined from taking any action against the Buyer with respect to any claim for cure under the Assumed Contracts, the Residential Leases, and the Retail Lease.

23. Except as set forth in the PSA with respect to the Residential Leases and Retail Lease, all persons and entities, including Debtors, employees, former employees, all debt holders (including, for the avoidance of doubt, Via Mizner Lender 1 LLC, Via Mizner Lender 2, LLC, and TIG Romspen US Master Mortgage LP), equity holders, administrative agencies, governmental units, tax and regulatory authorities, secretaries of state, federal, state, and local officials, lenders, contract parties, bidders, lessors, and other parties in possession of any of the Property at any time,

trade creditors, and all other creditors holding or asserting liens, claims, or interests of any kind or nature whatsoever against or in the Property (whether known or unknown as of the Closing Date, now existing or hereafter arising, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, whether imposed by agreement, understanding, law, equity, or otherwise), shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, commencing, continuing, or otherwise pursuing in any manner any action, claim, or other proceeding of any kind, directly or indirectly, against the Purchaser or any of its affiliates, predecessors, successors, or assigns or any of their respective current and former members, managers, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors, and representatives (each of the foregoing in its individual capacity), their property, or the Property in respect of liens, claims, or encumbrances that arise under or out of, in connection with, or in any way relate to, the Property, the Assumed Contracts, the Residential Leases, the Retail Lease, or the transfer of the Property, the Assumed Contracts, the Residential Leases or Retail Lease to the Purchaser other than to enforce the terms of this Order.

24. Notwithstanding paragraph 23, the sale of the Property to the Purchaser, and the acquisition by the Debtor of membership units in Mizner 366 JV and rights under the Operating Agreement (the "Debtor's Equity Interest"), are without prejudice to: (1) Romspen's rights under the Assignment, Pledge and Security Agreement entered into as of August 19, 2024; (2) Romspen's proof of claim [Claim No. 6-1]; and (3) Romspen's position that it is entitled to future profits to be derived by the Debtor based on the Debtor's Equity Interest in Mizner 366 JV. Romspen's rights and interests, whatever they may be, shall attach to the Debtor's Equity Interest and shall be resolved in the bankruptcy claims process and/or the plan process.

25. Notwithstanding Bankruptcy Rule 9006, this Order shall be effective and enforceable immediately upon entry, and the 14-day stay provided for under the Bankruptcy Rules is waived.

###

Submitted by:

Bradley S. Shraiberg
Shraiberg Page P.A.
Attorneys for the Trustee
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law

Bradley S. Shraiberg is directed to immediately serve a conformed copy of this Order and to file a Certificate of Service evidencing same.

13